```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                          23 CR 347 (JGK)

ALEXANDER MASHINSKY and RONI
COHEN-PAVON,

                 Defendant.

------------------------------x
                                        New York, N.Y.
                                        July 25, 2023
                                        11:00 a.m.

Before:

                    HON. JOHN G. KOELTL,

                                        District Judge


                         APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
ALLISON C. NICHOLS
ADAM HOBSON
     Assistant United States Attorneys

MUKASEY FRENCHMAN, LLP
     Attorneys for Defendant Mashinsky
MARC L. MUKASEY
ROBERT S. FRENCHMAN
TORREY K. YOUNG

ALSO PRESENT:  BRANDON RACZ, FBI Special Agent
```

1           (Case called)
2           MS. NICHOLS:  Allison Nichols and Adam Hobson, for the
3  government, and with us is Special Agent Brandon Racz, of the
4  FBI.
5           Good morning, your Honor.
6           THE COURT:  Good morning.
7           MR. MUKASEY:  Good morning, judge.
8           Mark Mukasey, from Mukasey Frenchman, for the
9  defendant Alex Mashinsky, who is to my left, along with my
10 partners, Bob Frenchman and Torrey Young.
11          Good morning.
12          THE COURT:  Good morning.
13          All right.  Where are we?
14          MS. NICHOLS:  Thank you, your Honor.
15          The defendant, Mr. Mashinsky, was arrested on July
16 13th and presented and arraigned on indictment 23 CR 347 the
17 same day, in front of the magistrate court.  Mr. Mukasey has
18 just been retained as of last night.  So we have been having
19 some conversations with him this morning about the discovery in
20 the case.  We are anticipating signing and submitting to your
21 Honor for consideration, a protective order that would govern
22 the discovery in the case.  And we are ready to go with some
23 rolling productions of that discovery when we have that
24 protective order in hand.
25          I can proffer what the discovery consists of, if that

1    would be helpful.
2            THE COURT:  Briefly, can you outline the charges and
3    then the discovery?  Before you do that, I should enter a 5F
4    oral order.
5            I direct the prosecution to comply with its obligation
6    under Brady against Maryland and its progeny to disclose to the
7    defense all information, whether admissible or not, that is
8    favorable to the defendant, material either to guilt or to
9    punishment and known to the prosecution.  Possible consequences
10   for noncompliance may include dismissal of individual charges
11   or the entire case, exclusion of evidence and professional
12   discipline or court sanctions on the attorneys responsible.
13           I will be entering a written order more fully
14   describing that obligation and possible consequences of failing
15   to meet it and I direct the prosecution to review and comply
16   with that order.
17           Does the prosecution confirm that it understands its
18   obligations and will fulfill them?
19           MS. NICHOLS:  Yes, your Honor.
20           THE COURT:  Okay.  Proceed.
21           MS. NICHOLS:  Thank you, your Honor.
22           This case charges Mr. Mashinsky with seven crimes
23   related to his operation of a cryptocurrency platform known as
24   Celsius Network.  Mr. Mashinsky was founder and CEO of that
25   company which broadly operated to allow investors to house and

store their cryptocurrency assets on Celsius's platform.  In exchange for depositing that currency with Celsius, they would get returns on their investment in the form of so-called rewards.

There are essentially two broad schemes charged in the indictment.  The first relates to misrepresentations that Mr. Mashinsky made to investors and prospective investors in order to induce them to house their cryptocurrency assets at Celsius and to leave their assets on the platform.  Those misrepresentations broadly went to Celsius's financial stability, future solvency and to the riskiness of the investment that customers were making.  Mr. Mashinsky regularly lied and made material omissions about the amount of risks that investors were subjecting themselves to.

The second scheme in which Mr. Mashinsky and his co-defendant, Roni Cohen-Pavon, are both charged, relates to manipulation of Celsius's proprietary crypto token, which was known as Cel, C-e-l.  Mr. Mashinsky, Mr. Cohen-Pavon and others working at their direction, both misrepresented the trading volume of Cel and its value, and they acted using Celsius customer assets at times to prop up the price of Cel.  And for that second scheme Mr. Mashinsky and Mr. Cohen-Pavon are charged with securities fraud, market manipulation, wire fraud and conspiracy charge.

Mr. Cohen-Pavon is a citizen of Israel and a resident

1   of Israel and we have been in contact both with his U.S. based
2   counsel, as well as with the DOJ component that handles
3   extradition requests. But that process is obviously not
4   complete, your Honor, and we don't, at this point, have a
5   meaningful timeframe that we could proffer.
6              THE COURT: Okay. Tell me about the story.
7              MS. NICHOLS: So the discovery is fairly voluminous in
8   this case, your Honor. I think approximately two to three
9   terabytes. The bulk of it consists of corporate documents and
10  communications produced by Celsius. There are also bank
11  accounts, cryptocurrency accounts, cryptocurrency exchange
12  data. There are approximately 1200 videos. Mr. Mashinsky and
13  others at Celsius regularly gave hour-long or more videotaped
14  sessions that were called AMAs, or "Ask Mashinsky Anything", in
15  which they addressed and took questions from Celsius customers.
16  Many of those videos are over an hour long.
17             There are also some shorter video clips media
18  interviews and the like. There are for many of those videos,
19  draft transcripts as well. There are search warrant returns in
20  the form of Mr. Mashinsky's iCloud account and Mr. Mashinsky's
21  Twitter account. There is also subpoena returns from other
22  entities including Celsius's investors.
23             THE COURT: No Title IIIs?
24             MS. NICHOLS: No, your Honor.
25             THE COURT: No statements by the defendant?

