N9DUCOHP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                          1:23-cr-000347-JGK-2

5   RONI COHEN-PAVON,

6              Defendant.                  Plea
    ------------------------------x
7
                                           New York, N.Y.
8                                          September 13, 2023
                                           11:00 a.m.
9

10
    Before:
11
                         HON. JOHN G. KOELTL,
12
                                           District Judge
13

14                            APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BY:  ADAM S. HOBSON, ESQ.
17       ALLISON C. NICHOLS, ESQ.
         Assistant United States Attorney
18
    DECHERT, LLP
19       Attorneys for Defendant
    BY:  JEFFREY BROWN, ESQ.
20       NICHOLAS GERSH, ESQ.

21

22  ALSO PRESENT:  BRANDON RACZ, Special Agent, FBI

23  SIMPSON THACHER & BARTLETT LLP
         *Curcio* Counsel
24  BY:  MARK J. STEIN, ESQ.

25

N9DUCOHP

1          (Case called)

2          THE DEPUTY CLERK:  Will all parties please state

3    for the record.

4          MR. HOBSON:  Good morning, your Honor.

5          Adam Hobson and Allison Nichols for the government.

6          We're joined by Special Agent Brandon Racz from the

7    Federal Bureau of Investigation.

8          MS. NICHOLS:  Good morning, your Honor.

9          MR. BROWN:  Good morning, your Honor.

10         Jeffrey Brown joined by Nicholas Gersh, for

11   Mr. Cohen-Pavon who is seated to my left.

12         THE COURT:  Good morning.

13         Some introductory issues:  First, the defendant is

14   represented by Mr.Gersh and Mr. Brown from Dechert.  My

15   nephew-in-law is a partner at Dechert but doesn't share in any

16   of the income from any cases where I'm the judge.  So I don't

17   disqualify myself in cases where Dechert appears.  Nothing

18   about that affects anything that I do in the case, but I bring

19   it to your attention at the outset.

20         Second, I received a letter from the government dated

21   September 12 advising of a potential conflict that Mr.Gersh has

22   because he's applied to the U.S. attorneys office for a

23   position with the office.  And so I'll conduct a curse yo

24   inquiry at the outset.  How does the defendant wish to be

25   addressed?  Mr. Pavon or Mr. Cohen Cohen perch?

N9DUCOHP

1          THE DEFENDANT:  Mr. Cohen-Pavon, your Honor.

2          THE COURT:  Mr. Cohen-Pavon, your Honor.  Okay.  So

3    Mr. Cohen-Pavon, as I'm sure you've been advised, one of the

4    attorneys from Dechert who is representing you, Mr.Gersh has

5    applied for a position in the United States Attorney's office

6    so there is a procedure called a curious yo procedure after the

7    name of a Court of Appeals case called curse yo in which

8    there's inquiry to aassure that you're aware of the potential

9    conflict, you're aware of its ramifications, and you make a

10   decision as to whether or not you wish to proceed with Mr.Gersh

11   and Dechert or not, because a defendant has a right to be

12   represented by lawyers who have absolutely no conflict of

13   interest, either actual or potential and if the defendant

14   cannot afford counsel without any conflict the Court will

15   appoint counsel for the defendant.  So when there is notice

16   much a potential conflict the Court has an obligation to

17   inquire of the defendant to make sure that the defendant is

18   aware of his right to be represented by lawyers who have

19   absolutely no conflict and to remain whether the defendant

20   wishes to proceed with his lawyers who have a potential

21   conflict and wishes to have simply another lawyer and if the

22   defendant can't pay for another lawyer the Court will appoint

23   another lawyer.  Much H.

24          The first part of the inquiry is to' assure that the

25   defendant KPET tent to make the decision as to whether to waive

N9DUCOHP

1    any potentialing conflicts or not.  So I'll make an inquiry

2    with respect to your competence, and then proceed to advise you

3    of your rights and of the potential conflict and to determine

4    whether you wish to proceed with Mr.Gersh or not, and whether

5    you wish to waive any potential conflict.  Do you understand

6    all of that?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Okay.  So let me start, tell me your full

9    name, please.

10             THE DEFENDANT:  Roni Mr. Cohen-Pavon, your Honor.

11             THE COURT:  How old are you?

12             THE DEFENDANT:  Thirty-six years old.

13             THE COURT:  o'clock did I need toe intent the oath.

14             THE COURT:  Sure, already Mr. Cohen-Pavon,

15   Mr. Felonier will administrator of oath to you.

16             THE DEPUTY CLERK:  Defendant sworn?

17             THE DEFENDANT:

18             THE DEFENDANT:  You you awe firm, excuse do you

19   affirm?

20             THE DEFENDANT:  I do.

21             THE DEPUTY CLERK:  Please state your name for the

22   record.

23             THE DEFENDANT:  Roni Cohen-Pavon.

24             THE DEPUTY CLERK:  Thank you.

25             THE COURT:  Okay.  Mr. Cohen-Pavon, do you understand

N9DUCOHP

1    that that you're now under oath and that if you answer any of

2    my questions pulse falsely or false or untrue answers may later

3    be used against you zero in another prosecution for perjury or

4    making a false statement?

5            THE DEFENDANT:  I do, your.

6            THE COURT:  Okay.  You've told me that you're 36 years

7    old, right?

8            THE DEFENDANT:  Yes.

9            THE COURT:  How far did you go in school?

10           THE DEFENDANT:  First degree.

11           THE COURT:  Are you able to speak and understand

12   English?

13           THE DEFENDANT:  Yes, I do.

14           THE COURT:  Are you now or have you recently been

15   under the care of a doctor or a psychiatrist?

16           THE DEFENDANT:  No, your Honor.

17           THE COURT:  Have you ever been treated or hospitalized

18   for any mental illness or any type of addiction including drug

19   or alcohol addiction?

20           THE DEFENDANT:  No, your Honor.

21           THE COURT:  In the past 24 hours, have you taken any

22   drugs, medicine, or pills or have you drunk any alcohol?

23           THE DEFENDANT:  No, your Honor.

24           THE COURT:  Is your mind clear today?

25           THE DEFENDANT:  Yes.

N9DUCOHP

1          THE COURT:  Are you feeling all right today?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Do either counsel have any doubt as to the

4     defendant's competence at this time?

5          MR. HOBSON:  No, your Honor.

6          MR. BROWN:  No, your Honor.

7          THE COURT:  All right.  Mr. Cohen-Pavon, you can

8     actually have a seat.

9          I've explained to you at the outset, Mr. Cohen-Pavon

10    the reason for this proceeding, namely to determine whether

11    you're fully aware of potential conflict that Mr.Gersh has and

12    to determine whether you wish to continue with his

13    representation and to waive any potential conflicts.  So am I

14    right that you're currently represented by Jeffrey brown and

15    NicholasGersh of the law firm of Dechert, LLP?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Are you satisfied with their

18    representation of you?

19          THE DEFENDANT:  I am.

20          THE COURT:  Do you know that Mr.Gersh has applied for

21    a position as an assistant United States Attorney in the

22    Southern District of New York, that is a member of the

23    prosecutors' office that is currently prosecutorring you in

24    this case doctors yes, I do.

