UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

ALEXANDER MASHINSKY and RONI
COHEN-PAVON,

                  Defendants.

Case No. 23 Cr. 347 (JGK)

**ORAL ARGUMENT REQUESTED**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT
ALEXANDER MASHINSKY'S MOTION TO DISMISS COUNTS TWO AND SIX OF
THE INDICTMENT AND MOTION TO STRIKE SURPLUSAGE**

MUKASEY YOUNG LLP
570 Lexington Avenue, Suite 3500
New York, New York 10022
Tel: (212) 466-6400

*Counsel for Alexander Mashinsky*

## TABLE OF CONTENTS

ARGUMENT ...........................................................................................................................1

POINT I        THE COMMODITIES FRAUD COUNT IS REPUGNANT TO AND
INCONSISTENT WITH THE SECURITIES FRAUD COUNT...........................1

    A.    Simply Tracking The Statutory Language Cannot Save A Repugnant Count.........2
    B.    The Government's Recitation Of The Indictment's Factual Allegations
Confirms That Count Two Is Repugnant.................................................................2
    C.    Count Two Does Not Charge An Alternative Theory Of Liability .......................4
    D.    The Government Misconstrues The *Howey*-Line Of Cases In this District ...........5
    E.    The Government Misconstrues Mr. Mashinsky's Motion ......................................6

POINT II      COUNT SIX SHOULD BE DISMISSED FOR LACK OF FAIR NOTICE .........7

    A.    The Government's Factual Concessions Render Mr. Mashinsky's
Motion Timely ........................................................................................................8
    B.    The Language Of Section 9(a)(2) Provided No Notice Of The Government's
Theory of Prosecution...........................................................................................10
    C.    The Government's Resort To Section 78ff Establishes The Second Prong
Of The Vagueness Doctrine...................................................................................11
    D.    The Government's Fallback Argument Has No Grounding In The Statute
Or The Case Law ...................................................................................................14

POINT III     THE COURT SHOULD STRIKE AS SURPLUSAGE ALL REFERENCES IN
THE INDICTMENT TO THE CELSIUS BANKRUPTCY ...............................15

CONCLUSION.................................................................................................................20

## TABLE OF AUTHORITIES

**CASES**

*CFTC v. McDonnell*,
   287 F. Supp. 3d 213 (E.D.N.Y. 2018),
   *adhered to on denial of reconsideration*, 321 F. Supp. 3d 366 (E.D.N.Y. 2018) ...................... 5

*CFTC v. Wilson*,
   Case No. 12 Civ. 7884 (RJS), 2018 WL 6322024 (S.D.N.Y. Nov. 30, 2018)......................... 11

*Chiarella v. United States*,
   445 U.S. 222 (1980) ................................................................................................... 12

*Crane Co. v. Westinghouse Air Brake Co.*,
   419 F.2d 787 (2d Cir. 1969) .................................................................................... 9, 11

*Denny v. Barber*,
   576 F.2d 465 (2d Cir. 1978) ......................................................................................... 16

*Devonbrook, Inc. v. Lily Lynn (Lilywear), Inc.*,
   No. 70 Civ. 4687, 1977 WL 921 (S.D.N.Y. Jan. 10, 1977) ...................................... 15

*Ernst & Ernst v. Hochfelder*,
   425 U.S. 185 (1976) ................................................................................................... 13

*HTC Corp. v. Tech. Properties Ltd.*,
   No. 5:08 Civ. 00882-PSG, 2013 WL 4782598 (N.D. Cal. Sept. 6, 2013) ......................... 18, 19

*Kasilingam v. Tilray, Inc.*,
   No. 20 Civ. 03459 (PAC), 2021 WL 4429788 (S.D.N.Y. Sept. 27, 2021) .............................. 16

*Kolender v. Lawson*,
   461 U.S. 352 (1983) ................................................................................................... 13

*Mannix v. Phillips*,
   619 F.3d 187 (2d Cir. 2010)................................................................................. 11, 13, 14

*McBoyle v. United States*,
   283 U.S. 25 (1931) .................................................................................................... 7, 12

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000) ...................................................................................... 16, 17

*S.E.C. v. Malenfant*,
   784 F. Supp. 141 (S.D.N.Y. 1992)................................................................................ 11

*S.E.C. v. Masri*,
   523 F. Supp. 2d 361 (S.D.N.Y. 2007).............................................................................. 7

*S.E.C. v. Telegram Grp. Inc.*,
   448 F. Supp. 3d 352 (S.D.N.Y. 2020)............................................................................. 6

*S.E.C. v. Unique Fin. Concepts, Inc.*,
   196 F.3d 1195 (11th Cir. 1999)...................................................................................... 1

*S.E.C. v. Vali Mgmt. Partners*,
  Case No. 21-453, 2022 WL 2155094 (2d Cir. June 15, 2022) ................................ 13

*Santa Fe Industries, Inc. v. Green*,
  430 U.S. 462 (1977) ................................................................................................ 7

*Screws v. United States*,
  325 U.S. 91 (1945) .................................................................................................. 12

*Stevelman v. Alias Research Inc.*,
  174 F.3d 79 (2d Cir. 1999) ...................................................................................... 16

*United States v. Aleynikov*,
  737 F. Supp. 2d 173 (S.D.N.Y. 2010) ............................................................. 2, 8, 10

*United States v. Chiarella*,
  558 F.2d 1358 (2d Cir. 1978) ............................................................................ 12, 13

*United States v. Conde*,
  309 F. Supp. 2d 510 (S.D.N.Y. 2003) ...................................................................... 3

*United States v. DeFilippo*,
  --- F. Supp. 3d ----, No. 3:21 Cr. 128 (VAB), 2023 WL 5000385 (D. Conn. Aug. 4, 2023)...... 8

