David Barse



April 7, 2025

*United States v. Mashinsky*, 23-cr-347 (JGK) (S.D.N.Y.)

To: Judge John G. Koeltl

I write this letter in support of Alex Mashinsky, who I understand is scheduled to be sentenced in May of 2025.  I have known and been friends with Alex for more than 20 years.  Most recently, I worked as one of two independent directors of Celsius Network, Limited ("Celsius"), a position for which Mr. Mashinsky recommended me to the board. I continued in my role as independent director until Celsius' bankruptcy petition was successfully declared effective. As both a long-time friend and subsequent independent director of Celsius, I believe I am in a unique position to provide information to the Court about Mr. Mashinsky's character as well as his decision-making during the bankruptcy.  In my experience, Alex has been a selfless and dedicated friend, and a wonderful husband and father.  Further, from my observations as an independent director of Celsius, Alex's primary interest and motivating force was to make sure that Celsius customers were made whole.

I first met Alex when we were both members of the Young Presidents Organization ("YPO").  When I first got to know Alex, he immediately impressed me with his intellect and entrepreneurial spirit.  Some years later, we coincidentally traveled on a YPO-organized trip.  Alex and his then-girlfriend, Krissy, who he subsequently married, were kind and friendly.  My wife and I spent time with them during that trip and got to know both Alex and Krissy very well.  A few years later, Alex and I were coincidentally traveling to the same destination.  Alex invited my entire family to join him and Krissy for lunch.  This experience illustrated Alex's kindness and generosity.  He interrupted his vacation with his fiancée to host my wife and children for a very enjoyable lunch.

After that vacation, Alex and I continued seeing each other and we developed a friendship.  We saw each other socially, and my wife and I were guests at his wedding.  It was very clear that Alex was madly in love and the combination of his and Krissy's family was a very joyous thing to witness.  Alex treated Krissy's children like his own and his kindness as well as the happiness of the entire family was quite evident.

As our friendship grew, I was able to view first-hand, Alex's unique intellect and vision.  He introduced me to a limousine service he was developing by applying technology to an antiquated car-hire system.  His idea was similar to what is now UBER but predated Uber's consumer offering by several years.  Alex developed an app that would efficiently allow a

**Ex. A-2**

customer to find a car/driver near the customer's location and correspondingly for the driver to find a passenger.  He branded this service and offered me an opportunity to be a customer.  I became one of the early users and found the service extremely convenient and effective. It saved me countless hours hailing cabs or telephoning car services, and as a busy executive who was often juggling many important calls and meetings, I truly appreciated the technology.  Alex's willingness to allow me to use the service before it was broadly offered to the public was another example of Alex's generosity.  After he ended his efforts with the limo app and developing other technology offerings, Alex moved into working on the Cryptocurrency business and founded Celsius.  The company experienced significant growth and was thriving until the market in cryptocurrency crashed in the Spring of 2022.

I was appointed to the Celsius Board in June 2022, shortly before Celsius filed for bankruptcy.  From the time of my appointment, while Celsius was in severe financial distress, until Alex resigned from the Company, it was clear to me that Alex was focused entirely on preserving value for Celsius' customers.  Said customers, who ultimately became the primary, if not exclusive, claimants of Celsius in the bankruptcy proceedings were his singular interest; not himself.  He continued to develop a plan to get the customers' cryptocurrency back to them as quickly as possible.  The last and only thing he cared about was the recovery of a substantial amount of personal wealth he had created.  Even after he resigned from the company until the conclusion of the bankruptcy proceedings in the Southern District of New York, Alex continued to postulate proposals to protect the customers.  The ultimate plan structured heavily relied on the ideas developed by Alex.

Throughout the post-bankruptcy time frame, my observations and experience were that Alex operated with the highest moral character in attempting to right the wrongs of which he is accused.  As soon as the market deteriorated and impacted Celsius, he also dedicated himself to engage his employees and senior management team to work together to achieve this goal.  Lastly, he sought to motivate the Unsecured Creditors Committee to work together to achieve this goal and incorporated them into the restructuring planning process.  This is atypical, because normally the Company, or debtor, has exclusive control over a company's reorganization. However, it was a good example of Alex's contrition and desire to help rectify the situation for his customers.

Despite his missteps at Celsius prior to the bankruptcy, I know Alex to be a good man who has learned from this unfortunate episode in his professional life.  I believe his conduct was out of character for the Alex I know and I respectfully request that the Court take these observations into account when it sentences him.

Sincerely,

David Barse

Ex. A-2