N9DUCOHP

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4            v.                            1:23-cr-000347-JGK-2

5   RONI COHEN-PAVON,

6                Defendant.               Plea
    ------------------------------x

7
                                          New York, N.Y.
8                                         September 13, 2023
                                          11:00 a.m.
9

10
    Before:
11
                        HON. JOHN G. KOELTL,
12
                                          District Judge
13

14                         APPEARANCES

15  DAMIAN WILLIAMS
         United States Attorney for the
16       Southern District of New York
    BY:  ADAM S. HOBSON, ESQ.
17       ALLISON C. NICHOLS, ESQ.
         Assistant United States Attorney
18
    DECHERT, LLP
19       Attorneys for Defendant
    BY:  JEFFREY BROWN, ESQ.
20       NICHOLAS GERSH, ESQ.

21

22  ALSO PRESENT:  BRANDON RACZ, Special Agent, FBI

23  SIMPSON THACHER & BARTLETT LLP
         *Curcio* Counsel
24  BY:  MARK J. STEIN, ESQ.

25

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

N9DUCOHP

1          (Case called)

2          THE DEPUTY CLERK:  Will all parties please state who

3     they are for the record.

4          MR. HOBSON:  Good morning, your Honor.

5          Adam Hobson and Allison Nichols for the government.

6          We're joined by Special Agent Brandon Racz from the

7     Federal Bureau of Investigation.

8          MS. NICHOLS:  Good morning, your Honor.

9     BY MR. BROWN:  Good morning, your Honor.

10          Jeffrey Brown from the law firm of Dechert joined by

11     Nicholas Gersh, for Mr. Cohen-Pavon, who is seated to my left.

12          THE COURT:  Good morning.

13          Some introductory issues:  First, the defendant is

14     represented by Mr. Gersh and Mr. Brown from Dechert.  My

15     nephew-in-law is a partner at Dechert but doesn't share in any

16     of the income from any cases where I'm the judge.  So I don't

17     disqualify myself in cases where Dechert appears.  Nothing

18     about that affects anything that I do in the case, but I bring

19     it to your attention at the outset.

20          Second, I received a letter from the government dated

21     September 12 advising of a potential conflict that Mr. Gersh

22     has because he's applied to the U.S. Attorney's Office for a

23     position with the office.  And so I'll conduct a *Curcio* inquiry

24     at the outset.

25          How does the defendant wish to be addressed?

N9DUCOHP

1    Mr. Pavon?  Or Mr. Cohen-Pavon?

2              THE DEFENDANT:  Mr. Cohen-Pavon, your Honor.

3              THE COURT:  Mr. Cohen-Pavon.  Okay.

4              So, Mr. Cohen-Pavon, as I'm sure you've been advised,

5    one of the attorneys from Dechert who is representing you,

6    Mr. Gersh, has applied for a position in the United States

7    Attorney's Office.  So there is a procedure called a *Curcio*

8    procedure after the name of a Court of Appeals case called

9    *Curcio* in which there's inquiry to assure that you're aware of

10   the potential conflict, you're aware of its ramifications, and

11   you make a decision as to whether you wish to proceed with

12   Mr. Gersh and Dechert or not, because a defendant has a right

13   to be represented by lawyers who have absolutely no conflicts

14   of interest, either actual or potential.  And if the defendant

15   cannot afford counsel without any conflicts, the Court will

16   appoint counsel for the defendant.  So when there is notice of

17   a potential conflict, the Court has an obligation to inquire of

18   the defendant to make sure that the defendant is aware of his

19   right to be represented by lawyers who have absolutely no

20   conflicts and determine whether the defendant wishes to proceed

21   with his lawyers who have a potential conflict or wishes simply

22   to have another lawyer.  And if the defendant can't pay for

23   another lawyer, the Court will appoint another lawyer.

24             The first part of the inquiry is to assure that the

25   defendant is competent to make the decision as to whether to

N9DUCOHP

  1    waive any potential conflicts or not.  So I'll make an inquiry

  2    with respect to your competence, and then proceed to advise you

  3    of your rights and of the potential conflict and to determine

  4    whether you wish to proceed with Mr. Gersh or not and whether

  5    you wish to waive any potential conflict.

  6             Do you understand all of that?

  7             THE DEFENDANT:  Yes, your Honor.

  8             THE COURT:  So let me start.  Tell me your full name,

  9    please.

 10             THE DEFENDANT:  Roni Mr. Cohen-Pavon, your Honor.

 11             THE COURT:  How old are you?

 12             THE DEFENDANT:  Thirty-six years old.

 13             THE COURT:  Mr. Cohen-Pavon, Mr. Fletcher will

 14    administer the oath to you.

 15                        (Defendant affirmed)

 16             THE DEPUTY CLERK:  Please state your name for the

 17    record.

 18             THE DEFENDANT:  Roni Cohen-Pavon.

 19             THE DEPUTY CLERK:  Thank you.

 20             THE COURT:  Mr. Cohen-Pavon, do you understand that

 21    you're now under oath and that if you answer any of my

 22    questions falsely, your false or untrue answers may later be

 23    used against you in another prosecution for perjury or making a

 24    false statement?

 25             THE DEFENDANT:  I do, your Honor.

N9DUCOHP

1          THE COURT:  You've told me that you're thirty-six

2     years old, right?

3          THE DEFENDANT:  Yes.

4          THE COURT:  How far did you go in school?

5          THE DEFENDANT:  First degree.

6          THE COURT:  Are you able to speak and understand

7     English?

8          THE DEFENDANT:  Yes, I do.

9          THE COURT:  Are you now or have you recently been

10    under the care of a doctor or a psychiatrist?

11         THE DEFENDANT:  No, your Honor.

12         THE COURT:  Have you ever been treated or hospitalized

13    for any mental illness or any type of addiction including drug

14    or alcohol addiction?

15         THE DEFENDANT:  No, your Honor.

16         THE COURT:  In the past 24 hours, have you taken any

17    drugs, medicine, or pills, or have you drunk any alcohol?

18         THE DEFENDANT:  No, your Honor.

19         THE COURT:  Is your mind clear today?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Are you feeling all right today?

22         THE DEFENDANT:  Yes.

23         THE COURT:  Do either counsel have any doubt as to the

24    defendant's competence at this time?

25         MR. HOBSON:  No, your Honor.

N9DUCOHP

1           MR. BROWN:  No, your Honor.

2           THE COURT:  Mr. Cohen-Pavon, you can actually have a

3     seat.

4           I've explained to you at the outset, Mr. Cohen-Pavon,

5     the reason for this proceeding, namely, to determine whether

6     you're fully aware of the potential conflict that Mr. Gersh has

7     and to determine whether you wish to continue with his

8     representation and to waive any potential conflicts.  So am I

9     right that you're currently represented by Jeffrey Brown and

10    Nicholas Gersh of the law firm of Dechert, LLP?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Are you satisfied with their

13    representation of you?

14          THE DEFENDANT:  I am.

15          THE COURT:  Do you know that Mr. Gersh has applied for

16    a position as an assistant united states attorney in the

17    Southern District of New York, that is a member of the

18    prosecutor's office that is currently prosecuting you in this

19    case?