1        MS. NICHOLS:  Well, the videos but no in-custody
2   statements, your Honor.
3        THE COURT:  Okay.  What's the government's estimate
4   with respect to how long it will take to produce the discovery?
5        MS. NICHOLS:  It's our intention to push this out on a
6   rolling basis, your Honor.  I think the bulk of it, we expect
7   in terms of processing and downloading time, could take between
8   three and five weeks.  That's the information that I have from
9   our tech folks.
10       Mr. Mukasey has alerted me that from his experience
11  dealing with our office, he had some sort of lessons learned on
12  issues that cropped up in the past for voluminous productions
13  like this and so that's very helpful.  We'd like to circumvent
14  some of this.  So I think we're going to talk to him more this
15  afternoon.  but I think that's the estimate that I have.  I
16  think to be safe I think what we would hope is that it would
17  all be complete within six to eight weeks.
18       THE COURT:  Okay.  Have you talked about a date for
19  another conference?
20       MS. NICHOLS:  We did, your Honor.  We talked about
21  potentially early October.
22       THE COURT:  Okay.
23       COURTROOM DEPUTY:  Wednesday, October 11th at 11 a.m.
24       THE COURT:  Is that satisfactory for both sides?
25       MS. NICHOLS:  That's fine for the government, your

1   Honor.  Thank you.
2            MR. MUKASEY:  Your Honor, I'm sorry.  We have a
3   conference that day in front of Judge Oetken.  It's a final
4   pretrial conference before a case that is virtually certainly
5   going to trial a little later in October.  If we can either
6   move to one day before or one day back, that would be great.
7            COURTROOM DEPUTY:  Tuesday, October 3rd, 11 a.m.
8            MR. MUKASEY:  While I'm on my feet, judge, if I may,
9   the government's been very helpful in terms of figuring out the
10  scheduling and the discovery production.  We will work together
11  to facilitate the most efficient manner of getting us what we
12  need to get.  It's normally my practice in the first conference
13  to ask for a trial date because I'm not a delay kind of guy.
14  But I think I'm going to wait in this case before and assess
15  some of the discovery, come back in October and probably ask
16  you if have a trial date then.
17           THE COURT:  That's fine.  The date that the parties
18  have talked about, it is actually quicker than I usually set
19  the first conference because the first conference I would like
20  the defense to tell me what motions, if any, they intend to
21  make, how much time they need for motions.  And given the
22  possibility of the trial conflicts, I certainly encourage
23  setting an early trial date.  So, sure, I am happy to work with
24  you at the first conference to set a trial date for you so that
25  you can block out your schedules.

1    MR. MUKASEY:  I should also point out that we also
2 continued discussions with the government about bail.  I know
3 that's a magistrate issue at this point.  We're going to
4 continue in good faith to work with the government to reach an
5 appropriate bail package.  I'm rather confident that we're
6 going to get there.  My client and his family had an FBI raid
7 in their house.  They had a bunch of people in the house that
8 kind of freaked out their kids and the wife.  We're trying to
9 avoid any further kind of conflict, certainly, related to
10 interaction with the government like that.  So I'm confident
11 that we'll be able to do a good bail package.  Needing a little
12 more time with the magistrate, we'll take it up with her and I
13 won't waste your time.
14    THE COURT:  No, no.  That's fine.  I saw the letter
15 about an extension of time to meet the current bail package,
16 and I prefer to have the magistrate judge deal with it so that
17 I'm available for appeals.  So, I appreciate your attempting to
18 work it out with the magistrate judge and I welcome setting a
19 trial date at the conference on October 3rd.
20    Also, particularly, with discovery on the rolling
21 basis, I would appreciate your insights into how much time you
22 need for motions and what motions, if any, the defense intends
23 to make.
24    MR. MUKASEY:  We'll absolutely be able to give you at
25 least some idea when we come back in October.  And I can tell

1   you again in the interest of not delaying things, you are not
2   going to get boilerplate, you know the typical boilerplate
3   stuff that sometimes gets most wasteful than productive.  We'll
4   be discerning and we'll be quick.
5           THE COURT:  Good.
6           Okay.  So, another conference October 3 at 11 a.m.  I
7   will exclude prospectively the time from today until October
8   the 3rd.  The continuance is necessary in order to provide time
9   for the government to make discovery and the defense to review
10  it.  It's also necessary because of the volume of discovery and
11  the complexity of the case.  The Court finds that the ends of
12  justice served by ordering the continuance outweigh the best
13  interests of the defendant and the public in a speedy trial.
14  This order of exclusion is made pursuant to 18 U.S.C. Section
15  3161 (H) (7) (A).
16          Am I right that the magistrate excluded time until the
17  conference today?
18          MS. NICHOLS:  Yes, your Honor.
19          THE COURT:  So, no time off the speedy trial clock.
20          MS. NICHOLS:  That's right, your Honor.
21          THE COURT:  Defense agreed?
22          MR. MUKASEY:  Agreed.
23          THE COURT:  Anything further?
24          MS. NICHOLS:  Nothing from the government.  Thank you,
25  your Honor.

1    MR. MUKASEY:  Not from us, judge.  Thanks.
2    THE COURT:  Okay.  Good morning, all.
3                    (Adjourned)