25          THE COURT:  Now T because of Mr.Gersh's application to

N9DUCOHP

1    be employed by the U.S. attorneys' office, there are potential

2    conflicts that arise.  As I've told you, you're entitled to be

3    represented by lawyers who have absolutely no conflicts of

4    interest, whose loyalty is to you alone and who have nothing

5    that might interfere with your representation.  Do you

6    understand?

7         THE DEFENDANT:  Yes (do you understand do you

8    understand do you understand.

9    Q.  And it's important to the representations of counsel that

10   counsel have no conflicts of interest and no royalties to

11   anyone or anything other than you.  Do you understand?

12        THE DEFENDANT:  Yes, I do.

13        THE COURT:  So, Mr.Gersh's potential employment and

14   his application for employment with the U.S. attorneys office

15   presents a potential conflict because he may have some

16   allegiance to the U.S. attorney's office for the Southern

17   District of New York, he may want to shade his representation

18   of you in a way that benefits his application to the U.S.

19   attorneys office he may wish to occury favor with the of U.S.

20   attorneys office by it's way in which he represents you.  Do

21   you understand?

22        THE DEFENDANT:  I do.

23        THE COURT:  It's a possibility, I'm not saying it

24   would happen but it's a possibility.

25        So being aware of that you have the opportunity to say

N9DUCOHP

1    that you don't wish to be represented by wereGersh or you can

2    say that you wish to continue to be represented by Mr.Gersh and

3    you wish to waive any potential conflict that he may have in

4    representing you.  Do you understand that that?

5                THE DEFENDANT:  Yes, I do.

6                THE COURT:  Now, have you discussed this potential

7    conflict with Mr.Gersh?

8                THE DEFENDANT:  Yes.

9                THE COURT:  And have you discussed it with will brown?

10               THE DEFENDANT:  Yes.

11               THE COURT:  It's important that I understand that

12   you're aware of the conflict and the potential conflict.  So

13   could you tell me this your own words what the potential

14   conflict is?

15               THE DEFENDANT:  The potential conflict is that

16   Mr.Gersh will use the fact he's advising me on this case for

17   his own personal benefit as part of the application.

18               THE COURT:  Okay.  Now, I'm prepared and I will

19   actually appoint another lawyer to represent you so that you

20   can consult with that other lawyer to make sure that you've

21   fully considered the potential conflict that you're fully aware

22   of the conflict and to make a determination, help you make a

23   determination of whether you wish to waive the conflict and

24   continue with Mr.Gersh or not.  So at this point what I'm going

25   to do is appoint Mark stein who is a distinguished lawyer and a

N9DUCOHP

1  member of the criminal justice act panel for this district to

2  consult with you before you make a decision whether you wish to

3  behave the conflict.  So we'll take a brief adjournment so you

4  can consult with Mr. Stein, Mr.Stein, do you have any conflicts

5  in this case at all.

6          PRESENTMALE:  I do not, your Honor.

7          THE COURT:  Mr.Stein is being represented to discuss

8  with you the potential conflict and to determine whether you

9  wish to waive that conflict and continue with Mr.Gersh or not.

10         Anything that you say to Mr. Stein is completely

11 confidential between you and Mr. Stein, the purpose of appoint

12 Mr. Stein is solely to consult with you.  He has no interest in

13 the case.  His interest is solely to represent you and to

14 determine whether you wish to waive any conflicts that Mr.Gersh

15 has and whether you wish to it be with Mr.Gersh.  So we'll take

16 a brief recess to let you ischemia with Mr. Stein

17 (.(recess.ecl).

18         THE COURT:  Mr. Cohen-Pavon, have you had an

19 opportunity to consult with Mr. Stein?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  Do you want any more time to consult with

22 Mr. Stein or thinking about your decision?

23         THE DEFENDANT:  No.  I don't.

24         THE COURT:  Having consulted with Mr. Stein, do you

25 wish to give up or waive any potential conflict that Mr. Gersh

N9DUCOHP

1   has and do you wish to continue with Mr. Gersh as one of your

2   lawyers?

3           THE DEFENDANT:  Yes, I do.  I have full trust in

4   Mr. Gersh and I waive any conflict in this respect.

5           THE COURT:  Okay..  Have you received any inducements,

6   promises or threats to you to get you to agree to continue with

7   Mr. Gersh and to waive any potential conflicts?

8           THE DEFENDANT:  No.  I didn't.

9           THE COURT:  Do you understand that that by waiving any

10  potential conflicts that Mr. Gersh may have, you're waiving

11  them for today and throughout this proceeding and any appeal or

12  any other ancillary proceedings?  It's a waive for today and

13  forever.  Do you understand?

14          THE DEFENDANT:  Yes, I do.

15          THE COURT:  So, Mr. Stein, having scanned with

16  Mr. Cohen-Pavon, do you know of any reason that he that he

17  should not waive or be able to waive the potential conflict.

18          PRESENTMALE:  I do not, your Honor.

19          THE COURT:  Okay.  Thank you, Mr. Stein.  Is

20  Mr. Mr. Gersh do you believe that you're able to represent

21  Mr. Cohen-Pavon and that any potential conflict South Carolina

22  that you have will not interfere at the all of your

23  representation of Mr. Cohen-Pavon.

24          MR. GERSH:  I do, your Honor.

25          THE COURT:  Okay.  Mr. Brown, do you also agree with

1    that?

2              MR. BROWN:  I do, your Honor.

3              THE COURT:  Okay..  Having considered all of the facts

4    and issues I find that while there is a potential conflict that

5    Mr. Gersh has, the conflict is only a potential conflict and is

6    certainly waivable and.  I also find that Mr. Cohen-Pavon has

7    knowingly voluntarily waived any potential conflict.  So,

8    Mr. Stein, thank you for your representation and you're

9    excused.

10             PRESENTMALE:  Thank you, your Honor.

11             THE COURT:  You're certainly welcome to stay if you

12   wish (he left) so that brings us then to the next part which is

13   plea.  I understand from the correspondence that the defendant

14   wishes to enter a plea of guilty to be Counts 4, 5, and 6, of

15   the indictment pursuant to a plea agreement dated September 11,

16   2023.  I have the unsigned copy that was provided to me.

17             Is there a executed copy?

18             MR. HOBSON:  There is, your Honor.

19             MR. HOBSON:  And, your Honor I'll just note it's

20   Counts 4, 5, 6 and 7.  Count seven is on the second page of the

21   agreement.

22             THE COURT:  Right.  Thank you.

23             There was also a reference in the correspondence to a

24   letter government dated September 5, 2023, a request to be

25   filed under seal.  I have the letter now, I've checked the

N9DUCOHP

1    docket Sheet.  There are no docket entries after August 30th.

2    Was the September 5 letter signed is this.

3           MR. HOBSON:  The September 5th letter was submitted

4    to chambers by email as perfect an instruct from magistrate's

5    Court.

6           THE COURT:  Well, it's fine.  I'll so-order the

7    September 5th letter.  Nothing has been filed and I assume

8    that after today you'll be seeking to unseal.