*United States v. Greebel*,
  No. 15 Cr. 637 (KAM), 2017 WL 3610570 (E.D.N.Y. Aug. 4, 2017) ..................... 19

*United States v. Heicklen*,
  858 F. Supp. 2d 256 (S.D.N.Y. 2012) ...................................................................... 2

*United States v. Hild*,
  644 F. Supp. 3d 7 (S.D.N.Y. 2022) ......................................................................... 16

*United States v. Issak Almaleh*,
  No. 17 Cr. 25 (ER), 2022 WL 602069 (S.D.N.Y. Feb. 28, 2022) ........................... 19

*United States v. Lanier*,
  520 U.S. 259 (1997) ............................................................................................ 7, 12

*United States v. Masotto*,
  73 F.3d 1233 (2d Cir. 1996) ..................................................................................... 4

*United States v. Rajaratnam*,
  Case No. 12 Cr. 211 (NRB), 2014 WL 1554078 (S.D.N.Y. April 17, 2014) .......... 2, 3, 4

*United States v. Reed*,
  Case No. 20 Cr. 500 (JGK), 2022 WL 597180 (S.D.N.Y. Feb. 28, 2022) ................ 4

*United States v. Reliant Services, Inc.*,
  420 F. Supp. 2d 1043 (N.D. Cal. 2006) .................................................................. 12

*United States v. Stein*,
  456 F.2d 844 (2d Cir. 1972) ................................................................................ 9, 12

*United States v. Ulbricht*,
  Case No. 14 Cr. 68 (KBF), 2014 WL 5410049 (S.D.N.Y. Oct. 24, 2014) ................ 4

*United States v. Velastegui*,
    199 F.3d 590 (2d Cir. 1999) ................................................................................................. 10

*United States v. Wedd*,
    993 F.3d 104(2d Cir. 2021) ...................................................................................................... 2

*Walling v. Beverly Enterprises*,
    476 F.2d 393 (9th Cir. 1973) ................................................................................................ 16

*Whitfield v. Ricks*,
    Case No. 01 Civ. 11398 (LAK), 2006 WL 3030883 (S.D.N.Y. Oct. 24, 2006) ........................ 4

*Woolgar v. Kingstone Companies, Inc.*,
    477 F. Supp. 3d 193 (S.D.N.Y. 2020) .................................................................................... 16

Defendant Alexander Mashinsky respectfully submits this Reply Memorandum of Law in further support of his pretrial motions to: 1) dismiss Count Two of the Indictment; 2) dismiss Count Six of the Indictment; and 3) strike as surplusage all references to Celsius's bankruptcy proceeding.  For the reasons set forth below, Mr. Mashinsky's motions should be granted.

**ARGUMENT**

**POINT I**

**THE COMMODITIES FRAUD COUNT IS REPUGNANT TO AND INCONSISTENT WITH THE SECURITIES FRAUD COUNT**

As described in Mr. Mashinsky's opening brief (ECF No. 42, hereinafter, "Br."), the government has brought simultaneous securities fraud and commodities fraud charges based on a single investment vehicle.  Br. at 2-3, 5-6.  That charging decision flouts: (1) the facts alleged in the Indictment (*see* Br. at 9-11); (2) a consistent line of cases applying the *Howey* test to cryptocurrencies and forbidding defendants from dividing "the whole" into its component parts (*see* Br. at 6-9); and (3) Congressional intent in carving out concurrent jurisdiction for the SEC and the CFTC in the case of commodity pools, but not in the case of all vehicles that might constitute an investment contract under *Howey*.  *See* Br. at 5-6 (citing *S.E.C. v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1202 n.8 (11th Cir. 1999)).

The government's opposition brief (ECF No. 43, hereinafter, "Opp. Br.") suffers from two fundamental flaws.  First, the government fails to cite a single case—criminal or civil—in which a defendant was simultaneously charged with securities fraud and commodities fraud based on the same investment vehicle.  Second, the government touts the Indictment's detailed factual allegations, Opp. Br. at 7, yet rests its entire opposition on a single word— "sell."  Opp. Br. at 11, 12, 16 (citing Indictment ¶ 75).  That word, which appears only in the "to wit" clause of Count Two, lacks foundation in either the factual allegations of the Indictment or the

government's recitation of those allegations in its opposition brief.  The proper remedy is dismissal of the repugnant commodities fraud count charged in Count Two.

### A.    Simply Tracking The Statutory Language Cannot Save A Repugnant Count

The government's opposition points to well-accepted Second Circuit case law holding that "an indictment need do little more than to track the language of the statute charged and state the time and place . . . of the alleged crime."  Opp. Br. at 8 (quoting *United States v. Wedd*, 993 F.3d 104, 120 (2d Cir. 2021)).  But that does not save them here.  The cases cited in Mr. Mashinsky's opening brief that dismissed repugnant or contradictory counts indeed satisfied the standard in *Wedd* and appropriately tracked the statutory language.  *See, e.g., United States v. Rajaratnam*, Case No. 12 Cr. 211 (NRB), 2014 WL 1554078, at *1-3, 6-7 (S.D.N.Y. April 17, 2014) (denying motion to dismiss for failure to allege essential elements of crimes charged, but reserving decision and ultimately dismissing two repugnant counts); *see also United States v. Heicklen*, 858 F. Supp. 2d 256, 275 (S.D.N.Y. 2012) (dismissing jury tampering charge that tracked statutory language after finding factual allegations insufficient as a matter of law); *see also United States v. Aleynikov*, 737 F. Supp. 2d 173, 194 (S.D.N.Y. 2010) (same for unauthorized computer access charge that tracked statutory language).

The standard in *Wedd* is not a barrier to dismissal of the Indictment's repugnant and internally inconsistent commodities fraud count.