20          THE DEFENDANT:  Yes, I do.

21          THE COURT:  Because of Mr. Gersh's application to be

22    employed by the U.S. Attorney's Office, there are potential

23    conflicts that arise.  As I've told you, you're entitled to be

24    represented by lawyers who have absolutely no conflicts of

25    interest, whose loyalty is to you alone and who have nothing

N9DUCOHP

1    that might interfere with your representation.

2                Do you understand that?

3                THE DEFENDANT:  Yes.

4                THE COURT:  And it's important to the representation

5    of counsel that counsel have no conflicts of interest and no

6    loyalties to anyone or anything other than you.

7                Do you understand that?

8                THE DEFENDANT:  Yes, I do.

9                THE COURT:  So Mr. Gersh's potential employment and

10   his application for employment with the U.S. Attorney's Office

11   presents a potential conflict because he may have some

12   allegiance to the U.S. Attorney's Office for the Southern

13   District of New York; he may want to shade his representation

14   of you in a way that benefits his application to the U.S.

15   Attorney's Office; he may wish to curry favor with the U.S.

16   Attorney's Office by the way in which he represents you.

17               Do you understand that?

18               THE DEFENDANT:  I do.

19               THE COURT:  It's a possibility.  I'm not saying it

20   would happen, but it's a possibility.

21               So being aware of that, you have the opportunity to

22   say that you don't wish to be represented by Mr. Gersh.  Or you

23   can say that you wish to continue to be represented by

24   Mr. Gersh and you wish to waive any potential conflict that he

25   may have in representing you.

N9DUCOHP

 1          Do you understand that?

 2          THE DEFENDANT:  Yes, I do.

 3          THE COURT:  Have you discussed this potential conflict

 4   with Mr. Gersh?

 5          THE DEFENDANT:  Yes.

 6          THE COURT:  And have you discussed it with Mr. Brown?

 7          THE DEFENDANT:  Yes.

 8          THE COURT:  It's important that I understand that

 9   you're aware of the conflict and the potential conflict.  So

10   could you tell me in your own words what the potential conflict

11   is?

12          THE DEFENDANT:  The potential conflict is that

13   Mr. Gersh will use the fact he's advising me on this case for

14   his own personal benefit as part of the application.

15          THE COURT:  I'm prepared, and I will actually appoint

16   another lawyer to represent you so that you can consult with

17   that other lawyer to make sure that you've fully considered the

18   potential conflict, that you're fully aware of the conflict,

19   and to make a determination, help you make a determination of

20   whether you wish to waive the conflict and continue with

21   Mr. Gersh or not.

22          So at this point what I'm going to do is appoint Mark

23   Stein, who is a distinguished lawyer and a member of the

24   Criminal Justice Act Panel for this district to consult with

25   you before you make a decision whether you wish to waive the

N9DUCOHP

1    conflict.

2           So we'll take a brief adjournment so you can consult

3    with Mr. Stein.

4           Mr. Stein, do you have any conflicts in this case at

5    all?

6           MR. STEIN:  I do not, your Honor.

7           THE COURT:  Mr. Stein is being appointed solely to

8    represent you, to discuss with you the potential conflict, and

9    to determine whether you wish to waive that conflict and

10   continue with Mr. Gersh or not.  Anything that you say to

11   Mr. Stein is completely confidential between you and Mr. Stein.

12   The purpose of appointing Mr. Stein is solely to consult with

13   you.  He has no interest in the case.  His interest is solely

14   to represent you and to determine whether you wish to waive any

15   conflicts that Mr. Gersh has and whether you wish to continue

16   be with Mr. Gersh.

17          So we'll take a brief recess to let you consult with

18   Mr. Stein.

19                         (Recess)

20          THE COURT:  Mr. Cohen-Pavon, have you had an

21   opportunity to consult with Mr. Stein?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  Do you want any more time to consult with

24   Mr. Stein or think about your decision?

25          THE DEFENDANT:  No, I don't.

N9DUCOHP

1          THE COURT:  Having consulted with Mr. Stein, do you

2     wish to give up or waive any potential conflict that Mr. Gersh

3     has?  And do you wish to continue with Mr. Gersh as one of your

4     lawyers?

5          THE DEFENDANT:  Yes, I do.  I have full trust in

6     Mr. Gersh, and I waive any conflict in this respect.

7          THE COURT:  Have you received any inducements,

8     promises, or threats to you to get you to agree to continue

9     with Mr. Gersh and to waive any potential conflicts?

10          THE DEFENDANT:  No, I didn't.

11          THE COURT:  Do you understand that by waiving any

12     potential conflicts that Mr. Gersh may have, you're waiving

13     them for today and throughout this proceeding and any appeal or

14     any other ancillary proceedings?  It's a waiver for today and

15     forever.

16          Do you understand that?

17          THE DEFENDANT:  Yes, I do.

18          THE COURT:  So, Mr. Stein, having consulted with

19     Mr. Cohen-Pavon, do you know of any reason that he should not

20     waive or be able to waive the potential conflict?

21          MR. STEIN:  I do not, your Honor.

22          THE COURT:  Thank you, Mr. Stein.

23          So, Mr. Gersh, do you believe that you're able to

24     represent Mr. Cohen-Pavon and that any potential conflict that

25     you have will not interfere at all with your representation of

N9DUCOHP

1     Mr. Cohen-Pavon?

2              MR. GERSH:  I do, your Honor.

3              THE COURT:  Mr. Brown, do you also agree with that?

4              MR. BROWN:  I do, your Honor.

5              THE COURT:  Having considered all of the facts and

6     issues, I find that while there is a potential conflict that

7     Mr. Gersh has, the conflict is only a potential conflict and is

8     certainly waivable.  I also find that Mr. Cohen-Pavon has

9     knowingly and voluntarily waived any potential conflict.

10             So, Mr. Stein, thank you for your representation, and

11    you're excused.

12             MR. STEIN:  Thank you, your Honor.

13             THE COURT:  You're certainly welcome to stay if you

14    wish.

15                        (Pause)

16             THE COURT:  So that brings us then to the next part,

17    which is the plea.  I understand from the correspondence that

18    the defendant wishes to enter a plea of guilty to Counts Four,

19    Five, and Six of the indictment pursuant to a plea agreement

20    dated September 11, 2023.

21             I have the unsigned copy that was provided to me.  Is

22    there an executed copy?

23             MR. HOBSON:  There is, your Honor.  And, your Honor

24    I'll just note, it's Counts Four, Five, Six, and Seven.  Count

25    Seven is on the second page of the agreement.

N9DUCOHP

1          THE COURT:  Right.  Thank you.

2          There was also a reference in the correspondence to a

3  letter from the government dated September 5, 2023, a request

4  to be filed under seal.  I have the letter now.  I've checked

5  the docket sheet.  There are no docket entries after

6  August 30th.  Was the September 5th letter signed?

7          MR. HOBSON:  The September 5th letter was submitted

8  to chambers by email as per an instruction from magistrate

9  court.