9           MR. HOBSON:  That's correct your Honor, we had

10   requested delayed docketing of the arraignment last week and of

11   today's plea proceedings.  After the after the end of today's

12   plea proceedings we no longer see a need for delayed docketing.

13          THE COURT:  It may be academic but I've signed the

14   September 5th letter.

15          All right and I take it from the correspondence that

16   the defendant was presented in magistrate -- before the

17   magistrate judge and was arraigned on the indictment at that

18   time?

19          MR. HOBSON:  That's correct, your Honor.

20          THE COURT:  Okay.  It' marked the slept, 2023 plea

21   agreement as Court Exhibit 1.  It indicates that the defendant

22   wishes to plead guilty to counts, four, five, six and seven of

23   the indictment.

24          And I take that's what the defendant wishes to do,

25   right, Mr. Brown?

N9DUCOHP

1           MR. BROWN:  Yes, your Honor.

2           THE COURT:  Okay.  Mr. Net cher please administrator

3   the oath to to the defendant Dutchess County you may be seated.

4           (defendant sworn or affirmed?

5           THE DEFENDANT:  Yes, I do.

6           THE DEPUTY CLERK:  You may put your hand down please

7   state your name for the record?

8           THE DEFENDANT:  Roni Cohen-Pavon Dutchess County thank

9   you.

10          THE COURT:  Mr. Cohen-Pavon do you understand that if

11  you're now under oath and that if you answer your your false or

12  untrue answers may later be used against you in in a later

13  prosecution for perjury or making a false statement.

14          THE WITNESS:

15          THE DEFENDANT:  Yes, I do.

16          THE COURT:  Tell me your full name?

17          THE DEFENDANT:  Respond Cohen-Pavon.

18          THE COURT:  How old are you?

19          THE DEFENDANT:  Thirty-six years old.

20          THE COURT:  How far did you go in school.

21          THE DEFENDANT:  First degree.

22          THE COURT:  What does that mean, first degree?  Is

23  that a college degree or university degree?

24          THE DEFENDANT:  University degree.

25          THE COURT:  Okay.

N9DUCOHP

1          THE DEFENDANT:  In law.

2          THE COURT:  Are you a stein of the United States?

3          THE DEFENDANT:  No, I'm not.

4          THE COURT:  Are you able to speak an understand

5   English.

6   A.  Yes, I do.

7          THE COURT:  Are you now or have you recently been

8   under the care of a doctor or a psychiatrist?

9          THE DEFENDANT:  No.

10          THE COURT:  Have you ever been treated or hospitalized

11   for any mental illness or any type of addiction including drug

12   or alcohol addiction?

13          THE DEFENDANT:  No.

14          THE COURT:  In the past 24 hours have you taken any

15   drugs, medicine or pills or have you crux any alcohol?

16          THE DEFENDANT:  No.

17          THE COURT:  Is your mind clear today?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Are you feeling all right today?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Do either counsel have any doubt as to the

22   defendant's competence to plead at this time?

23          MR. HOBSON:  No, your Honor.

24          MR. BROWN:  No, your Honor.

25          THE COURT:  Mr. Cohen-Pavon, Mr. Brown, your lawyer

N9DUCOHP

has informed me that you wish to enter a plea of guilty to

Counts 4, 5, 6, and 7 of the indictment.  Is that what you wish

to do?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Have you had a full opportunity to discuss

your case with your lawyers?

THE DEFENDANT:  Yes.  Yes, I have.

THE COURT:  Okay.  And have you had a full opportunity

to discuss the consequences of entering a plea of guilty?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Are you satisfied with your lawyers and

their representation of you?

THE DEFENDANT:  Yes, I am.

THE COURT:  On the basis of Mr. Cohen-Pavon's

responses to my questions and my observations of his demeanor I

find that he is fully competent to enter an informed plea at

this time.

Now, Mr. Cohen-Pavon before I accept any plea from you

I'm going to be asking you certain questions.  My questions are

intended to satisfy me that you wish to plead guilty because

you are, in fact, guilty and that you fully understand the

consequence of your plea and furthermore that you are pleading

guilty knowingly and voluntarily and that there is an

independent basis in, in fact, for your plea.  Do you

understand?

N9DUCOHP

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  I'm now going to describe to you certain

3    rights that you have under the constitution and laws of the

4    United States which rights you will be giving up if you enter a

5    plea of guilty.  Please listen to me very carefully.  If

6    there's anything that I say that you don't understand, please

7    ask me to stop.  Either I or Mr. Brown will explain it to you

8    more fully.  All right?

9          THE DEFENDANT:  Yes.  Thank you.

10          THE COURT:  Now, Mr. Cohen-Pavon under the accusation

11    and and laws the states you have a right to a speedy and public

12    trial by a jury on the charges against you which are contained

13    in the indictment.  Do you understand?

14          THE DEFENDANT:  Yes.

15          THE COURT:  If there were a trial you would be plumed

16    to be innocent and the government would be required to prove

17    you're guilty by competent evidence Andy beyond a reasonable

18    doubt.  You would not have to prove that you were innocent at

19    trial.  Do you understand digests yes, I do.

20          THE COURT:  The in there were a trial a jury composed

21    of 12 people selected from this district would have to agree

22    unanimously that you were guilty.  Do you understand?

23          THE DEFENDANT:  Yes.

24          THE COURT:  It there were a trial, you would have the

25    right to be represented by a lawyer and if you could not afford

N9DUCOHP

1      a lawyer, a lawyer would be provided to you free of cost.

2                Do you understand?

3                THE DEFENDANT:  Yes.

4                THE COURT:  In fact, Mr. Cohen-Pavon, you have a right

5      to be represented by a lawyer at a trial and at every other

6      stage of the proceedings against you and if you can not afford

7      a Laura lawyer would be provided to you free of cost.

8                Do you understand?

9                THE DEFENDANT:  Yes, I do.

10               THE COURT:  If there were a trial you would have the

11     right to see and hear all of the witnesses against you and your

12     attorney could cross-examination them you would have the right

13     to have your attorney object to the government's evidence and

14     offer evidence on your behalf if you so desired and you would

15     have the right to have subpoenas issued or other discuss sorry

16     process used to compel witnesses to testify in your defense and

17     you would not be required to testify.

18               Do you understand that all of that?

19               THE DEFENDANT:  Yes, I do, your Honor.

20               THE COURT:  If there were a trial trial you would have

21     the right to testify if you wanted to but no one could force

22     you to of testify if you didn't want to and furthermore no

23     inference or suggestion of guilt could be drawn if you chose

24     not to testify at trial.

25               Do you understand?

N9DUCOHP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Mr. Cohen-Pavon do you understand that

3   each and every one of rights that I described to you?

4          THE DEFENDANT:  Yes, I do.

5          THE COURT:  Do you have any questions about any of

6   those rights?

7          THE DEFENDANT:  No, I don't.

8          THE COURT:  Do you understand that that by entering a

9   plea of guilty today you're giving up each and every one of

10  those rights that you are waiving those rights and that you

11  will have no trial?

12         THE DEFENDANT:  Yes, I do.

13         THE COURT:  Do you understand that you can change your

14  mind right now and refuse to end a plea of guilty, you don't

15  have to enter this plea if you don't want to for any reason at

16  all.