### B.    The Government's Recitation Of The Indictment's Factual Allegations Confirms That Count Two Is Repugnant

The allegations in the Indictment undermine the statutory requirement for a "sale" of a commodity.  Rather than addressing the Indictment's factual inconsistency, the government ignores it.  The government concedes that the Indictment's allegations center on the Earn program, and that, as alleged, the program constituted an investment contract in which customers

either "deposit[ed]," Opp. Br. at 1-2, 10, 16, "provid[ed]," Opp. Br. at 2, 9, 12, "invest[ed]," Opp.

Br. at 2, 10, 11, 26, or "transfer[red]," Opp. Br. at 17, their crypto assets to Celsius, including

Bitcoin.  The Earn program was *not* a contract of *sale*, nor does the Indictment allege so.  Not

one customer ever "sold" Bitcoin to Celsius in connection with the Earn program.  Yet, the

government summarily concludes that Count Two is sufficient because the "to wit" clause

departs from the Indictment's factual allegations and implants the statutory "sale" language of

the Commodities Exchange Act.  Opp. Br. at 11, 12, 16 (citing Indictment ¶ 75).

      In support of this flawed conclusion, the government argues that *United States v. Conde*

held that charges are only fatally inconsistent if they are "mutually exclusive."  309 F. Supp. 2d

510 (S.D.N.Y. 2003).  That misconstrues the court's holding.  In *Conde*, Judge Buchwald found

that the factual allegations in the two counts were mutually exclusive but clarified that an

indictment is defective "if it contains logically inconsistent counts."  *Id.* at 511.  Judge Buchwald

then confirmed that standard in *Rajaratnam*.  2014 WL 1554078, at *6.  Indeed, the factual

allegations in *Rajaratnam* were *not* mutually exclusive—one count charged one individual with

causing a hedge fund's purchase of stock based on material, nonpublic information, while the

other count charged the defendant with causing that same stock purchase.[1]  *Id.* at *6-7.

      As to the government's reliance on the sole appearance of the word "sell" in the "to wit"

clause of Count Two, (Indictment at ¶ 75), when such a charge is contradicted by every factual

allegation in a detailed indictment, the appropriate remedy is dismissal.  *See Rajaratnam*, 2014

WL 1554078, at *6-7; *see also Rajaratnam*, Case No. 12 Cr. 211 (NRB), ECF No. 55 (Order

dismissing Counts Four and Seven) (S.D.N.Y. May 6, 2014).  Just as Judge Buchwald dismissed

---

[1] The government's various permutations of how a hypothetical jury could treat Count One and Count Two in this case are equally applicable to *Rajaratnam*'s charges that two different individuals caused the same stock purchase.  *See* Opp. Br. at 13-14.

the two repugnant counts in *Rajaratnam* after finding that the government "fail[ed] to allege a single fact that conceivably supports its aiding and abetting theory[,]" the Court should dismiss Count Two based on the government's failure to reconcile the "to wit" clause with the Indictment's repeated and inconsistent allegations.  *See Rajratnam,* 2014 WL 1554078, at *7.

      **C.**      **Count Two Does Not Charge An Alternative Theory Of Liability**

In a footnote, the government argues that Count Two merely charges an alternative theory of liability to Count One.  *See* Opp. Br. at 11 n.2.  The cases cited by the government belie that argument.  *United States v. Ulbricht* addressed an indictment that charged a defendant with principal violations of the narcotics laws in one count, and aiding and abetting violations in other counts.  Case No. 14 Cr. 68 (KBF), 2014 WL 5410049, at *4 (S.D.N.Y. Oct. 24, 2014) (quoting *Whitfield v. Ricks*, Case No. 01 Civ. 11398 (LAK), 2006 WL 3030883, at *12 (S.D.N.Y. Oct. 24, 2006)).  *United States v. Masotto* discussed alternative theories of liability for a *single* count of using a firearm during the commission of a robbery, one under a conspiracy-based theory of liability and the other under an aiding-and-abetting theory.  73 F.3d 1233, 1241-42 (2d Cir. 1996).

The government fares no better with its citation to this Court's decision in *United States v. Reed*, Case No. 20 Cr. 500 (JGK), 2022 WL 597180 (S.D.N.Y. Feb. 28, 2022).  Opp. Br. at 12.  The government stretches this case to apply to alternative theories of liability when it was instead a commentary on overlapping regulatory jurisdiction.  In *Reed*, the court noted that "several agencies may have concurrent regulatory authority in the cryptocurrency space[,]" but that case did not involve simultaneous securities fraud and commodities fraud charges.  *Id.* at *4.  *Reed* makes clear that concurrent regulatory authority may be appropriate "when virtual currencies *function differently* than derivative commodities."  *Id.* (citing *CFTC v. McDonnell*, 287 F. Supp.

3d 213, 228-29 (E.D.N.Y. 2018) (emphasis added), *adhered to on denial of reconsideration*, 321 F. Supp. 3d 366 (E.D.N.Y. 2018)).

This is not a case in which virtual currencies are functioning differently in different contexts.  This is a case in which virtual currencies, including Bitcoin, are functioning in the same context—they are allegedly being deposited, provided, invested, or transferred into a single investment vehicle.  Cherry-picking one of those virtual currencies and charging transactions in that currency as commodities fraud is not a viable theory of liability when the law in this district is that both the deposited virtual currencies and the broader investment vehicle are considered securities if the government is able to prove the *Howey* elements.  *See* Br. at 6-9.

### D.    The Government Misconstrues The *Howey*-Line Of Cases In This District

The government cites no authority for the proposition that the same cryptocurrency functioning in a single alleged investment contract can be both a security and a commodity at the same time.  That proposition has repeatedly been rejected by courts in this district.  *See* Br. at 6-9.  In attempting to distinguish the cases applying *Howey* to cryptocurrencies, the government first argues that Mr. Mashinsky has conceded that the Earn program constitutes a security.  Opp. Br. at 15.  He did no such thing.  Mr. Mashinsky's opening brief was explicit that he made no such concession.  Br. at 9.