10         THE COURT:  It's fine.  I'll so-order the

11  September 5th letter.  Nothing has been filed.  And I assume

12  that after today, you'll be seeking to unseal.

13         MR. HOBSON:  That's correct, your Honor.  We had

14  requested delayed docketing of the arraignment last week and of

15  today's plea proceedings.  After the end of today's

16  proceedings, we no longer see a need for delayed docketing.

17         THE COURT:  It may be academic, but I've signed the

18  September 5th letter.

19         And I take it from the correspondence that the

20  defendant was presented before the magistrate judge and was

21  arraigned on the indictment at that time?

22         MR. HOBSON:  That's correct, your Honor.

23         THE COURT:  I've marked the September 11, 2023 plea

24  agreement as Court Exhibit 1.  It indicates that the defendant

25  wishes to plead guilty to Counts Four, Five, Six, and Seven of

N9DUCOHP

1    the indictment.

2            And I take it that's what the defendant wishes to do.

3    Right, Mr. Brown?

4            MR. BROWN:  Yes, your Honor.

5            THE COURT:  Mr. Fletcher, please administer the oath

6    to the defendant.

7            THE DEPUTY CLERK:  You may be seated.

8                    (Defendant affirmed)

9            THE DEPUTY CLERK:  You may put your hand down.

10           Please state your name for the record.

11           THE DEFENDANT:  Roni Cohen-Pavon.

12           THE DEPUTY CLERK:  Thank you.

13           THE COURT:  Mr. Cohen-Pavon, do you understand that

14   you're now under oath and that if you answer any of my

15   questions falsely, your false or untrue answers may later be

16   used against you in another prosecution for perjury or making a

17   false statement?

18           THE DEFENDANT:  Yes, I do.

19           THE COURT:  Tell me your full name, please.

20           THE DEFENDANT:  Roni Cohen-Pavon.

21           THE COURT:  How old are you?

22           THE DEFENDANT:  Thirty-six years old.

23           THE COURT:  How far did you go in school?

24           THE DEFENDANT:  First degree.

25           THE COURT:  What does that mean?  First degree?  Is

N9DUCOHP

1     that a college degree or university degree?

2              THE DEFENDANT:  University degree.

3              THE COURT:  Okay.

4              THE DEFENDANT:  In law.

5              THE COURT:  Are you a citizen of the United States?

6              THE DEFENDANT:  No, I'm not.

7              THE COURT:  Are you able to speak and understand

8     English.

9              THE DEFENDANT:  Yes, I do.

10             THE COURT:  Are you now or have you recently been

11    under the care of a doctor or a psychiatrist?

12             THE DEFENDANT:  No.

13             THE COURT:  Have you ever been treated or hospitalized

14    for any mental illness or any type of addiction including drug

15    or alcohol addiction?

16             THE DEFENDANT:  No.

17             THE COURT:  In the past 24 hours, have you taken any

18    drugs, medicine, or pills, or have you drunk any alcohol?

19             THE DEFENDANT:  No.

20             THE COURT:  Is your mind clear today?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Are you feeling all right today?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do either counsel have any doubt as to the

25    defendant's competence to plead at this time?

N9DUCOHP

 1          MR. HOBSON:  No, your Honor.

 2          MR. BROWN:  No, your Honor.

 3          THE COURT:  Mr. Cohen-Pavon, Mr. Brown, your lawyer,

 4  has informed me that you wish to enter a plea of guilty to

 5  Counts Four, Five, Six, and Seven of the indictment.  Is that

 6  what you wish to do?

 7          THE DEFENDANT:  Yes, your Honor.

 8          THE COURT:  Have you had a full opportunity to discuss

 9  your case with your lawyers?

10          THE DEFENDANT:  Yes.  Yes.  I have.

11          THE COURT:  Have you had a full opportunity to discuss

12  the consequences of entering a plea of guilty?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  Are you satisfied with your lawyers and

15  their representation of you?

16          THE DEFENDANT:  Yes, I am.

17          THE COURT:  On the basis of Mr. Cohen-Pavon's

18  responses to my questions and my observations of his demeanor,

19  I find that he is fully competent to enter an informed plea at

20  this time.

21          Mr. Cohen-Pavon, before I accept any plea from you,

22  I'm going to be asking you certain questions.  My questions are

23  intended to satisfy me that you wish to plead guilty because

24  you are, in fact, guilty and that you fully understand the

25  consequence of your plea, and, furthermore, that you are

N9DUCOHP

 1    pleading guilty knowingly, and voluntarily, and that there is

 2    an independent basis in fact for your plea.

 3            Do you understand that?

 4            THE DEFENDANT:  Yes, I do.

 5            THE COURT:  I'm now going to describe to you certain

 6    rights that you have under the Constitution and laws of the

 7    United States, which rights you will be giving up if you enter

 8    a plea of guilty.  Please listen to me very carefully.  If

 9    there's anything that I say that you don't understand, please

10    ask me to stop.  Either I or Mr. Brown will explain it to you

11    more fully.

12            All right?

13            THE DEFENDANT:  Yes.  Thank you.

14            THE COURT:  Mr. Cohen-Pavon, under the Constitution

15    and laws of the United States, you have a right to a speedy and

16    public trial by a jury on the charges against you which are

17    contained in the indictment.

18            Do you understand that?

19            THE DEFENDANT:  Yes.

20            THE COURT:  If there were a trial, you would be

21    presumed to be innocent and the government would be required to

22    prove you're guilty by competent evidence and beyond a

23    reasonable doubt.  You would not have to prove that you were

24    innocent at trial.

25            Do you understand that?

N9DUCOHP

1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  If there were a trial, a jury composed of

3     twelve people selected from this district would have to agree

4     unanimously that you were guilty.

5              Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  If there were a trial, you would have the

8     right to be represented by a lawyer, and if you could not

9     afford a lawyer, a lawyer would be provided to you free of

10    cost.

11             Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  In fact, Mr. Cohen-Pavon, you have a right

14    to be represented by a lawyer at the trial and at every other

15    stage of the proceedings against you, and if you cannot afford

16    a lawyer, a lawyer would be provided to you free of cost.

17             Do you understand that?

18             THE DEFENDANT:  Yes, I do.

19             THE COURT:  If there were a trial, you would have the

20    right to see and hear all of the witnesses against you and your

21    attorney could cross-examine them.  You would have a right to

22    have your attorney object to the government's evidence and

23    offer evidence on your behalf if you so desired.  And you would

24    have the right to have subpoenas issued or other compulsory

25    process used to compel witnesses to testify in your defense.

N9DUCOHP

1    And you would not be required to testify.

2              Do you understand all of that?

3              THE DEFENDANT:  Yes, I do, your Honor.

4              THE COURT:  If there were a trial, you would have the

5    right to testify, if you wanted to, but no one could force you

6    to testify, if you didn't want to.  And furthermore, no

7    inference or suggestion of guilt could be drawn if you chose

8    not to testify at trial.

9              Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  Mr. Cohen-Pavon, do you understand that

12   each and every one of the rights that I've described to you?