17         Do you understand that that completely?

18         THE DEFENDANT:  I understand.

19         THE COURT:  Now, Mr. Cohen-Pavon you've received a

20  copy of indictment against you; is that correct?

21         THE DEFENDANT:  Yes.

22         THE COURT:  And have you read it?

23         THE DEFENDANT:  Yes, I have.

24         THE COURT:  Do you understand that what you were

25  charged with in the indictment?

N9DUCOHP

1         THE DEFENDANT:  Yes.

2         THE COURT:  Do you understand that that if you did not

3    plead guilty the government would be required to prove each and

4    every part or element of the charges against you which are

5    contained in the indictment beyond a reasonable doubt at trial?

6         THE DEFENDANT:  Yes.  I understand.

7         THE COURT:  I'm going to go over with you now

8    Counts 4, 5, 6, and 7, to aassure myself that you understand

9    what you were charged with, what the government would be

10   required to prove beyond a reasonable doubt at trial, and what

11   the maximum penalty is for each of those counts.

12         Conflict of interest conflict of interest.

13         THE COURT:  Counsel four of indictment charges a

14   conspiracy to manipulate the price of cell, CEL, it charges in

15   substance that the allegations contained in photographs one

16   through 71 of this indictment are hereby repeated realleged and

17   incorporated by reference as if fully set forth herein from at

18   least in or about 2019 through at least in or about June, 2022,

19   in the Southern District of New York and elsewhere, Alex and

20   Mashinsky and Roni coach patch the defendants and others known

21   and unknown, willfully and knowingly did combine, con peer

22   incon if he had receipt and together with each other to commit

23   offenses against the United States, to wit T securities fraud

24   in violation of Title 15, United States Code, Sections 78JG and

25   78FF and Title 7, Title 17 code code of federal regulations

N9DUCOHP

1    Section 240.10B5, market manipulation in violation of Title 15,

2    United States Code, Sections 78IA2 and 78FF and wire fraud in

3    violation of title insane, United States Code, Section 1343.

4    It was a part and an object of the conspiracy to aelection

5    Mashinsky and Roni cone are not pain the defendants and others

6    known and unknown willfully and knowingly directly and

7    indirectly by use of a means and instrumentty of examiner ever

8    inter-date commerce and the mails of and a facility of a

9    national securities exchange would and did use and employ in

10   connection with the purchase and sale of a security a

11   manipulative and descriptive device and conVyvanse in tote

12   tileel we'll for that Section 240 the plaintiff 10B5 by a

13   employing a advice, scream and art if I say too fraud, B make

14   be an untrue statement of a material fact and omitting to state

15   the material fact necessary in order to make the statements

16   made in light of the circumstances under which they were made

17   not misleading and C engaging in an in an act, practice and

18   course of business which operated and would operate as a fraud

19   and deceit upon a certain in violation of Title 15, United

20   States Code, Section 78JB and 78FF, to wit, Mashinsky and

21   Cohen-Pavon agreed to and did exchange in a scream to defraud

22   investors in CEL, stock -- in cell I don't think by

23   artificially manipulating the market for cell, for cell token

24   and through making false and mislady estimate about sellsious'

25   purchases of cell tone and headaching pulse and a mislead,

N9DUCOHP

1    statements about Mashinsky's own sales of cell token.

2                It was further a part and an object of the conspiracy

3    to amaxi Mashinsky and Roni Cohen-Pavon, the defendants and

4    others known and unknown willfully and knowingly would and did

5    directly and indirectly by the use of mails and a means and

6    instrumentty of we are sit commerce of a of a a facility of a

7    initial securities exchange and for a member of an national

8    securities exchange affected alone and with one or more other

9    persons a series of transactions in a security registered on a

10   national securities exchange, a security not so registered and

11   in connection with the security based swap or a security based

12   swap agreement with respect to such security creating tall and

13   anticipate active trade in such security and raising and

14   depressing the rise price of a such for that they did phone us

15   furs adjourned for sentence such seam by security by others in

16   violation of Title 15, United States Code, Section 78IA2 and

17   78FF to when it A a Mashinsky and copain greed and did exchange

18   in a series of transactions in cell in order to artificially

19   race the price of a sell enis induce others to purchase

20   correctly it was put a part and an object of the conspiracy

21   that Alex Mashinsky and Roni coin pain the defendants and

22   others known and unknown knowingly having deadvisedded Andy

23   intend to go a advice anticipate scream and art if I say too to

24   DA depress a for obtaining money and property by means of false

25   and $42 and representations and promises transmitted and caused

N9DUCOHP

1   to be transmitted by means of wire radio and television

2   communication, in interstate and attorney commerce, writing

3   signs, bills pictures and sounds for the purpose of executing

4   such scream and art face in violation of Title 18, United

5   States Code, sections for wit Mashinsky and Cohen-Pavon agreed

6   to and to a scream to doesn't fraud investors in correctly

7   token by manipulating the market for correctly tone, making

8   false and misleading a statements by seal I couldn't say

9   marketing in correctly and making always misleading statements

10  about Mashinsky's own sales of correctly token.  Overt ever

11  over the acts in furtherance of a conspiracy and to affect the

12  illegal objects thereof the following among others were

13  committed in the Southern District of New York and elsewhere.

14  On or about July 14, 2020T Alex Mashinsky, the defendant T

15  instructed another cocould not spare at the not named herein by

16  electronic message to cause seal just to purchase correctly

17  token in the market in order tour artificially manipulate the

18  price the correctly, B, on or about October 21, 2020T Mashinsky

19  personally purchased correctly in the market in order to

20  artificially support the price of correctly, O on or about

21  October 30, 2021, Mashinsky and Roni Cohen-Pavon the defendant

22  discussed by electronic message a plan to artificially

23  manipulate the price of correctly, D on or about January 7th,

24  2022 Mashinsky made false and may leading public statements

25  regarding cells just's market purchase of correctly, E, on or

N9DUCOHP

about November 5, 2021, Mashinsky made false and misleading

public statements regarding his own sales of correctly, all of

this in violation of a title insane, United States Code,

Section 371.

Mr. Cohen-Pavon do you understand that that's what

you're charged with in count four of the indictment?

THE DEFENDANT:  Yes, I do.

THE COURT:  Do you understand that if you did not

plead guilty, the government would be required to prove beyond

a reasonable doubt at trial, first, that two or more persons

entered into the unlawful agreement charged in count four

beginning on -- beginning this or about .2019, second that you,

the defendant knowingly and willfully became a member of the

conspiracy, third, that one of the members of conspiracy

knowingly committed at least one of the over the acts charged

in the indictment, and finally the over the act or acts which

the jury found to have been committed was or were committed to

further some objective of the conspiracy.

Do you understand that the government would be

required to prove all of that beyond a reasonable doubt at

trial?

THE DEFENDANT:  Yes, I do.