The government tries to avoid the consistent line drawn by *Telegram*, *Ripple Labs*, and *Terraform Labs* by arguing that those cases involved different crypto assets and different investment schemes than Celsius's Earn program.  Opp. Br. at 15-16.  The critical point, however, is the legal framework applied in those cases, not which crypto asset or investment scheme the framework was applied to.  The government similarly notes that *S.E.C. v. Terraform Labs* did not address whether the crypto assets in that case met the definition of a commodity

under the CEA.  Opp. Br. at 16.  But that precise point was decided by Judge Castel in *S.E.C. v. Telegram*.  As Mr. Mashinsky highlighted in his opening brief, Br. at 7, the defendant in *Telegram* argued that the crypto assets at issue "would be commodities, not securities, because [they] would be used consumptively . . . ."  *S.E.C. v. Telegram Grp. Inc.*, 448 F. Supp. 3d 352, 379 (S.D.N.Y. 2020).  Judge Castel rejected this attempt to separate the parts from the whole, and held that an investment contract under *Howey* "consists of the full set of contracts, expectations, and understandings centered on the sales and distribution of the [crypto asset]."  *Id.*

More broadly, and as the government tacitly concedes, no court we have seen has addressed the simultaneous application of the securities laws and the commodities laws to the same investment vehicle, which is the issue here.  In *Terraform Labs*, *Ripple Labs*, and *Telegram*, the deposit of cryptocurrencies into an investment protocol was a security under *Howey* and the courts held that the defendants in those cases could not compartmentalize the protocols to avoid the reach of the securities laws.  Br. at 6-9.  The government should not be able to either. Br. at 9.

### E. The Government Misconstrues Mr. Mashinsky's Motion

Finally, the government accuses Mr. Mashinsky of mischaracterizing the Indictment, Opp. Br. at 11, but it is the government that misconstrues the defense's motion.  It is not Mr. Mashinsky's position that the Commodities Exchange Act "permits fraudulent schemes in connection with the sale of commodities so long as the fraudster is the *buyer*[.]"  Opp. Br. at 16. Instead, it is Mr. Mashinsky's position that a commodities fraud count in an Indictment should be dismissed when every factual allegation set forth in the Indictment (and now, in the government's opposition brief) makes clear that no commodity was ever "sold" to Celsius in connection with the Earn program.  Under *Rajaratnam*, that is not a factual argument, it is a proper legal challenge to a defective charging instrument.

For the foregoing reasons, the Indictment's repugnant commodities fraud count should be dismissed.

## POINT II

## COUNT SIX SHOULD BE DISMISSED FOR LACK OF FAIR NOTICE

The government's theory of market manipulation criminalizes bona fide open-market transactions with real counterparties, so long as they are conducted with the wrong state of mind. Br. at 18-22. This theory violates "hornbook criminal law[,]" *see S.E.C. v. Masri*, 523 F. Supp. 2d 361, 367 n.11 (S.D.N.Y. 2007) and Supreme Court precedent. *See Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 476 (1977) (market manipulation is "virtually a term of art when used in connection with securities markets."). Mr. Mashinsky lacked fair notice of this theory, which appears in neither the plain language of Section 9(a)(2) nor any criminal prosecutions of the statute prior to the alleged conduct. *See* Br. at 18-24.

The only criminal precedent cited by the government that adopted its theory in a 9(a)(2) prosecution is an unpublished order entered on the docket seven months *after* the Indictment period in this case. Opp. Br. at 22 (citing *United States v. Hwang*, Case No. 22 Cr. 240 (AKH), ECF No. 66 (Order on Pretrial Motions), at 3 (S.D.N.Y. March 23, 2023)). This alone establishes that the government's market manipulation theory violates due process and the Supreme Court's instruction that a statute must make clear that violative conduct exposes a person to criminal consequences. Br. at 13 (citing *McBoyle v. United States*, 283 U.S. 25, 27 (1931) and *United States v. Lanier*, 520 U.S. 259, 267 (1997)).

First, the government argues that Mr. Mashinsky's motion is premature, yet it does not dispute the operative facts needed to decide this motion. Second, it attempts to show that the language of Section 9(a)(2) is unambiguous, but simultaneously highlights the statute's

7

ambiguity.  And third, it relies on Section 78ff of the Exchange Act, confirming the imposition

of an arbitrary distinction between civil and criminal violations of Section 9(a)(2).  Accordingly,

the Court should dismiss Count Six.

### A.     The Government's Factual Concessions Render Mr. Mashinsky's Motion Timely

The government first argues that Mr. Mashinsky's fair notice motion is premature

because courts in this district have deferred other due process challenges until there is a fully

developed trial record.  Opp. Br. at 19.  But the government cites no binding precedent

mandating that a district court defer all fair notice challenges until after trial, without exception.

*Cf. United States v. DeFilippo*, --- F. Supp. 3d ----, Case No. 3:21 Cr. 128 (VAB), 2023 WL

5000385, at *6 (D. Conn. Aug. 4, 2023) (granting motion to dismiss because the defendant

"lacks the constitutionally required notice that his conduct violated the law").

Deferring a decision here is unnecessary given the government's factual concessions.

With no disputed operative facts, there is no reason for the Court to wait until after trial to

address this motion.  Courts in this district have addressed fact-based challenges to the

sufficiency of an indictment when the government concedes the operative facts needed to decide

such a motion.  In *Aleynikov*, even though the indictment's unauthorized computer access charge

tracked the statutory language, *see* Opp. Br. at 8, Judge Cote still dismissed the count based on

the government's concession that the defendant was authorized to access the source code that he

allegedly stole from his employer.  *See* 737 F. Supp. 2d at 190-91, 194.