13             THE DEFENDANT:  Yes, I do.

14             THE COURT:  Do you have any questions about any of

15   those rights?

16             THE DEFENDANT:  No, I don't.

17             THE COURT:  Do you understand that by entering a plea

18   of guilty today you're giving up each and every one of those

19   rights, that you are waiving those rights, and that you will

20   have no trial?

21             THE DEFENDANT:  Yes, I do.

22             THE COURT:  Do you understand that you can change your

23   mind right now and refuse to enter a plea of guilty, you don't

24   have to enter this plea if you don't want to for any reason at

25   all?

N9DUCOHP

1          Do you understand that completely?

2          THE DEFENDANT:  I understand.

3          THE COURT:  Mr. Cohen-Pavon, you've received a copy of

4  indictment against you; is that correct?

5          THE DEFENDANT:  Yes.

6          THE COURT:  And have you read it?

7          THE DEFENDANT:  Yes, I have.

8          THE COURT:  Do you understand what you are charged

9  with in the indictment?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Do you understand that if you did not

12 plead guilty, the government would be required to prove each

13 and every part or element of the charges against you which are

14 contained in the indictment beyond a reasonable doubt at trial?

15         THE DEFENDANT:  Yes, I understand.

16         THE COURT:  I'm going to go over with you now

17 Counts Four, Five, Six, and Seven to assure myself that you

18 understand what you are charged with, what the government would

19 be required to prove beyond a reasonable doubt at trial, and

20 what the maximum penalty is for each of those counts.

21         Count Four of the indictment charges a conspiracy to

22 manipulate the price of CEL.  It charges in substance that the

23 allegations contained in paragraphs 1 through 71 of this

24 Indictment are hereby repeated, re-alleged, and incorporated by

25 reference as if fully set forth herein.

N9DUCOHP

1          From at least in or about 2019 through at least in or

2     about June 2022, in the Southern District of New York and

3     elsewhere, Alexander Mashinsky and Roni Cohen-Pavon, the

4     defendants, and others known and unknown, willfully and

5     knowingly, did combine, conspire, confederate, and agree

6     together and with each other to commit offenses against the

7     United States, to wit, securities fraud, in violation of

8     Title 15, United States Code, Sections 78j(b) and 78ff, and

9     Title 17, Code of Federal Regulations, Section 240.10b-5;

10    market manipulation, in violation of Title 15, United States

11    Code, Sections 78i(a)(2), and 78ff; and wire fraud, in

12    violation of Title 18, United States Code, Section 1343.

13          It was a part and an object of the conspiracy that

14    Alexander Mashinsky and Roni Cohen-Pavon, the defendants, and

15    others known and unknown, willfully and knowingly, directly and

16    indirectly, by use of a means and instrumentality of interstate

17    commerce and of the mails, and a facility of a national

18    securities exchange would and did use and employ, in connection

19    with the purchase and sale of a security, a manipulative and

20    deceptive device and contrivance in violation of Title 17, Code

21    of Federal Regulations, Section 240.10b-5 by: (a) employing a

22    device, scheme, and artifice to defraud; (b) making an untrue

23    statement of a material fact and omitting to state a material

24    fact necessary in order to make the statements made, in light

25    of the circumstances under which they were made, not

N9DUCOHP

misleading; and (c) engaging in an act, practice, and course of

business which operated and would operate as a fraud and deceit

upon a person in violation of Title 15, United States Code,

Section 78j(b) and 78ff, to wit, Mashinsky and Cohen-Pavon

agreed to and did exchange in a scheme to defraud investors in

CEL token by artificially manipulating the market for CEL token

and through making false and misleading statements about

Celsius' purchases of CEL token and making false and misleading

statements about Mashinsky's own sales of CEL token.

It was further apart and an object of the conspiracy

that Alexander Mashinsky and Roni Cohen-Pavon, the defendants,

and others known and unknown, willfully and knowingly would and

did, directly and indirectly, by the use of the mails and a

means and instrumentality of interstate commerce, and of a

facility of a national securities exchange, and for a member of

a national securities exchange, effected, alone and with one or

more other persons, a series of transactions in a security

registered on a national securities exchange, a security not so

registered, and in connection with a security-based swap or

security-based swap agreement with respect to such security

creating actual or apparent active trading in such security,

and raising and depressing the price of such security, for the

purpose of inducing the purchase or sale of such security by

others, in violation of Title 15, United States Code,

Sections 78i(a)(2) and 78ff, to wit, Mashinsky and Cohen-Pavon

N9DUCOHP

agreed and did engage in a series of transactions in CEL in

order to artificially raise the price of CEL and induce others

to purchase CEL.

It was further apart and an object of the conspiracy

that Alexander Mashinsky and Roni Cohen-Pavon, the defendants,

and others known and unknown, knowingly having devised and

intending to devise a scheme and artifice to defraud, and for

obtaining money and property by means of false and fraudulent

pretenses, representations, and promises, transmitted and

caused to be transmitted by means of wire, radio, and

television communication in interstate and foreign commerce,

writings, signs, signals, pictures, and sounds for the purpose

of executing such scheme and artifice, in violation of

Title 18, United States Code, Section 1343, to wit, Mashinsky

and Cohen-Pavon agreed to and did engage in a scheme to defraud

investors in CEL token by manipulating the market for CEL

token, making false and misleading statements about Celsius'

market activity in CEL, and making false and misleading

statements about Mashinsky's own sales of CEL token.

Overt acts:  In furtherance of the conspiracy and to

effect the illegal objects thereof, the following overt acts,

among others, were committed in the Southern District of New

York and elsewhere:

A.  On or about July 14, 2020, Alexander Mashinsky,

the defendant, instructed another co-conspirator not named

N9DUCOHP

herein by electronic message to cause Celsius to purchase CEL

token in the market in order to artificially manipulate the

price the CEL.

        B.  On or about October 21, 2020, Mashinsky personally

purchased CEL in the market in order to artificially support

the price of CEL.

        C.  On or about October 30, 2021, Mashinsky and Roni

Cohen-Pavon, the defendant, discussed by electronic message a

plan to artificially manipulate the price of CEL.

        D.  On or about January 7, 2022, Mashinsky made false

and misleading public statements regarding Celsius' market

purchase of CEL.

        E.  On or about November 5, 2021, Mashinsky made false

and misleading public statements regarding his own sales of

CEL.

        All of this in violation of Title 18, United States

Code, Section 371.

        Mr. Cohen-Pavon, do you understand that's what you're

charged with in Count Four of the indictment?

        THE DEFENDANT:  Yes, I do.

        THE COURT:  Do you understand that if you did not

plead guilty, the government would be required to prove beyond

a reasonable doubt at trial:

        First, that two or more persons entered into the

unlawful agreement charged in Count Four beginning in or about

N9DUCOHP

1    2019; second, that you, the defendant, knowingly and willfully

2    became a member of the conspiracy; third, that one of the

3    members of the conspiracy knowingly committed at least one of

4    the overt acts charged in the indictment; and finally, the

5    overt act or acts which the jury found to have been committed

6    was or were committed to further some objective of the

7    conspiracy?