THE COURT:  Do you understand that that the maximum

penalty for the crime charged in count four is a maximum

sentence of five years imprisonment, a maximum term of three

N9DUCOHP

| | |
|---|---|
| 1 | years supervised release, a maximum fine of the greatest of |
| 2 | $250,000 or twice the gross he pecuniary gain derived from the |
| 3 | offense or twice it's gross pecuniary loss to a person or |
| 4 | persons other than yourself as a result of the offense and a |
| 5 | mandatory $100 special assessment.  Do you understand that |
| 6 | that's the maximum penalty for the crime charged in count four? |
| 7 | THE DEFENDANT:  Yes, I do (special assessment. |
| 8 | THE COURT:  Count five of the indictment charges a |
| 9 | fraudulent scream to manipulate the price of correctly.  The |
| 10 | indictment charges that the allegations contained in |
| 11 | photographs one through 71 and 83 of the indictment are |
| 12 | repeated, realleged and incorporated by reference as if fully |
| 13 | set forth herein, then it goes on to charge that from at least |
| 14 | in or about 2019 through at least in or about June, 2022, in |
| 15 | the Southern District of New York and elsewhere, Alex 'or |
| 16 | Mashinsky and respond Cohen-Pavon, it doeses well wily |
| 17 | anticipate knowingly directly and in-Drendel by use of a means |
| 18 | and instrumentty of interstate commerce and of the mails and a |
| 19 | facility of a national securities exchanged, used and employed |
| 20 | in connection with the purchase and sale of a security a |
| 21 | manipulative and deceptive device and con try vans in violation |
| 22 | of Title 17, code of federal regulations Section 240-point-ton |
| 23 | B5 by A employing a device, scream and art face to defraud, B |
| 24 | making an untrue statement of a material fact and omitting to |
| 25 | state a material fact necessary in order to make the statements |

N9DUCOHP

1    made in light of the circumstances under which they were made

2    not misleading and, C, in engaging in an act, practice and

3    course of business which operated and would operate as a fraud

4    and deceit upon a person to wit, Mashinsky and cohoney pain

5    engaged in a a scream to defraud investors and C in correctly,

6    tone by heartedly manipulating the market for correctly token

7    and through making false and may leading statements about seals

8    just's purchases of correctly token and making false and

9    misleading statements about Mashinsky's own sales of correctly

10   tone in violation of section knew sealing anti-inflammatory

11   naturally family, United States Code, section accountants 78

12   shall JG and 78FF Title 17 code of federal ridges he did

13   regulation Section 240.10B5, and title neighbor, United States

14   Code, Section 2.

15         Do you understand that that's what you are what you

16   were charged with in count five of the indictment?

17         THE DEFENDANT:  Yes, I do.

18         THE COURT:  Do you understand if you did not plead

19   guilty the government would be required to prove beyond a

20   reasonable doubt at trial that you the defendant did any of the

21   following:  1T employed a device, scream or art face to defraud

22   or two, made an untrue statement of a material fact, or omitted

23   to state a material fact that made what was said under the

24   circumstances misleading, or, three, engaged in an act,

25   practice, or course of business that operated or would operate

N9DUCOHP

1  as a fraud or deceit upon a purchaser or seller, second, that

2  you, the defendant T acted willfully, knowingly and with the

3  went to defraud and, third, that the defendant knowingly used

4  or caused to be used any means or instruments of transportation

5  or communication in interstate commerce or the use of the mails

6  in furtherance of the fraudulent conduct.  Do you understand

7  that the give me a moment would be required to prove all of

8  that beyond a reasonable doubt at trial?

9          THE DEFENDANT:  Yes, I do, your Honor.

10          THE COURT:  Do you understand that that the maximum

11  penalty for the crime charged in count five is a maximum

12  sentence of 20 years imprincipalment, a maximum term of three

13  years supervised release, a maximum fine of the greatest of

14  $5 million or twice the gross peck DNA derived from the offense

15  or twice at peck loss to a person or persons other than

16  yourself as a result of the offense and a mandatory $100

17  special assessment?  Do you understand that that's the maximum

18  penalty for the crime charged in count five the indictment?

19          THE DEFENDANT:  Yes, I do.

20          THE COURT:  (special assessment.

21          THE COURT:  Count six of the indictment charges market

22  manipulation of correctly token, it repeats the allegations

23  contained in photographs one through 71 and 83 of the

24  indictment as realleged and incorporated by reference as if

25  fully set forth in count six and then goes on to charge that

N9DUCOHP

1   from at least in or about 2019 through at least in or about

2   June, 2022, in the southern constrict of New York and

3   elsewhere, Alex Mashinsky and respond Cohen-Pavon the

4   defendants willfully and knowing, would and did directly and

5   indirect by the use of the maims enor a means or instrumentty

6   much interstate commerce of a a facility of a national

7   securities exchange and for a member of a national securities

8   changes, effected alone with and with one and more other

9   persons a series of transactions in a security registered on a

10  national securities exchange, a security not so registered and

11  in connection with the security based swap or security based

12  swap agreement with respect to such security, creating actual

13  or apparently active trade not guilty such security and raising

14  anticipate depressing of price of such security for the purpose

15  of sexual abusing the purchase or sale of such security by

16  others, to wait Mary and Cohen-Pavon engaged in a a series of

17  transaction in correctly in order to artificially raise the

18  price of correctly and induce others to purchase correctly.

19  (it's apparently apparently apparently apparently apparently

20  apparently) in violation of Title 15, United States Code,

21  Sections 78IA2 and 78FF and ever and title insane United States

22  Section 2,.

23       Do you understand that's what you are charged with in

24  count six?

25       THE DEFENDANT:  Yes.

N9DUCOHP

1          THE COURT:  -- of the indictment?

2          THE DEFENDANT:  Yes, I do, your Honor.

3          THE COURT:  I don't have in front of me.  The elements

4     for a violation of 78IA2 in terms of market manipulation.

5          MR. HOBSON:  I can provide those to the Court if you

6     would like.

7          THE COURT:  Sure.

8          MR. HOBSON:  We understand that it has three elements,

9     first that the defendant, through a series of transactions

10    either created actual or apparently trading trading in the

11    security or raised or depressed the price of a security or

12    aided and abetted the same, second that the defendant acted for

13    the purpose of I say causing the purchase or the sale of the

14    security by identities, and third, that the defendant acted

15    willfully and with a manipulative purpose.

16         THE COURT:  Thank you.  Mr. Cohen-Pavon, do you

17    understand that the government would be required to prove all

18    of those elements beyond a reasonable doubt at trial?

19         THE DEFENDANT:  Yes, I do.

20         THE COURT:  Do you understand that that the maximum

21    penalty for the crime charged in count six is 20 years

22    imprisonment, a maximum term of three years supervised release,

23    a maximum fine of the greatest of $5 million or twice the gross

24    peck gain perfect $55 from the offense or twice the gross peck

25    loss to a person or persons other than yourself as a result of

N9DUCOHP

1   the offense and a mandatory one Hudson special assessment do

2   you understand that that's the maximum penalty for the crime

3   charged in count six?