Here, despite a detailed recitation of the Indictment's factual allegations, the government

concedes that its market manipulation theory is based on open-market transactions, Opp. Br. at

21, and does not dispute that Celsius executed these bona fide transactions with real

counterparties.  *See* Br. at 12, 18.  There are no allegations of nominee accounts, wash trading,

matched orders, or other collusive conduct that would have rendered the open-market transactions artificial in any sense.  *See* Br. at 12-13.  These were real transactions.  Nor does the government dispute that Celsius purchased CEL at the then-current market price for the token.  *See* Br. at 12.  These were real prices.[2]

The government suggests these open-market purchases were improper because Mr. Mashinsky allegedly told the public that "Celsius was purchasing CEL in the market to pay customers their weekly CEL rewards, [when] in reality, Mashinsky directed Celsius to purchase volumes of CEL well in excess of the amount required to pay weekly CEL rewards."  Opp. Br. at 4.  But the government acknowledges throughout its opposition brief that Section 9(a)(2) contains no additional element of deceptive conduct, rendering such allegedly misleading statements irrelevant to the Court's analysis.[3]  Opp. Br. at 18, 23.  Nor can the government claim that Celsius's market purchases of CEL token were manipulative because they simply bought too much.  Section 9(a)(2) "does not condemn extensive buying or buying which raises the price of a security in itself."  *See Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 794 (2d Cir. 1969).

The only other explanation that the government offers for how bona fide open-market transactions could constitute criminal manipulation is its theory of prosecution here.  According to the government, Celsius's open-market purchases of CEL token—real transactions with real

---

[2] As the government does not dispute this fact, to the extent the market price for CEL token increased or decreased in response to any of Celsius's allegedly manipulative transactions, those changes reflected the natural, market-based forces of supply and demand rather than any collusive or artificially rigged price.  *See United States v. Stein*, 456 F.2d 844, 850 (2d Cir. 1972) ("The purpose of the statute is to prevent rigging of the market and to permit operation of the natural law of supply and demand.").

[3] The government took the same position in *Hwang*: "[T]he Second Circuit has squarely rejected the argument that some form of deceit or misrepresentation beyond the intent to create an artificial price is required."  Case No. 22 Cr. 240 (AKH), ECF No. 53 (Govt. Opposition Brief), at 24 (emphasis added).

counterparties executed at the then-current market price—were criminally manipulative *solely* because they were conducted with the wrong state of mind: with "manipulative intent." Opp. Br. at 21. Considering the government's concession of the operative facts there is no need for the Court to wait until after trial to address Mr. Mashinsky's fair notice challenge. *See Aleynikov.*, 737 F. Supp. 2d at 194.

**B.     The Language Of Section 9(a)(2) Provided No Notice Of The Government's Theory of Prosecution**

The conduct alleged in the Indictment—price manipulation through bona fide open-market purchases—is not covered by the plain language of Section 9(a)(2).[4] Br. at 23-24. First, the statute does not contain the word "manipulation," let alone require price manipulation as an essential element. *Id.* Second, the single defining element on which the government rests its theory of prosecution—so-called "manipulative intent"—appears nowhere in the language of the statute either. *Id.*

The government argues that the statutory language is unambiguous under the following rationale:

> That is, engaging in transactions "raising or depressing the price" of the security is included in the language of the statute itself. In fact, creating actual or apparent active trading or raising or depressing the price of a security is an element of the offense. *Stein*, 456 F.2d at 850; *Malenfant*, 784 F. Supp. at 144. A scheme wherein the defendant buys a security, raising the security's price, with the purpose of causing others to purchase or sell, as alleged in the Indictment, is the very heartland of Section 9(a)(2).

---

[4] The government claims that Mr. Mashinsky "does not argue that the statute itself is constitutionally deficient," Opp. Br. at 21, but that is exactly what he argued in his motion. Br. at 23-24 (arguing the Court should dismiss Count Six under the vagueness doctrine). Similarly, the government claims that Mr. Mashinsky did not identify any ambiguous provision of Section 9(a)(2). Opp. Br. at 20 n.5. Under the case law cited by the government in its footnote, a statute whose plain terms do not reach the very conduct alleged to be unlawful is by definition ambiguous. *United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999) ("Therefore, we must decide whether Defendants' conduct . . . falls clearly within the range of criminal liability under section 1960.").

Opp. Br. at 20.  But according to the Supreme Court and courts in this district, what the government calls "the very heartland" of Section 9(a)(2)—"engaging in transactions 'raising or depressing the price' of the security"—does not even violate the statute.  *See Crane*, 419 F.2d at 794 (Section 9(a)(2) "does not condemn extensive buying or buying which raises the price of a security in itself."); *S.E.C. v. Malenfant*, 784 F. Supp. 141, 144 (S.D.N.Y. 1992) (The "central purpose of [S]ection 9(a) is not to prohibit market transactions which may raise or lower the price of securities . . .") (citations omitted).

Engaging in transactions that raise or depress the price of a security is not price manipulation, it is lawful market activity.  *Cf. CFTC v. Wilson*, Case No. 12 Civ. 7884 (RJS), 2018 WL 6322024, at *14-15 (S.D.N.Y. Nov. 30, 2018) (dismissing market manipulation claim and rejecting CFTC's "tautological fallback argument that endeavors to conflate artificial prices with the mere intent to affect prices").  Only when the government adds—"that the defendant acted willfully and with a manipulative purpose"—does the statute, according to the government, reach the proscribed conduct.  Opp. Br. at 18.  But there is no "manipulative purpose" or "manipulative intent" element in the language of the statute.