8         Do you understand that the government would be

9    required to prove all of that beyond a reasonable doubt at

10   trial?

11        THE DEFENDANT:  Yes, I do.

12        THE COURT:  Do you understand that the maximum penalty

13   for the crime charged in Count Four is a maximum sentence of

14   five years' imprisonment, a maximum term of three years'

15   supervised release, a maximum fine of the greatest of $250,000

16   or twice the gross pecuniary gain derived from the offense or

17   twice the gross pecuniary loss to a person or persons other

18   than yourself as a result of the offense and a mandatory $100

19   special assessment?

20        Do you understand that's the maximum penalty for the

21   crime charged in Count Four?

22        THE DEFENDANT:  Yes, I do.

23        THE COURT:  Count Five of the indictment charges a

24   fraudulent scheme to manipulate the price of CEL.  The

25   indictment charges that the allegations contained in paragraphs

N9DUCOHP

1 1 through 71 and 83 of the indictment are repeated, re-alleged,

2 and incorporated by reference as if fully set forth herein.

3            Then it goes on to charge that from at least in or

4 about 2019 through at least in or about June 2022, in the

5 Southern District of New York and elsewhere, Alexander

6 Mashinsky and Roni Cohen-Pavon, the defendants, willfully and

7 knowingly, directly and indirectly, by use of a means and

8 instrumentality of interstate commerce and of the mails, and a

9 facility of a national securities exchange, used and employed,

10 in connection with the purchase and sale of a security, a

11 manipulative and deceptive device and contrivance, in violation

12 of Title 17, Code of Federal Regulations Section 240.10b-5 by:

13 (a) employing a device, scheme, and artifice to defraud; (b)

14 making an untrue statement of a material fact and omitting to

15 state a material fact necessary in order to make the statements

16 made, in light of the circumstances under which they were made,

17 not misleading and; (c) engaging in an act, practice, and

18 course of business which operated and would operate as a fraud

19 and deceit upon a person to wit, Mashinsky and Cohen-Pavon

20 engaged in a scheme to defraud investors in CEL token by

21 artificially manipulating the market for CEL token and through

22 making false and misleading statements about Celsius' purchases

23 of CEL token and making false and misleading statements about

24 Mashinsky's own sales of CEL token in violation of Title 15,

25 United States Code, Sections 78j(b) and 78ff; Title 17, Code of

N9DUCOHP

Federal Regulations, Section 240.10b-5; and Title 18, United

States Code, Section 2.

Do you understand that's what you're charged with in

Count Five of the indictment?

THE DEFENDANT:  Yes, I do.

THE COURT:  Do you understand if you did not plead

guilty, the government would be required to prove beyond a

reasonable doubt at trial that you, the defendant, did any of

the following:  1, employed a device, scheme, or artifice to

defraud; or 2, made an untrue statement of a material fact or

omitted to state a material fact that made what was said under

the circumstances misleading; or, 3, engaged in an act,

practice, or course of business that operated or would operate

as a fraud or deceit upon a purchaser or seller.

Second, that you, the defendant, acted willfully,

knowingly, and with the intent to defraud.

And, third, that the defendant knowingly used or

caused to be used any means or instruments of transportation or

communication in interstate commerce or the use of the mails in

furtherance of the fraudulent conduct.

Do you understand the government would be required to

prove all of that beyond a reasonable doubt at trial?

THE DEFENDANT:  Yes, I do, your Honor.

THE COURT:  Do you understand that the maximum penalty

for the crime charged in Count Five is a maximum sentence of 20

1    years' imprisonment, a maximum term of three years' supervised

2    release, a maximum fine of the greatest of $5 million or twice

3    the gross pecuniary gain derived from the offense or twice the

4    gross pecuniary loss to a person or persons other than yourself

5    as a result of the offense, and a mandatory $100 special

6    assessment?

7            Do you understand that's the maximum penalty for the

8    crime charged in Count Five the indictment?

9            THE DEFENDANT:  Yes, I do.

10           THE COURT:  Count Six of the indictment charges market

11   manipulation of CEL token.

12           It repeats the allegations contained in paragraphs 1

13   through 71 and 83 of the indictment as re-alleged and

14   incorporated by reference as if fully set forth in Count Six.

15           And then goes on to charge that from at least in or

16   about 2019 through at least in or about June 2022, in the

17   Southern District of New York and elsewhere, Alexander

18   Mashinsky and Roni Cohen-Pavon, the defendants, willfully and

19   knowingly, would and did, directly and indirectly, by the use

20   of the mail and a means or instrumentality of interstate

21   commerce, and of a facility of a national securities exchange,

22   and for a member of a national securities exchange, effected,

23   alone and with one and more other persons, a series of

24   transactions in a security registered on a national securities

25   exchange, a security not so registered, and in connection with

1    the security-based swap or security-based swap agreement with

2    respect to such security creating actual or apparent active

3    trading in such security, and raising and depressing of price

4    of such security, for the purpose of inducing the purchase or

5    sale of such security by others, to wit, Mashinsky and

6    Cohen-Pavon engaged in a series of transactions in CEL in order

7    to artificially raise the price of CEL and induce others to

8    purchase CEL in violation of Title 15, United States Code,

9    Sections 78i(a)2 and 78ff, and Title 18, United States Code,

10   Section 2.

11              Do you understand that's what you are charged with in

12   Count Six --

13              THE DEFENDANT:  Yes.

14              THE COURT:  -- of the indictment?

15              THE DEFENDANT:  Yes, I do, your Honor.

16              THE COURT:  I don't have in front of me the elements

17   for a violation of 78i(a)2 in terms of market manipulation.

18              MR. HOBSON:  I can provide those to the Court if you

19   would like.

20              THE COURT:  Sure.

21              MR. HOBSON:  We understand that it has three elements:

22   First, that the defendant, through a series of transactions

23   either created actual or apparent trading in the security or

24   raised or depressed the price of the security or aided and

25   abetted the same; second, that the defendant acted for the

N9DUCOHP

1    purpose of inducing the purchase or the sale of the security by

2    others; and, third, that the defendant acted willfully and with

3    a manipulative purpose.

4                THE COURT:  Thank you.

5                Mr. Cohen-Pavon, do you understand that the government

6    would be required to prove all of those elements beyond a

7    reasonable doubt at trial?

8                THE DEFENDANT:  Yes, I do.

9                THE COURT:  Do you understand that the maximum penalty

10    for the crime charged in Count Six is 20 years' imprisonment, a

11    maximum term of three years' supervised release, a maximum fine

12    of the greatest of $5 million or twice the gross pecuniary gain

13    derived from the offense or twice the gross pecuniary loss to a

14    person or persons other than yourself as a result of the

15    offense, and a mandatory $100 assessment?

16                Do you understand that's the maximum penalty for the

17    crime charged in Count Six?

18                THE DEFENDANT:  Yes.

19                THE COURT:  Count Seven charges wire fraud in

20    connection with CEL token manipulation.