4             THE DEFENDANT:  Yes.

5             THE COURT:  All right.  Count seven charges wire fraud

6   in connection with correctly token manipulation.  It pretrial

7   and realleges the allegations allegations contained in one

8   through 71 and 83, and incorporates them by reference and goes

9   on to charge that from at least in or about 2018 through at

10  least in or about June, 2022, in the Southern District of New

11  York and elsewhere, Alexer Mashinsky and Roni Cohen patch it

12  does, knowingly having deviced and intending to device a scheme

13  and art face to defraud and for obtaining money and property by

14  means of false and fraudulent presentences representations and

15  promises, transmitted and caused to be transmitted by means of

16  wire, radio and television communication in interstate and

17  foreign commerce writing signs signals, pictures and sounds for

18  the purpose of executing such scheme and art face to wit

19  Mashinsky and coenhance Pavon engaged in a scheme to defraud

20  investors in correctly token by artificially manipulating the

21  market for correctly token and through making false and

22  misleading statements about seals I couldn't say' purchase of

23  correctly token and making analysis and a misleading statements

24  about Mashinsky's own sales of to be including using interstate

25  wires some of which transited through the southern constrict of

N9DUCOHP

1    New York in violation of title insane, United States Code,

2    Sections 1343 and 2, do you understand that that's what you

3    were charged with in count seven of the indictment?

4              THE DEFENDANT:  Yes, I do.

5              THE COURT:  And do you understand that that if you did

6    not plead guilty the government would be required to prove

7    beyond a reasonable doubt at trial, first, that there was a

8    scheme or art if I say to defraud or to obtain money or

9    property by materially false and fraudulent preTennessee,

10   representations or promises as alleged in the indictment,

11   second, that you, the defendant, knowingly and willfully

12   participated in the scheme or art if I say to defraud with

13   knowledge of its fraudulent nature and with specific intent to

14   defraud and third, that execution of that scheme, you, the

15   defendant T used or caused the use of the mail --cused caused

16   the use of the interstate endures as specimen feed in the

17   indictment?  Do you understand that the government would be

18   required to prove all of that beyond a reasonable doubt at

19   trial?

20             THE DEFENDANT:  Yes, I do.

21             THE COURT:  Do you understand that that the maximum

22   penalty for the crime charged in count seven is a maximum

23   sentence of 20 years imprisonment, a maximum term of three

24   years supervised release, a maximum fine of the greatest of

25   $250,000 or twice the gross pecuniary gain derived from the

N9DUCOHP

offense or twice the gross pecuniary loss to a person or

persons other than yourself as a result of the offense and a

mandatory $100 special assessment?  Do you understand that

that's the maximum sentence for the crime charged in count

seven of the indictment?

THE DEFENDANT:  Yes, I do.

THE COURT:  Do you understand that that when I talk

about supervised release, supervised release means that you

will be subject to monitoring when you are released from prison

and the monitoring is to be on under terms and conditions which

could lead to reimprisonment without a jury trial if you violet

them?

THE DEFENDANT:  Yes.  I understand.

THE COURT:  And do you understand that that if you

violated the terms of supervised release and were sentenced to

prison you could be sentenced to prison to the entire time of a

a supervised release without any credit for any time you had

already spent on supervised release?

THE DEFENDANT:  Yes, I do.

THE COURT:  Do you also understand that part of your

sentence I must also order restitution to any person injured as

a result of your criminal conduct?

THE DEFENDANT:  Yes, I do.

THE COURT:  The indictment also includes a forfeiture

allegation in which the government seeks to have you forfit any

N9DUCOHP

1    and all property, real and personal, that constituted or is

2    derived from proceeds traceable to the commission of the

3    offenses including but not limited to a sum of of money in

4    United States currency representing the amount of proceeds

5    traceable to the commission of the offenses.

6             Do you understand?

7             THE DEFENDANT:  Yes, I do.

8             THE COURT:  So, do you understand that as part of your

9    sentence I can also order forfeiture?

10            THE DEFENDANT:  Yes, I do.

11            THE COURT:  Now, Mr. Cohen-Pavon you're pleading

12   guilty to different counts in the indictment.  Do you

13   understand you will be separately sentenced on each of those

14   counts, and that I can order that the sentences on those counts

15   be served concurrently, that is at the same time, or

16   consecretarytively, which means one right after the other.

17            Do you understand?

18            THE DEFENDANT:  Yes, I do.

19            THE COURT:  So you're actually facing a potential

20   sentence of 65 years on the four counts to which you're

21   entering a plea of guilty.

22            Do you understand digests yes, I do.

23            THE COURT:  And I can also order that the fines be

24   added together and that the special aassessments be add

25   together, so you're facing a special assessment of $400, do you

N9DUCOHP

1    understand that all of that?

2             THE DEFENDANT:  Yes, I do.

3             THE COURT:  Do you also understand that if I accept

4    your guilty plea and adjudge you guilty that adjudication may

5    deprive of of you of valuable civil rights or the right to

6    obtain valuable civil rights such as the right to vote, the

7    rate to hold you be public office the right to serve on a jury

8    and the right to possess any kind of firearm?

9             THE DEFENDANT:  Yes.  I understand.

10            THE COURT:  You've also told me that you are not a

11   citizen of the United States.  Do you understand that that your

12   conviction can be used to remove you from the United States to,

13   to deny you citizenship and to deny you admission to the United

14   States in the future.

15            Do you understand that that?

16            THE DEFENDANT:  Yes, I do.

17            THE COURT:  You've spoken to your lawyers about the

18   immigration consequences of your plea; is that right?

19            THE DEFENDANT:  Yes, I have.

20            THE COURT:  Now now, Mr. Cohen-Pavon under current law

21   there are sentencing guidelines that judges must consult in

22   determining your sentence.  You've spoken to your lawyers about

23   the sentencing guidelines, haven't you?

24            THE DEFENDANT:  Yes, I have.

25            THE COURT:  Do you understand that that I as the

N9DUCOHP

1    sentencing Court will not be able to determine your guidelines

2    sentence until after the probation department has completed the

3    presentence report and after you and your lawyers and the

4    government have had an opportunity to review the presentence

5    report to, to challenge anything contained in the report and to

6    bring those challenge to my attention.

7             Do you understand?

8             THE DEFENDANT:  Yes, I do.

9             THE COURT:  And even after its it's determined what

10   the basic guidelines sentencing range is in your case, I have

11   the authority in some circumstances to depart upward or

12   downward from the sentencing guideline range otherwise provided

13   for in your case.  Do you understand that that?

14            THE DEFENDANT:  Yes, I do.

15            THE COURT:  And even after I have made that

16   determination of the appropriate guidelines sentencing range in

17   your case, taking into account any upward or downward deposit

18   tours I must then consult other statutory factors in order to

19   arrive at a final conclusion as to what the appropriate and

20   reasonable sentence is is in your case.

21            Do you understand?

22            THE DEFENDANT:  Yes, I do.

23            THE COURT:  Do you also understand that if you are

24   sentenced to prison, parole has been apolish and you will not

25   be released any earlier on parole?

N9DUCOHP

1          THE DEFENDANT:  Yes, I do.

2          THE COURT:  Do you have any questions about that?

3          THE DEFENDANT:  No.

4          THE COURT:  Do you understand that that if your lawyer

5     or anyone else has attempted to estimate or predict what your

6     sentence will be that they're estimate or prediction could be

7     wrong?