A statute that neither prohibits "the very heartland" of proscribed conduct, Opp. Br. at 20, nor includes the single element that divides lawful conduct from criminal, Opp. Br. at 21, is unconstitutionally vague.  *See Mannix v. Phillips*, 619 F.3d 187, 197 (2d Cir. 2010) (requiring criminal statute to define the offense "with sufficient definiteness [so] that ordinary people can understand what conduct is prohibited").

### C.   The Government's Resort To Section 78ff Establishes The Second Prong Of The Vagueness Doctrine

The government tries to salvage the ambiguities embedded within Section 9(a)(2) by resorting to the same case law it relied on in *Hwang*.  Opp. Br. at 21-22.  Those cases were either

11

civil applications of Section 9(a)(2), or criminal applications of different statutes—Section 10(b) and the Commodities Exchange Act.  Neither category provided Mr. Mashinsky with the notice required by the Supreme Court—that his conduct could subject him to criminal penalties under the charged statute.  *See McBoyle*, 283 U.S. at 27; *Lanier*, 520 U.S. at 267.

The government argues that Mr. Mashinsky's acknowledgment of recent civil applications of Sections 9(a)(2) and 10(b) "is effectively a concession that the statute *does* provide fair notice[,]" relying primarily on 15 U.S.C. § 78ff to support its argument.[5]  Opp. Br. at 21-22.  Section 78ff, however, merely establishes that a defendant may be subject to criminal liability for a willful violation of the Exchange Act.  An unconstitutionally vague criminal statute does not become constitutional simply because Congress attaches a willfulness element to it.  *See Screws v. United States*, 325 U.S. 91, 105 (1945) ("Of course, willful conduct cannot make definite that which is undefined."); *see also United States v. Reliant Services, Inc.*, 420 F. Supp. 2d 1043, 1053 (N.D. Cal. 2006) ("Although a specific intent requirement will generally thwart a defendant's vagueness argument, it will 'not necessarily validate a criminal statute against all vagueness challenges.'  Hence, there is a small group of cases in which a defendant may have the required *mens rea*, but the *actus reus* which is prohibited by the statute is undefined or unclear and cannot form the basis of a criminal conviction[.]") (internal citation omitted).

In fact, the government hinging its fair notice argument on Section 78ff itself establishes the second prong of the vagueness doctrine: that criminal statutes must define the offense "in a manner that does not encourage arbitrary and discriminatory enforcement."  Br. at 23 (quoting

---

[5] The government also cites to *Stein*, 456 F.2d at 850-51, a 9(a)(2) prosecution based on trading that violated two SEC rules that are not referenced anywhere in the Indictment, and *United States v. Chiarella*, 558 F.2d 1358, 1368 n.16 (2d Cir. 1978), a Second Circuit decision that was reversed by the Supreme Court for finding non-criminal conduct criminal.  *Chiarella v. United States*, 445 U.S. 222, 234-35 (1980).

*Mannix*, 619 F.3d at 197) (internal citations omitted).  The government argues that the dividing

line between lawful open-market transactions and a civil regulatory violation is merely

"manipulative intent."  Opp. Br. at 21.  At the same time, it argues that the dividing line between

a civil regulatory violation and a criminal offense is merely willfulness.  Opp. Br. at 22.  But if

the government is correct, then in fact, there is no distinction between civil and criminal

violations of 9(a)(2), since a civil violation itself requires willful conduct.  *See S.E.C. v. Vali*

*Mgmt. Partners*, Case No. 21-453, 2022 WL 2155094, at *1 (2d Cir. June 15, 2022) ("The word

'manipulative' . . . 'connotes intentional or willful conduct[.]'") (quoting *Ernst & Ernst v.*

*Hochfelder*, 425 U.S. 185, 199 (1976)).

Without any difference in the intent needed for civil and criminal liability under Section

9(a)(2), the two are entirely "coextensive."  *See Chiarella*, 588 F.2d at 1368 n.16.  Thus,

individuals are left to the whims of law enforcement to assess whether identical, willful conduct

is a civil violation or a criminal offense.  Such a standardless and arbitrary sweep based on zero

guidance in the law is precisely what due process and the vagueness doctrine prohibits.[6]  *Mannix*,

619 F.3d at 197; *see also Kolender v. Lawson*, 461 U.S. 352, 353-58 (1983) ("Where the

legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless

sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections.")

(internal quotations omitted).

---

[6] The government offers little more than conclusory assertions that the rule of lenity and the novel
prosecutions doctrine do not apply.  Opp. Br. at 20.  As discussed above, Mr. Mashinsky has
demonstrated the ambiguities of Section 9(a)(2) in order to trigger the rule of lenity, and the government's
citation to criminal prosecutions under statutes other than 9(a)(2) itself demonstrates the novelty of this
prosecution.

**D.**     **The Government's Fallback Argument Has No Grounding In The Statute Or The Case Law**

The government also advances the argument that even if Section 9(a)(2) requires deceptive conduct beyond mere open-market transactions, the Indictment satisfies that requirement by alleging false and misleading statements by Mr. Mashinsky.  Opp. Br. at 23-24.  But the entire premise of this argument is flawed.  Mr. Mashinsky never argued that unspecified "deceptive conduct" is required to violate Section 9(a)(2).  Indeed, the phrase appears nowhere in Mr. Mashinsky's opening brief.  To the contrary, under the seminal Supreme Court case law cited in his brief, the statute requires manipulative conduct executed with manipulative intent.  Br. at 16-18.  Misleading statements or other "deceptive conduct" that are the hallmark of Section 10(b) have no relevance to the application of Section 9(a)(2), at least according to the plain language of the statute.  Indeed, it would be a perverse result if an unconstitutionally vague statute could be saved by simply importing additional conduct also not prohibited by the language of the statute.