21                It repeats and re-alleges the allegations contained in

22    paragraphs 1 through 71 and 83, and incorporates them by

23    reference and goes on to charge that:  From at least in or

24    about 2018 through at least in or about June 2022, in the

25    Southern District of New York and elsewhere, Alexander

N9DUCOHP

```
 1   Mashinsky and Roni Cohen-Pavon, the defendants, knowingly
 2   having devised and intending to devise a scheme and artifice to
 3   defraud, and for obtaining money and property by means of false
 4   and fraudulent pretenses, representations, and promises,
 5   transmitted and caused to be transmitted by means of wire,
 6   radio, and television communication in interstate and foreign
 7   commerce, writings, signs, signals, pictures, and sounds for
 8   the purpose of executing such scheme and artifice, to wit,
 9   Mashinsky and Cohen-Pavon engaged in a scheme to defraud
10   investors in CEL token by artificially manipulating the market
11   for CEL token and through making false and misleading
12   statements about Celsius' purchase of CEL token and making
13   false and misleading statements about Mashinsky's own sales of
14   CEL token, including using interstate wires, some of which
15   transited through the Southern District of New York in
16   violation of Title 18, United States Code, Sections 1343 and 2.
17          Do you understand that's what you were charged with in
18   Count Seven of the indictment?
19          THE DEFENDANT:  Yes, I do.
20          THE COURT:  And do you understand that if you did not
21   plead guilty, the government would be required to prove beyond
22   a reasonable doubt at trial:
23          First, that there was a scheme or artifice to defraud
24   or to obtain money or property by materially false and
25   fraudulent pretenses, representations, or promises as alleged
```

N9DUCOHP

1   in the indictment.

2              Second, that you, the defendant, knowingly and

3   willfully participated in the scheme or artifice to defraud

4   with knowledge of its fraudulent nature and with specific

5   intent to defraud.

6              And third, that in execution of that scheme, you, the

7   defendant, used or caused the use of the interstate wires as

8   specified in the indictment.

9              Do you understand that the government would be

10  required to prove all of that beyond a reasonable doubt at

11  trial?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  Do you understand that the maximum penalty

14  for the crime charged in Count Seven is a maximum sentence of

15  20 years' imprisonment, a maximum term of three years'

16  supervised release, a maximum fine of the greatest of $250,000

17  or twice the gross pecuniary gain derived from the offense or

18  twice the gross pecuniary loss to a person or persons other

19  than yourself as a result of the offense, and a mandatory $100

20  special assessment?

21             Do you understand that's the maximum sentence for the

22  crime charged in Count Seven of the indictment?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  Do you understand that when I talk about

25  supervised release, supervised release means that you will be

N9DUCOHP

 1    subject to monitoring when you are released from prison and the

 2    monitoring is to be on under terms and conditions which could

 3    lead to re-imprisonment without a jury trial if you violate

 4    them?

 5                THE DEFENDANT:  Yes, I understand.

 6                THE COURT:  And do you understand that if you violated

 7    the terms of supervised release and were sentenced to prison,

 8    you could be sentenced to prison for the entire term of

 9    supervised release without any credit for any time you have

10    already spent on supervised release?

11                THE DEFENDANT:  Yes, I do.

12                THE COURT:  Do you also understand that as part of

13    your sentence, I must also order restitution to any person

14    injured as a result of your criminal conduct?

15                THE DEFENDANT:  Yes, I do.

16                THE COURT:  The indictment also includes a forfeiture

17    allegation in which the government seeks to have you forfeit

18    any and all property, real and personal, that constitutes or is

19    derived from proceeds traceable to the commission of the

20    offenses including but not limited to a sum of money in United

21    States currency representing the amount of proceeds traceable

22    to the commission of the offenses?

23                Do you understand that?

24                THE DEFENDANT:  Yes, I do.

25                THE COURT:  So do you understand that as part of your

N9DUCOHP

1    sentence, I can also order forfeiture?

2              THE DEFENDANT:  Yes, I do.

3              THE COURT:  Now, Mr. Cohen-Pavon, you're pleading

4    guilty to different counts in the indictment.  Do you

5    understand that you will be separately sentenced on each of

6    those counts and that I can order that the sentences on those

7    counts be served concurrently, that is at the same time, or

8    consecutively, which means one right after the other?

9              Do you understand that?

10             THE DEFENDANT:  Yes, I do.

11             THE COURT:  So you're actually facing a potential

12   sentence of 65 years on the four counts to which you're

13   entering a plea of guilty?

14             Do you understand that?

15             THE DEFENDANT:  Yes, I do.

16             THE COURT:  And I can also order that the fines be

17   added together and that the special assessments be added

18   together, so you're facing a special assessment of $400.

19             Do you understand that all of that?

20             THE DEFENDANT:  Yes, I do.

21             THE COURT:  Do you also understand that if I accept

22   your guilty plea and adjudge you guilty that adjudication may

23   deprive you of valuable civil rights or the right to obtain

24   valuable civil rights, such as the right to vote, the right to

25   hold public office, the right to serve on a jury, and the right

N9DUCOHP

1    to possess any kind of firearm?

2              THE DEFENDANT:  Yes, I understand.

3              THE COURT:  You've also told me that you're not a

4    citizen of the United States.  Do you understand that your

5    conviction can be used to remove you from the United States, to

6    deny you citizenship, and to deny you admission to the United

7    States in the future?

8              Do you understand that?

9              THE DEFENDANT:  Yes, I do.

10             THE COURT:  You've spoken to your lawyers about the

11   immigration consequences of your plea; is that right?

12             THE DEFENDANT:  Yes, I have.

13             THE COURT:  Mr. Cohen-Pavon, under current law, there

14   are sentencing guidelines that judges must consult in

15   determining your sentence.  You've spoken to your lawyers about

16   the sentencing guidelines, haven't you?

17             THE DEFENDANT:  Yes, I have.

18             THE COURT:  Do you understand that I, as the

19   sentencing Court, will not be able to determine your guidelines

20   sentence until after the probation department has completed the

21   presentence report, and after you and your lawyers and the

22   government have had an opportunity to review the presentence

23   report, to challenge anything contained in the report, and to

24   bring those challenges to my attention?

25             Do you understand that?

N9DUCOHP

1            THE DEFENDANT:  Yes, I do.

2            THE COURT:  And even after it's determined what the

3    basic guidelines sentencing range is in your case, I have the

4    authority in some circumstances to depart upward or downward

5    from the sentencing guideline range otherwise provided for in

6    your case.

7            Do you understand that?

8            THE DEFENDANT:  Yes, I do.

9            THE COURT:  And even after I've made that

10   determination of the appropriate guidelines sentencing range in

11   your case, taking into account any upward or downward

12   departures, I must then consult other statutory factors in

13   order to arrive at a final conclusion as to what the

14   appropriate and reasonable sentence is in your case.

15           Do you understand that?

16           THE DEFENDANT:  Yes, I do.

17           THE COURT:  Do you also understand that if you are

18   sentenced to prison, parole has been abolished and you will not

19   be released any earlier on parole?