8          THE DEFENDANT:  I understand.

9          THE COURT:  No one, Mr., Mr. Cohen-Pavon, not your

10    lawyers, not the government, no one can or should give you any

11    assurance of what your sentence will be since that sentence can

12    only be determined after the probation department has completed

13    the presentence report, after I have ruled on any challenges to

14    the report and you after I've determined what the appropriate

15    and reasonable sentence is in your case.

16          Do you understand?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  Do you also understand that even if your

19    sentence is different from what your lawyers or anyone else

20    told you, that it might be or if it's different from what you

21    expect it to be you will still be bound by your guilty plea and

22    you will not be allowed to withdraw your your plea of guilty?

23    Do you understand?

24          THE DEFENDANT:  Yes, I do.

25          THE COURT:  Now, Mr. Cohen-Pavon, I've been given the

N9DUCOHP

1    plea agreement, which you heard me talk about at the outset the

2    September 11th, 2023 letter to your lawyer from the

3    government.  It appears to be signed by you and Mr. Brown

4    today, September 13, 2023.  Have you signed this plea

5    agreement?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Did you read the agreement before you

8    signed it?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Did you discuss the agreement with your

11   lawyers before you signed it?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Did you fully understand the agreement

14   before you signed it?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Does this letter agreement con statute

17   your complete and total understanding of the entire agreement

18   between the government, your lawyers and you?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Is everything that you understand about

21   your plea and your sentence contained in this agree agreement?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Has anything been left out?

24             THE DEFENDANT:  No.

25             THE COURT:  Has anyone offered you any inducements or

N9DUCOHP

1    threatened you or forced you to plead guilty or to enter into

2    this agree agreement?

3           THE DEFENDANT:  No.

4           THE COURT:  Mr. Cohen-Pavon, the Court is not bound by

5    the plea agreement or by any of the provisions in the plea

6    agreement.  The Court must make an independent determination of

7    the appropriate sentence in your case and even if that sentence

8    differs from anything that's contained in the plea agreement,

9    you will still be bound by your guilty plea and you will not be

10   allowed to withdraw your plea of guilty.

11          Do you understand?

12          THE DEFENDANT:  Yes, I do.

13          THE COURT:  Were the brown, do you know of any valid

14   defense that would prevail at the trial of Mr. Cohen-Pavon is

15   this.

16          MR. BROWN:  No, your Honor.

17          THE COURT:  Do you know of any reason why

18   Mr. Cohen-Pavon should not be permitted to plead guilty?

19          MR. BROWN:  Yes, your Honor.

20          THE COURT:  Mr. Cohen-Pavon, there's tell me what you

21   did in connection with each of the crimes to which you are

22   entering a plea of guilty?

23          THE DEFENDANT:  Yes, your Honor.

24          In October of 2021, I became responsible for

25   overseeing and approving correctly's market purchases of the

N9DUCOHP

correctly I don't think.  Beginning in 2019, correctly seal just public told correctly market participants that ever that the company was purchasing amount of correctly in the market to fund the interest payment that it owed to seals just clients. From October 2021 through December 31, 2021, I oversaw and at times directly ordered a pattern of correctly I don't think purchases in excess of what the company needed to buy to meet its interest obligation.  I knew and understood that the purpose of these excess purchases was at least in part to increase the price of the correctly token, prevent the price of correctly token from dropping and all to create at appearance of a more liquid market in correctly tone trading all of which were intended to at least in part to induce additional correctly purchases by the public, at prices that likely did not reflect the true market price.  I communicated with other seals just employees by either email and telephone, about these rack excess purchases including the purpose behind the purchases at the time greed to order excess purchases based on the -- based on agreement with or orders from these other individuals.  Throughout this time disturb.

THE COURT:  I'm sorry hold on one sec, could you just go back a couple of sentences with respect to the agreement?

THE DEFENDANT:  I communicated -- this one, your Honor?

THE COURT:  Yes.  Go ahead?

N9DUCOHP

1          THE DEFENDANT:  I communicated with other seals I

2     couldn't say employees by either email and telephone about

3     these excess purchases including the purpose behind the

4     purchases and at times agreed to order excess purchases based

5     on agreement with or orders from these other individuals.

6          Throughout this time period I believe that the

7     psychiatry token qualified as a security and under the relevant

8     laws and regularlation.

9          THE COURT:  All right.

10          THE COURT:  In count four of the indictment, one of

11     the over theovert acts alleged is that on or about October 30,

12     2021, you and Mr. Mashinsky discussed by electronic message a

13     plan to artificially manipulate the price of correctly.  Did

14     you do that?

15          THE DEFENDANT:  Yes, your Honor.

16          THE COURT:  And was that in furtherance of the

17     conspiracy that you've described to me?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  Were any of the electronic communications

20     that you've mentioned, did they go through Manhattan or the

21     Bronx?

22          THE COURT:  Is this do you know, I can ask the

23     question of the government also but do you know?

24          THE DEFENDANT:  No, I don't, your Honor.

25          THE COURT:  What's the government ate proffer with

N9DUCOHP

1    respect to venue on each of the counts.

2              MR. HOBSON:  Your Honor I can proffer that a seals

3    just has a an office based in New York City, in Manhattan, that

4    a defendant Alex' Mashinsky was based in a Manhattan and that

5    several of the relevant emails and communications discussed

6    here were sent when Mashinsky was in Manhattan.  In addition

7    seals just's trading was often directed out of Manhattan.

8              THE COURT:  Okay.  The reason that I ask these

9    questions, Mr. Cohen-Pavon, is that the government would be

10   required to prove that there was republican 82 for each of the

11   counts in the Southern District of New York, Southern District

12   of New York, includes, Manhattan, the Bronx, Westchester, and

13   some other northern counties.  The government.  Government says

14   that it can do that.  A defendant has the right to be

15   prosecuted in a district where there is venue.  The government

16   says it could prove venue here in the Southern District of New

17   York for purposes of your plea, are you prepared to accept

18   that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  All right.  When you did the acts that

21   you've described to me, did you know that what you were doing

22   was wrong and illegal?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Does the government want me to ask any

25   other questions of the defendant?

N9DUCOHP

1          MR. HOBSON:  No, your Honor.

2          THE COURT:  Tell me what the government's evidence

3   would be at trial against the defendant.

4          MR. HOBSON:  Your Honor our evidence whether would

5   accruing among other things you documents and communications

6   involving the defendant and other members of the conspiracy

7   discussing the plan to manipulate the price of correctly token,

8   trading records showing actual purchases made in furtherance of

9   this plan, purchases which were in he is excess of seals I

10  couldn't say's public disclosures about the amount it was

11  purchasing, it would also include testimony from other members

12  of the conspiracy and other individuals at seems just who would

13  testify about the excess purchases.

14         THE COURT:  And would the government's evidence

15  establish the defendant's guilt beyond a reasonable doubt of

16  each of the counts to which he's pleading is this.

17         MR. HOBSON:  Yes, your Honor.

18         THE COURT:  All right.

19         Mr. Cohen-Pavon how do you plead to the charge against

20  you in count four of the indictment, guilty or not guilty?