Finally, the government concludes its opposition by claiming to have alleged "manipulative acts [that] go well beyond open-market purchases of CEL."  Opp. Br. at 24.  But the two examples it cites are plainly open-market purchases of CEL.  *Id.*  What the government claims as something new is the same allegedly "heartland" conduct that prompts its market manipulation theory, but that is not even covered by the language of the statute.

Mr. Mashinsky respectfully submits that Section 9(a)(2) is unconstitutionally vague and fails to define the offense "with sufficient definiteness [so] that ordinary people can understand what conduct is prohibited."  *Mannix*, 619 F.3d at 197.  The Court should dismiss Count Six.

Case 1:23-cr-00347-JGK   Document 44   Filed 02/02/24   Page 20 of 25


## POINT III

## THE COURT SHOULD STRIKE AS SURPLUSAGE ALL REFERENCES IN THE INDICTMENT TO THE CELSIUS BANKRUPTCY

The bankruptcy proceeding references in the Indictment are both irrelevant and prejudicial, and thus, should be stricken.  The government's argument is wrong: these references are not probative of either Mr. Mashinsky's alleged criminal intent or the falsity of his public statements.  A subsequent bankruptcy filing—*outside the period of the Indictment*—does not speak to Mr. Mashinsky's state of mind or prove anything about the state of affairs from *years* before.  It simply taints the trial by referencing an unnecessary and incendiary concept.

As a threshold matter, the government fails completely to address how a corporate bankruptcy filing is relevant to the alleged falsity of Mr. Mashinsky's statements or his criminal intent.  *See* Indictment at ¶¶ 42-43 ("Even before Celsius's bankruptcy [in July 2022] *proved the falsity of the claims by ALEXANDER MASHINSKY* [fifteen months earlier in April 2021] . . .") (emphasis added).  The government does not dispute that a corporate decision to declare bankruptcy is a complicated mix of legal, economic, financial, and business considerations, involving multiple parties and stakeholders.  A corporate bankruptcy filing does not constitute evidence of fraud or wrongdoing, and may, in fact, be consistent with customers' best interests.[7] It is proof of nothing relevant to this case.

The government cites a single, fifty-year-old, unreported case, which relies on a footnote in an even older Ninth Circuit case, to argue as a "general proposition" that subsequent events are relevant to a prior state of mind.  *See* Opp. Br. at 27; *Devonbrook, Inc. v. Lily Lynn (Lilywear), Inc.*, No. 70 Civ. 4687, 1977 WL 921 at *5 (S.D.N.Y. Jan. 10, 1977) (citing *Walling v.*

---

[7] Indeed, it is worth noting that Celsius's decision to "pause" was made in consultation with, and without objection from, the United States Securities and Exchange Commission.

*Beverly Enterprises*, 476 F.2d 393, 397, n.8 (9th Cir. 1973)).  This, however, ignores abundant

Second Circuit precedent rejecting "fraud by hindsight."  *Novak v. Kasaks*, 216 F.3d 300, 309 (2d

Cir. 2000); *see also Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85 (2d Cir. 1999) (rejecting as

"fraud by hindsight" argument that "[m]anagement's optimism that is shown only after the fact

to have been unwarranted" can be strong circumstantial evidence of recklessness); *Denny v.

Barber*, 576 F.2d 465, 470 (2d Cir. 1978) (Friendly, J.) (affirming dismissal of complaint because

it merely alleged "fraud by hindsight" and nowhere alleged "with the required particularity" that,

when defendants issued statement, they had "perceptions or were reckless in not having

[perceptions]" about specific transactions); *Kasilingam v. Tilray, Inc.*, No. 20 Civ. 03459 (PAC),

2021 WL 4429788, at *9 (S.D.N.Y. Sept. 27, 2021)  ("In the Second Circuit, a series of

'important limitations on the scope of liability for securities fraud based on reckless conduct'

have been imposed. These include a refusal to entertain 'fraud by hindsight' claims.") (internal

citations omitted); *Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193, 223 (S.D.N.Y.

2020) ("As the Second Circuit 'has firmly rejected [the] "fraud by hindsight" approach' it is 'not

sufficient for these purposes to allege that an opinion was unreasonable, irrational, excessively

optimistic, [or] not borne out by subsequent events.'").

      Thus, the government cannot rely on a future event—the bankruptcy proceedings—to

plead or prove that Mr. Mashinsky, in the past, made misrepresentations about Celsius's financial

condition.  What is relevant is Mr. Mashinsky's state of mind *at the time he made the public

statements*, not what may or may not have been borne out a month, a year, or even several years

later.  *United States v. Hild*, 644 F. Supp. 3d 7, 26 (S.D.N.Y. 2022) (summarizing securities fraud

and wire fraud instruction that "the government was required to prove that [the defendant] did

not *believe* the statements were true at the time that he made them") (emphasis in original).

"Corporate officials need not be clairvoyant." *Novak* at 309.

With respect to public statements alleged in the Indictment that go back more than two years before the bankruptcy filing, *see, e.g.*, Indictment at ¶ 28, the government sums up its theory of relevance for the bankruptcy proceeding as follows:

> The fact that Celsius first stopped allowing customers to withdraw their assets to prevent a "run" and then filed for bankruptcy shortly thereafter are only two examples among many cited in the Indictment proving that Mashinsky's claims about Celsius's profitability, safety, liquidity, and riskiness were not true.

Opp. Br. at 27. Celsius filed for bankruptcy in July 2022. That subsequent event is not remotely probative of Mr. Mashinsky's state of mind at the time he made statements years earlier. It is impermissible fraud by hindsight for the government to argue otherwise.

The same is true for the statements in the Indictment "leading up" to the Pause, Opp. Br. at 26, which would have been more than a month before the bankruptcy filing. For example, the Indictment alleges that Celsius—not Mr. Mashinsky—issued a blog post on June 7, 2022 stating that "Celsius has the reserves (and more than enough ETH) to meet obligations, as dictated by our comprehensive liquidity risk management framework." Indictment at ¶ 47. The only question in a criminal fraud case is whether the defendant understood that statement to be false at the time it was made, or if he had a good faith basis to believe it was true. That a company—in consultation with its professional advisors—elected to file for bankruptcy more than a month later has no bearing on that question.