20           THE DEFENDANT:  Yes, I do.

21           THE COURT:  Do you have any questions about that?

22           THE DEFENDANT:  No.

23           THE COURT:  Do you understand that if your lawyer or

24   anyone else has attempted to estimate or predict what your

25   sentence will be, that their estimate or prediction could be

N9DUCOHP

1    wrong?

2            THE DEFENDANT:  I understand.

3            THE COURT:  No one, Mr. Cohen-Pavon, not your lawyers,

4    not the government, no one can or should give you any assurance

5    of what your sentence will be since that sentence can only be

6    determined after the probation department has completed the

7    presentence report, after I have ruled on any challenges to the

8    report, and you after I've determined what the appropriate and

9    reasonable sentence is in your case.

10           Do you understand that?

11           THE DEFENDANT:  Yes, I do.

12           THE COURT:  Do you also understand that even if your

13   sentence is different from what your lawyers or anyone else

14   told you that it might be or if it's different from what you

15   expect it to be, you will still be bound by your guilty plea

16   and you will not be allowed to withdraw your plea of guilty?

17           Do you understand that?

18           THE DEFENDANT:  Yes, I do.

19           THE COURT:  Mr. Cohen-Pavon, I've been given the plea

20   agreement, which you heard me talk about at the outset, the

21   September 11, 2023 letter to your lawyer from the government.

22   It appears to be signed by you and Mr. Brown today,

23   September 13, 2023.

24           Have you signed this plea agreement?

25           THE DEFENDANT:  Yes.

N9DUCOHP

1              THE COURT:  Did you read the agreement before you

2    signed it?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Did you discuss the agreement with your

5    lawyers before you signed it?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Did you fully understand the agreement

8    before you signed it?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Does this letter agreement constitute your

11   complete and total understanding of the entire agreement

12   between the government, your lawyers, and you?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Is everything that you understand about

15   your plea and your sentence contained in this plea agreement?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Has anything been left out?

18             THE DEFENDANT:  No.

19             THE COURT:  Has anyone offered you any inducements or

20   threatened you or forced you to plead guilty or to enter into

21   this plea agreement?

22             THE DEFENDANT:  No.

23             THE COURT:  Mr. Cohen-Pavon, the Court is not bound by

24   the plea agreement or by any of the provisions in the plea

25   agreement.  The Court must make an independent determination of

N9DUCOHP

 1    the appropriate sentence in your case.  And even if that

 2    sentence differs from anything that's contained in the plea

 3    agreement, you will still be bound by your guilty plea and you

 4    will not be allowed to withdraw your plea of guilty.

 5              Do you understand that?

 6              THE DEFENDANT:  Yes, I do.

 7              THE COURT:  Mr. Brown, do you know of any valid

 8    defense that would prevail at the trial of Mr. Cohen-Pavon?

 9              MR. BROWN:  No, your Honor.

10              THE COURT:  Do you know of any reason why

11    Mr. Cohen-Pavon should not be permitted to plead guilty?

12              MR. BROWN:  No, your Honor.

13              THE COURT:  Mr. Cohen-Pavon, please tell me what you

14    did in connection with each of the crimes to which you are

15    entering a plea of guilty?

16              THE DEFENDANT:  Yes, your Honor.

17              In October of 2021, I became responsible for

18    overseeing and approving Celsius' market purchases of the CEL

19    token.  Beginning in 2019, Celsius publicly told CEL market

20    participants that the company was purchasing a certain amount

21    of CEL in the market to fund the interest payment that it owed

22    to Celsius' clients.  From October 2021 through December 31,

23    2021, I oversaw and at times directly ordered a pattern of CEL

24    token purchases in excess of what the company needed to buy to

25    meet its interest obligation.  I knew and understood that the

N9DUCOHP

1    purpose of these excess purchases was at least in part to

2    increase the price of the CEL token, prevent the price of CEL

3    token from dropping, and all to create the appearance of a more

4    liquid market in CEL token trading, all of which were intended

5    to, at least in part, to induce additional CEL purchases by the

6    public at prices that likely did not reflect the true market

7    price.

8              I communicated with other Celsius employees by either

9    email and telephone about these excess purchases including the

10   purpose behind the purchases, at the time agreed to order

11   excess purchases based on the -- based on agreement with or

12   orders from these other individuals.

13             Throughout this time --

14             THE COURT:  I'm sorry.  Hold on one sec.  Could you

15   just go back a couple of sentences with respect to the

16   agreement?

17             THE DEFENDANT:  I communicated -- this one, your

18   Honor?

19             THE COURT:  Yes.  Go ahead.

20             THE DEFENDANT:  I communicated with other Celsius

21   employees by either email and telephone about these excess

22   purchases including the purpose behind the purchases and at

23   times agreed to order excess purchases based on agreement with

24   or orders from these other individuals.

25             Throughout this time period, I believe that the CEL

N9DUCOHP

1  token qualified as a security under the relevant laws and

2  regulation.

3          THE COURT:  In Count Four of the indictment, one of

4  the overt acts alleged is that on or about October 30, 2021,

5  you and Mr. Mashinsky discussed by electronic message a plan to

6  artificially manipulate the price of CEL.  Did you do that?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  And was that in furtherance of the

9  conspiracy that you've described to me?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Were any of the electronic communications

12 that you've mentioned, did they go through Manhattan or the

13 Bronx?  Do you know?  I can ask the question of the government

14 also, but do you know?

15         THE DEFENDANT:  No, I don't, your Honor.

16         THE COURT:  What's the government's proffer with

17 respect to venue on each of the counts?

18         MR. HOBSON:  Your Honor, I can proffer that Celsius

19 has an office based in New York City, in Manhattan, that

20 Defendant Alex Mashinsky was based in Manhattan, and that

21 several of the relevant emails and communications discussed

22 here were sent when Mashinsky was in Manhattan.  In addition,

23 Celsius' trading was often directed out of Manhattan.

24         THE COURT:  The reason that I ask these questions,

25 Mr. Cohen-Pavon, is that the government would be required to

N9DUCOHP

 1  prove that there was venue for each of the counts in the

 2  Southern District of New York.  The Southern District of New

 3  York includes Manhattan, the Bronx, Westchester, and some other

 4  northern counties.  The government says that it can do that.  A

 5  defendant has the right to be prosecuted in a district where

 6  there is venue.  The government says it could prove venue here

 7  in the Southern District of New York.

 8              For purposes of your plea, are you prepared to accept

 9  that?

10              THE DEFENDANT:  Yes, your Honor.

11              THE COURT:  When you did the acts that you've

12  described to me, did you know that what you were doing was

13  wrong and illegal?

14              THE DEFENDANT:  Yes, your Honor.

15              THE COURT:  Does the government want me to ask any

16  other questions of the defendant?

17              MR. HOBSON:  No, your Honor.

18              THE COURT:  Tell me what the government's evidence

19  would be at trial against the defendant.