21         THE DEFENDANT:  Guilty, your Honor.

22         THE COURT:  Mr. Cohen-Pavon how do you lead to the

23  charge against you in count five of the indictment, guilty or

24  not not guilty?

25         THE DEFENDANT:  Guilty your Honor grand jury

N9DUCOHP

1    Mr. Cohen-Pavon how do you plead to the charge against you in

2    count six of the indictment, guilty or not guilty not guilty?

3              THE DEFENDANT:  Guilty your Honor.

4              THE COURT:  Mr. Cohen-Pavon how do you plead to the

5    charge against you in count seven the indictment, guilty or not

6    guilty?

7              THE DEFENDANT:  Guilty, your Honor.

8              THE COURT:  Are you pleading guilty because you are,

9    in fact, guilty?

10             THE DEFENDANT:  Yes, I am.

11             THE COURT:  Are you pleading guilty voluntarily of and

12   of your own free will?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  Before I finally accept the defendant's

15   plea, Mr. Brown, do you want me to ask any other questions of

16   the defendant.

17             MR. BROWN:  No, your Honor.  Thank you.

18             THE COURT:  ADA do you know of any reason that I

19   should not accept his plea.

20             MR. BROWN:  I do not.

21             THE COURT:  Before I finally accept the defendant's

22   plea does the government want me to ask any other questions of

23   the defendant.

24             MR. HOBSON:  No, your Honor.

25             THE COURT:  Does the government know know of any

N9DUCOHP

1 | reason that I should not accept his plea?

2 |            MR. HOBSON:  No, your Honor.

3 |            THE COURT:  All right.  Mr. Cohen-Pavon because you

4 | acknowledge that you are guilty as charged this counts, four,

5 | five, six and seven of the indictment, because I find that you

6 | know your rights and are waiving them knowingly and

7 | voluntarily, because I find that your plea is entered knowingly

8 | and voluntarily and and is supported by an independent basis in

9 | fact containing each the essential elements of the offenses, I

10 | accept your guilty plea and I adjudge you guilty of the

11 | offenses to which you have pleaded.

12 |            Identification, the probation department will now

13 | prepare the presentence report to assist me in sentencing you.

14 | You will and interviewed by the probation can't, it's very

15 | important that the information you provide to the probation

16 | department be truthful and accurate.  The presentence report is

17 | very important to me in my decision as to what your sentence

18 | will be.

19 |            You and your lawyers will have the opportunity to

20 | review the presentence report to challenge anything contained

21 | in the report and then to speak ton your behalf at sentencing.

22 | I don't like control dates so, if the government can give me

23 | some reasonable estimate as to what a reasonable sentencing

24 | date is, we'll set that as the sentencing date.

25 |            MR. HOBSON:  Your Honor would be after the trial in

N9DUCOHP

|    |                                                                          |
|----|--------------------------------------------------------------------------|
| 1  | this matter which I think based on prior discussions with the            |
| 2  | Court we anticipate happening within the next year would would            |
| 3  | the Court be okay with a date that's a year out is this.                  |
| 4  | THE COURT:  Yes.                                                          |
| 5  | MR. HOBSON:  Why don't we do actually -- why why don't                    |
| 6  | we do a year and three months out.                                       |
| 7  | THE COURT:  Okay.                                                         |
| 8  | MR. HOBSON:  Which would be three months after a                         |
| 9  | potential trial date and we can of course come back to the               |
| 10 | Court if that changes.                                                    |
| 11 | THE COURT:  Absolutely.                                                   |
| 12 | MR. HOBSON:  We would also request that the                              |
| 13 | presentence report not be ordered until we're approaching that           |
| 14 | date.                                                                     |
| 15 | THE COURT:  Sure.  Of course.                                            |
| 16 | THE DEPUTY CLERK:  The Court has to give at least                        |
| 17 | notice to the probation department.  I can make a note that --           |
| 18 | THE COURT:  Tell the probation department to hold off                    |
| 19 | any presentence report until a time at least two months before           |
| 20 | the the proposed date Yom Kippur.                                         |
| 21 | THE DEPUTY CLERK:  Normal they since he's on bail they                   |
| 22 | want Lee.                                                                 |
| 23 | THE COURT:  Throw months.                                                |
| 24 | THE DEPUTY CLERK:  Or further order of the Court.                        |
| 25 | THE COURT:  Yes.  Fine.                                                   |

N9DUCOHP

1          THE DEPUTY CLERK:  Okay.

2          THE COURT CLERK:  The Court is giving notice to the

3    probation department that there be no PSI which enemies a were

4    I sentence investigation or PSR presentence report until

5    further order of the Court.

6          THE COURT:  Okay..  Okay and I didn't --

7          THE COURT:  Sentencing date.

8          THE DEPUTY CLERK:  December 11th at 11 a.m.

9          THE COURT:  December 11th.

10          THE DEPUTY CLERK:  202014.

11          THE COURT:  2024 at 11 a.m., the defense submission

12    should be given at least 14 days before sentence, the

13    government's submission at least eight days before sentence.

14    No -- no changes in the defense in the defendant release; is

15    that right.

16          MR. HOBSON:  That's correct, your Honor.

17          THE COURT:  Okay.  Mr. Cohen-Pavon, I fixed the

18    indicate date for sentence, do you understand that that if you

19    fail to return to my courtroom on the date fixed for sentence

20    or any adjourn date you will be guilt guilty of a criminal

21    offense for which you could be sentenced to prison wholly

22    separate and apart and in addition to any sentence that you may

23    receive for the crimes to which you just end entered a plea of

24    guilty.  Do you understand that that?

25          THE DEFENDANT:  Yes, I do.

N9DUCOHP

1          THE COURT:  Do you also understand I'm counting all of

2     the conditions of your release and the violation of any of any

3     of those conditions can have serious consequences for you.  Do

4     you understand that that?

5          THE DEFENDANT:  Yes, I do.

6          THE COURT:  Okay.  Anything else?

7          MR. HOBSON:  No, your Honor.

8          MR. BROWN:  No, your Honor.  For the avoidance of

9     doubt my client's excused for any to status until the

10    sentencing is that fair.

11         THE COURT:  Oh.  Yes.

12         MR. BROWN:  Thank you.

13         THE COURT:  Yes.  The government had raised the issue

14    about the prior proceedings were not docketed or sealed.

15    There's no reason for any further sealing or any delay in

16    docketing, right?

17         MR. HOBSON:  Not from the government ease perspective.

18         THE DEPUTY CLERK:  So the clerk can publish -- can

19    file the minute entry into the Court docket?

20         MR. HOBSON:  Yes, your Honor.

21         THE COURT:  Yes.

22         THE DEPUTY CLERK:  Yes okay.

23         THE COURT:  And I'm returning Court Exhibit 1 to the

24    government and I assume the September 5 letter can also be

25    docketed.

N9DUCOHP

1                MR. HOBSON:  No objection to that, your Honor.

2                THE COURT:  But the Court Exhibit 1 is never docketed

3      and I'm returning Court Exhibit 1 to the government.

4                Okay..

5                THE COURT:  Good afternoon, all.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25