The government also says that it expects to introduce three uncharged statements to prove the alleged fraud scheme. Opp. Br. at 27. All three statements pre-date the Celsius bankruptcy by more than a year, including one by more than two-and-a-half years. *Id.* The government's relevance argument here defies logic. Taking the first statement—from November 2019—as an

example: "These are your coins, not our coins.  Whatever you put in, if you put in one Bitcoin, you will be withdrawing one Bitcoin . . ."  *Id.*  It is not clear why Celsius's bankruptcy has anything to do with the truth or falsity of this statement, but assuming the government is arguing the statement was false because Celsius was insolvent, the only thing that is relevant is Mr. Mashinsky's understanding of the solvency of Celsius *at the time* the statements were made, not years later.

References to the bankruptcy proceedings are also unfairly prejudicial.  *See HTC Corp. v. Tech. Properties Ltd.*, No. 5:08 Civ. 00882-PSG, 2013 WL 4782598, at *2 (N.D. Cal. Sept. 6, 2013) ("A reference to bankruptcy may trigger visceral reactions among jurors and the court believes such a reaction carries a risk of substantial unfair prejudice.").  The government argues that "[a]ny concerns that jurors would draw incorrect or impermissible conclusions about the import of bankruptcy proceedings could be addressed in a limiting instruction."  Opp. Br. at 28. First, the obvious prejudice of the jurors learning of Celsius's bankruptcy filing is only exacerbated by the fact that Celsius almost certainly will no longer be in bankruptcy by the time of the trial.[8]  So even the improper and unfair prejudice of jurors connecting Celsius's bankruptcy to the government's allegations of fraud may itself be false at the time of the trial.

Moreover, if the government is permitted to reference the bankruptcy filing as "proof" of Mr. Mashinsky's state of mind, fairness dictates that the defense be allowed to counter by

---

[8]  The fact that Celsius's plan to exit bankruptcy was confirmed by the bankruptcy court nearly three months ago proves the falsity of the government labelling the June 2022 "Pause" a "permanent injunction."  Opp. Br. at 26; *In re Celsius Network LLC, et al.*, Case No. 22-10964 (MG), ECF No. 3972 (S.D.N.Y. Nov. 9, 2023).  The confirmed plan went into effect on January 31, 2024, ECF No. 4298 (Notice of Occurrence of Effective Date of Debtors' Modified Chapter 11 Plan of Reorganization and Commencement of Distributions) (S.D.N.Y. Jan. 31, 2024), with counsel for the Official Committee of Unsecured Creditors announcing the "Successful Chapter 11 Exit" on February 1, 2024.  *See* Press Release (Feb. 1, 2024), https://www.whitecase.com/news/press-release/white-case-leads-celsius-creditors-committee-successful-chapter-11-exit-and.

proffering its own explanation of the filing, wholly unrelated to Mr. Mashinsky's alleged criminal conduct.  This will create a confusing trial-within-an-already-confusing trial.  *See HTC Corp.*, 2013 WL 4782598, at *2 ("Moreover, there is a substantial risk that evidence of TPL's bankruptcy will confuse the issues.").  Clearly, the better approach is keeping the irrelevant and prejudicial proceedings out of the case—and out of the Indictment—entirely.

Thus, the Court should strike the surplusage.  *See United States v. Greebel*, No. 15 Cr. 637 (KAM), 2017 WL 3610570, at *3 (E.D.N.Y. Aug. 4, 2017) (granting motion to strike phrase in an indictment that was not relevant to avoid confusion during any stage of the trial).  Should the Court elect to delay ruling on the motion, it should do so without prejudice.  *See United States v. Issak Almaleh*, No. 17 Cr. 25 (ER), 2022 WL 602069, at *9 (S.D.N.Y. Feb. 28, 2022) (denying motion to strike surplusage without prejudice to renewal).

Finally, given the government's flawed relevance theory and the obvious prejudice it intends to inject into the trial, Mr. Mashinsky expects that he will be filing a motion *in limine* to exclude or, at the very least, limit the government's introduction of evidence or argument regarding the bankruptcy.  Indeed, the government's opposition indicates that it intends to introduce witness testimony from former Celsius executives and investors relating to the bankruptcy, as well as statements from Mr. Mashinsky offered as part of the proceedings.  Opp. Br. at 29.  The problem is that motions *in limine* are currently due June 7, 2024.  Based on the defense's discussions with the government, it does not appear that the government is willing to produce 3500 materials before August 2024.  In order to allow for meaningful and informed motion practice, Mr. Mashinsky respectfully requests that the Court order the government to produce any 3500 material or Rule 16 discovery relating to the bankruptcy that it intends to introduce at trial by May 20, 2024.

**CONCLUSION**

For the foregoing reasons, Mr. Mashinsky respectfully requests that the Court: (i) dismiss Count Two (Commodities Fraud) as repugnant to and inconsistent with Count One (Securities Fraud); (ii) dismiss Count Six (Market Manipulation) for lack of fair notice; and (iii) strike as surplusage all references in the Indictment to Celsius's bankruptcy.

Dated:  New York, New York          MUKASEY YOUNG LLP
        February 2, 2024

                                     /s/ Michael F. Westfal
                                    Marc L. Mukasey
                                    Torrey K. Young
                                    Michael F. Westfal

                                    570 Lexington Avenue, Suite 3500
                                    New York, NY 10022
                                    Tel: (212) 466-6400
                                    Email: michael.westfal@mukaseylaw.com

                                    *Counsel for Alexander Mashinsky*