20              MR. HOBSON:  Your Honor, our evidence would include,

21  among other things, documents and communications involving the

22  defendant and other members of the conspiracy discussing the

23  plan to manipulate the price of CEL token; trading records

24  showing actual purchases made in furtherance of this plan,

25  purchases which were in excess of Celsius' public disclosures

N9DUCOHP

1    about the amount it was purchasing.  It would also include

2    testimony from other members of the conspiracy and other

3    individuals at Celsius who would testify about the excess

4    purchases.

5              THE COURT:  And would the government's evidence

6    establish the defendant's guilt beyond a reasonable doubt of

7    each of the counts to which he's pleading?

8              MR. HOBSON:  Yes, your Honor.

9              THE COURT:  Mr. Cohen-Pavon, how do you plead to the

10   charge against you in Count Four of the indictment, guilty or

11   not guilty?

12             THE DEFENDANT:  Guilty, your Honor.

13             THE COURT:  Mr. Cohen-Pavon, how do you plead to the

14   charge against you in Count Five of the indictment, guilty or

15   not guilty?

16             THE DEFENDANT:  Guilty, your Honor.

17             THE COURT:  Mr. Cohen-Pavon, how do you plead to the

18   charge against you in Count Six of the indictment, guilty or

19   not guilty?

20             THE DEFENDANT:  Guilty, your Honor.

21             THE COURT:  Mr. Cohen-Pavon, how do you plead to the

22   charge against you in Count Seven the indictment, guilty or not

23   guilty?

24             THE DEFENDANT:  Guilty, your Honor.

25             THE COURT:  Are you pleading guilty because you are,

N9DUCOHP

 1   in fact, guilty?

 2              THE DEFENDANT:  Yes, I am.

 3              THE COURT:  Are you pleading guilty voluntarily and of

 4   your own free will?

 5              THE DEFENDANT:  Yes, your Honor.

 6              THE COURT:  Before I finally accept the defendant's

 7   plea, Mr. Brown, do you want me to ask any other questions of

 8   the defendant?

 9              MR. BROWN:  No, your Honor.  Thank you.

10              THE COURT:  Do you know of any reason that I should

11   not accept his plea?

12              MR. BROWN:  I do not.

13              THE COURT:  Before I finally accept the defendant's

14   plea, does the government want me to ask any other questions of

15   the defendant?

16              MR. HOBSON:  No, your Honor.

17              THE COURT:  Does the government know of any reason

18   that I should not accept his plea?

19              MR. HOBSON:  No, your Honor.

20              THE COURT:  Mr. Cohen-Pavon, because you acknowledge

21   that you are guilty as charged in Counts Four, Five, Six, and

22   Seven of the indictment, because I find that you know your

23   rights and are waiving them knowingly and voluntarily, because

24   I find that your plea is entered knowingly and voluntarily and

25   is supported by an independent basis in fact containing each of

N9DUCOHP

1  the essential elements of the offenses, I accept your guilty

2  plea and I adjudge you guilty of the offenses to which you have

3  pleaded.

4         Mr. Cohen-Pavon, the probation department will now

5  prepare a presentence report to assist me in sentencing you.

6  You will be interviewed by the probation department.  It's very

7  important that the information you provide to the probation

8  department be truthful and accurate.  The presentence report is

9  very important to me in my decision as to what your sentence

10  will be.

11         You and your lawyers will have the opportunity to

12  review the presentence report to challenge anything contained

13  in the report and then to speak on your behalf at sentencing.

14         I don't like control dates, so if the government can

15  give me some reasonable estimate as to what a reasonable

16  sentencing date is, we'll set that as the sentencing date.

17         MR. HOBSON:  Your Honor, it would be after the trial

18  in this matter, which I think, based on prior discussions with

19  the Court, we anticipate happening within the next year.  Would

20  the Court be okay with a date that's a year out?

21         THE COURT:  Yes.

22         MR. HOBSON:  Why don't we do actually -- why don't we

23  do a year and three months out?

24         THE COURT:  Okay.

25         MR. HOBSON:  Which would be three months after a

N9DUCOHP

1    potential trial date.  And we can, of course, come back to the

2    Court if that changes.

3            THE COURT:  Absolutely.

4            MR. HOBSON:  We would also request that the

5    presentence report not be ordered until we're approaching that

6    date.

7            THE COURT:  Sure.  Of course.

8            Tell the probation department to hold off any

9    presentence report until a time at least two months before the

10   proposed sentencing date.

11           THE DEPUTY CLERK:  Normally, since he's on bail, they

12   want three months.

13           THE COURT:  Three months.

14           THE DEPUTY CLERK:  Or further order of the Court?

15           THE COURT:  Yes.  Fine.

16           THE DEPUTY CLERK:  The Court is giving notice to the

17   probation department that there be no PSI, which means a

18   presentence investigation, or PSR, presentence report, until

19   further order of the Court.

20           THE COURT:  Sentencing date?

21           THE DEPUTY CLERK:  December 11th at 11 a.m.

22           THE COURT:  December 11th.

23           THE DEPUTY CLERK:  2024.

24           THE COURT:  2024, at 11 a.m.

25           The defense submission should be given at least 14

N9DUCOHP

```
 1    days before sentence, the government's submission at least
 2    eight days before sentence.
 3              No changes in the defendant's release?  Is that right?
 4              MR. HOBSON:  That's correct, your Honor.
 5              THE COURT:  Mr. Cohen-Pavon, I fixed the date for
 6    sentence.  Do you understand that if you fail to return to my
 7    courtroom on the date fixed for sentence or any adjourn date,
 8    you will be guilty of a criminal offense for which you could be
 9    sentenced to prison wholly separate and apart from and in
10    addition to any sentence that you may receive for the crimes to
11    which you just entered a plea of guilty.
12              Do you understand that?
13              THE DEFENDANT:  Yes, I do.
14              THE COURT:  Do you also understand I'm continuing all
15    of the conditions of your release and the violation of any of
16    those conditions can have serious consequences for you.
17              Do you understand that?
18              THE DEFENDANT:  Yes, I do.
19              THE COURT:  Anything else?
20              MR. HOBSON:  No, your Honor.
21              MR. BROWN:  No, your Honor.
22              For the avoidance of doubt, my client's excused from
23    any further appearances, at status conferences until the
24    sentencing?  Is that fair?
25              THE COURT:  Yes.
```

N9DUCOHP

1          MR. BROWN:  Thank you.

2          THE COURT:  The government had raised the issue about

3    the prior proceedings were not docketed or sealed.  There's no

4    reason for any further sealing or any delay in docketing,

5    right?

6          MR. HOBSON:  Not from the government's perspective.

7          THE DEPUTY CLERK:  So the clerk can file the minute

8    entry into the court docket?

9          MR. HOBSON:  Yes, your Honor.

10         THE COURT:  Yes.

11         And I'm returning Court Exhibit 1 to the government.

12         I assume the September 5 letter can also be docketed.

13         MR. HOBSON:  No objection to that, your Honor.

14         THE COURT:  But the Court Exhibit 1 is never docketed

15   and I'm returning Court Exhibit 1 to the government.

16         Good afternoon, all.

17

18

19

20

21

22

23

24

25