**In the Matter Of:**

*Re CELSIUS NETWORK LLC, et al.*

*CHRISTOPHER FERRARO*

*November 21, 2022*



1

1

2              UNITED STATES BANKRUPTCY COURT

3              SOUTHERN DISTRICT OF NEW YORK

4
   In re:                        )
5                                )  Chapter 11
                                 )
6  CELSIUS NETWORK LLC, et al.   )  Case No. 22-10964
                                 )  (MG)
7                                )
   _____  )
8

9

10

11

12

13                   CONFIDENTIAL

14   VIDEOCONFERENCE VIDEO-RECORDED DEPOSITION OF

15            CHRISTOPHER JAMES FERRARO

16              New York, New York

17            Monday, November 21, 2022

18

19

20

21

22

23  Reported Stenographically By:
    PATRICIA A. BIDONDE
24  Registered Professional Reporter
    Realtime Certified Reporter
25  JOB#:  2022-872581

2

1

2

3

4                          November 21, 2022
                              9:09 a.m.
5

6

7          Confidential Videoconference

8   Video-Recorded Deposition of

9   CHRISTOPHER JAMES FERRARO, held at

10  the offices of Kirkland & Ellis LLP,

11  601 Lexington Avenue, New York, New

12  York, before Patricia A. Bidonde,

13  Stenographer, Registered

14  Professional Reporter, Realtime

15  Certified Reporter, Certified

16  eDepoze Court Reporter, Notary

17  Public of the States of New York,

18  New Jersey, and Connecticut.

19

20

21

22

23

24

25

Confidential          Christopher Ferraro - November 21, 2022

```
                                                                    3
 1

 2                    A P P E A R A N C E S

 3

 4   KIRKLAND & ELLIS LLP

 5   Attorneys for Debtors Celsius Network LLC

 6          1301 Pennsylvania Avenue, N.W.

 7          Washington, D.C. 20004

 8   BY:    T.J. MCCARRICK, ESQ.

 9          202-389-3136

10          tj.mccarrick@kirkland.com

11

12   BY:    JOSEPH D' ANTONIO, ESQ.

13          202-389-3370

14          joseph.dantonio@kirkland.com

15          (Via Videoconference)

16

17          601 Lexington Avenue

18          New York, New York 10022

19   BY:    ELIZABETH JONES, ESQ.

20          212-390-6935

21          elizabeth.jones@kirkland.com

22

23

24

25
```

Confidential        Christopher Ferraro - November 21, 2022

4

1

2         A P P E A R A N C E S   (CONTINUED)

3

4   KIRKLAND & ELLIS LLP

5   Via Videoconference:

6         300 North LaSalle

7         Chicago, Illinois 60654

8   BY:    GABRIELA ZAMFIR HENSLEY, ESQ.

9         312-862-4007

10         gabriela.zamfir@kirkland.com

11   BY:    AMILA GOLIC, ESQ.

12         312-862-4488

13         amila.golic@kirkland.com

14   BY:    CHRISTOPHER S. KOENIG, ESQ.

15         312-862-2372

16         chris.koenig@kirkland.com

17   BY:    ROSS KWASTENIET, ESQ.

18         312-862-2069

19         ross.kwasteniet@kirkland.com

20   BY:    DAN LATONA, ESQ.

21         312-862-3445

22         dan.latona@kirkland.com

23

24

25

5

```
 1
 2         A P P E A R A N C E S  (CONTINUED)
 3   WHITE & CASE LLP
 4   Attorneys for Official Committee of Unsecured
 5   Creditors
 6         1221 Avenue of the Americas
 7         New York, New York 10020-1095
 8   BY:   KATHRYN SUTHERLAND-SMITH, ESQ.
 9         212-819-8437
10         kathryn.sutherland.smith@whitecase.com
11
12   Via Videoconference:
13         1221 Avenue of the Americas
14         New York, New York 10020-1095
15   BY:   SAMUEL P. HERSHEY, ESQ.
16         212-819-2699
17         sam.hershey@whitecase.com
18   BY:   ANDREA AMULIC, ESQ.
19         212-819-7061
20         andrea.amulic@whitecase.com
21         Southeast Financial Center
22         Miami, Florida 33131-2352
23   BY:   KEITH H. WOFFORD, ESQ.
24         212-819-7595
25         kwofford@whitecase.com
```

6

```
 1
 2         A P P E A R A N C E S  (CONTINUED)
 3
 4  U.S. DEPARTMENT OF JUSTICE
 5  Attorneys for Office of the United States
 6  Trustee
 7         950 Pennsylvania Avenue, NW
 8         Washington, D.C. 20530-0001
 9  BY:    SHARA CORNELL, ESQ.
10         shara.cornell@usdoj.gov
11  BY:    MARK BRUH, ESQ.
12         mark.bruh@usdoj.gov
13
14  NATIONAL ASSOCIATION OF ATTORNEYS GENERAL
15  Attorneys for Coordinating States
16         1850 M Street NW
17         12th floor.
18         Washington, D.C. 20036
19  BY:    KAREN CORDRY, ESQ.
20         202-326-6000
21         (Via Videoconference)
22
23
24
25
```

7

1

2          A P P E A R A N C E S   (CONTINUED)

3

4    TEXAS ATTORNEY GENERAL'S OFFICE

5    Office of the Attorney General

6          300 West 15th Street

7          Austin, Texas 78701

8    Via Videoconference:

9    BY:    ABIGAIL R. RYAN, ESQ.

10          abigail.Ryan@oag.texas.gov

11   BY:    LAYLA D. MILLIGAN, ESQ.

12          layla.Milligan@oag.texas.gov

13   BY:    ROMA N. DESAI, ESQ.

14          roma.Desai@oag.texas.gov

15

16

17

18

19

20

21

22

23

24

25

8

```
 1

 2        A P P E A R A N C E S  (CONTINUED)

 3

 4   STATE OF VERMONT DEPARTMENT OF FINANCIAL

 5   REGULATION

 6          Consumer Services

 7          89 Main Street

 8          Montpelier, Vermont 05620

 9   BY:    JENNIFER ROOD, ESQ.

10          (Via Videoconference)

11

12   FEDERAL TRADE COMMISSION

13          600 Pennsylvania Avenue, NW

14          Washington, D.C. 20580

15   BY:    KATHERINE M. AIZPURU, ESQ.

16          202-326-2222

17          (Via Videoconference)

18

19

20

21

22

23

24

25
```

9

```
 1

 2         A P P E A R A N C E S  (CONTINUED)

 3

 4   MILBANK LLP

 5   Attorneys for Series B Preferred Holders

 6         1850 K Street, NW

 7         Suite 1100

 8         Washington, D.C. 20006

 9   BY:    MELANIE WESTOVER YANEZ, ESQ.

10         202-835-7560

11         mwyanez@milbank.com

12   BY:    TRUMAN WHITNEY, ESQ.

13         202-835-7553

14         twhitney@milbank.com

15

16   TOGUT, SEGAL & SEGAL LLP

17   Attorneys for Ad Hoc Group of Custodial

18   Account Holders

19         One Penn Plaza

20         Suite 3335

21         New York, New York 10119

22   BY:    JARED C. BORRIELLO, ESQ.

23         212-201-6571

24         jborriello@teamtogut.com

25         (Via Videoconference)
```

10

```
 1
 2        A P P E A R A N C E S   (CONTINUED)
 3
 4   VENABLE LLP
 5   Attorneys for Igmat Tuganuv
 6           1290 Avenue of the Americas
 7           20th Floor
 8           New York, New York 10104
 9   BY:     ARIE PELED, ESQ.
10           212-503-0896
11           apeled@venable.com
12           (Via Videoconference)
13
14   WEIR GREENBLATT PIERCE LLP
15   Attorneys for Matthew Pinto
16           The Widener Building
17           1339 Chestnut Street
18           Suite 500
19           Philadelphia, Pennsylvania 19107
20   BY:     CAROLINE BOJARSKI, ESQ.
21           cbojarski@wgpllp.com
22           (Via Videoconference)
23
24
25
```

```
                                                              11
 1

 2          A P P E A R A N C E S   (CONTINUED)

 3

 4   AKIN GUMP STRAUSS HAUER & FELD LLP

 5   Via Videoconference:

 6           2300 North Field Street

 7           Suite 1800

 8           Dallas, Texas 75201-2481

 9   BY:     MICHAEL STANLEY, ESQ.

10           214-969-4752

11           mstanley@akingump.com

12

13           One Bryant Park

14           Bank of America Tower

15           New York, New York 10036-6745

16   BY:     MITCHELL P. HURLEY, ESQ.

17           212-872-1011

18           mhurley@akingump.com

19

20

21

22

23

24

25
```

Confidential          Christopher Ferraro - November 21, 2022

```
                                                                    12
 1

 2          A P P E A R A N C E S   (CONTINUED)

 3

 4    MCCARTER & ENGLISH, LLP

 5    Attorneys for Certain Borrowers

 6           Worldwide Plaza

 7           825 Eighth Avenue

 8           31st Floor

 9           New York, New York 10019

10    BY:    DAVID ADLER, ESQ.

11           212-609-6847

12           dadler@mccarter.com

13           (Via Videoconference)

14

15    THE GORDON LAW FIRM LLP

16    Pro se creditor

17           57 River Street

18           Suite 206

19           Wellesley, Massachusetts 02481

20    BY:    TODD GORDON, ESQ.

21           617-261-0100

22           tgordon@gordonfirm.com

23           (Via Videoconference)

24

25
```

13

```
 1
 2        A P P E A R A N C E S   (CONTINUED)
 3
 4    PRO SE CREDITORS VIA VIDEOCONFERENCE:
 5    CAMERON CREWS
 6    KULPREET KHANUJA
 7    IMMANUEL HERRMANN
 8    NICOLE BARSTOW
 9    JARNO OBERG
10    JEREMY COHEN HOFFING
11    VICTOR UBIERNA DE LAS HERAS
12    DANIEL FRISHBERG
13
14    THOMAS DIFIORE, UCC Co-Chair
15    MICHAEL MORRIS
16    MIKE G
17
18    ALSO PRESENT:
19    CHRISTIAN BIDONDE, Legal Video Specialist
20
21    Via Videoconference:
22    AYDALINE GARCIA, Zoom Tech
23
24                    - - -
25
```

14

1

2          IT IS HEREBY STIPULATED AND

3      AGREED, by and between the attorneys

4      for the respective parties, that all

5      objections, except as to the form of

6      the questions, shall be reserved to

7      the time of the trial.

8          IT IS FURTHER STIPULATED AND

9      AGREED that the within examination

10     may be signed and sworn to before

11     any Notary Public with the same

12     force and effect as if signed and

13     sworn to before the court.

14         IT IS FURTHER STIPULATED AND

15     AGREED that the filing of the

16     original transcript of the

17     examination is waived.

18

19

20

21

22

23

24

25

Confidential        Christopher Ferraro - November 21, 2022

15

```
 1
 2                    - - -
 3           P R O C E E D I N G S
 4                    - - -
 5           THE VIDEOGRAPHER:  We are now
 6    on the record.  The time is
 7    9:09 a.m. on November 21, 2022.
 8    Audio and video recording will
 9    continue to take place until all
10    parties agree to go off the record.
11    Please note that microphones are
12    sensitive and may pick up whispering
13    and private conversations.
14           This is the video-recorded
15    deposition of Christopher Ferraro in
16    the matter of In re Celsius Network,
17    et al.  This deposition is being
18    held at Kirkland & Ellis, New York,
19    New York.
20           My name is Christian Bidonde.
21    I am the legal video specialist.  On
22    behalf of Lexitas.  The certified
23    stenographer is Patricia Bidonde on
24    behalf of Lexitas.
25           Counsel will state their
```

16

1

2   appearances for the record and all

3   those parties on Zoom, except for

4   those speaking, will be noted for

5   the record.  Then the certified

6   stenographer will swear in the

7   witness.

8        MR. HERSHEY:  Sam Hershey from

9   White & Case on behalf of the

10  official committee of unsecured

11  creditors.

12       MR. WOFFORD:  You also have

13  Keith Wofford from White & Case on

14  behalf of the official committee.

15       MR. McCARRICK:  T.J.

16  McCarrick, Kirkland & Ellis, on

17  behalf of the debtors.

18       MS. CORNELL:  You have Shara

19  Cornell on behalf of the office of

20  the United States Trustee and Mark

21  Bruh.

22       MR. CREWS:  Cameron Crews, pro

23  se creditor.

24       MR. HERRMANN:  Immanual

25  Herrmann, pro se creditor.

17

```
 1
 2              MR. ADLER:  David Adler from
 3         McCarter English on behalf of
 4         certain borrowers.  Can everyone
 5         hear me?
 6              THE VIDEOGRAPHER:  Yes.
 7              MR. ADLER:  Thank you.
 8              MS. WESTOVER YANEZ:  Melanie
 9         Westover Yanez from Milbank for
10         Series B Preferred Holders.
11              MS. SUTHERLAND-SMITH:  Kathryn
12         Sutherland-Smith of White & Case for
13         the Official Committee of Unsecured
14         Creditors.
15              MS. JONES:  Elizabeth Jones of
16         Kirkland & Ellis on behalf of the
17         debtors.
18  C H R I S T O P H E R   F E R R A R O, called
19         as a witness, having been duly sworn by
20         a Notary Public, was examined and
21         testified as follows:
22  EXAMINATION BY
23  MR. HERSHEY:
24       Q.   Okay.  Good morning, Mr. Ferraro.
25  My name is --
```

95

```
1                C. Ferraro - Confidential

2        Q.    Approx- --

3        A.    -- specs -- invested.

4        Q.    Approximately 1.8 billion of it?

5        A.    Yeah.  I -- there was uses of the

6   stablecoin, and clearly most of it got used to

7   pay for operations, for lending, for the

8   mining asset, certain -- certain losses that

9   we had to take that we took.  We had to go

10  back and buy cryptocurrencies -- right? --

11  with stablecoins.

12              So, yeah, there was many purposes

13  that stablecoins were used for.  Some were

14  operations, some were to buy back coins that

15  were actual losses, and some was mining

16  assets, lending programs, et cetera.

17       Q.    So you listed a few things that

18  the stablecoin went to.  Do you know the

19  amount of stablecoin that was dedicated to

20  each of those things?

21       A.    Well, I think it's pretty safe to

22  say that predominantly the entire mining

23  asset, so call it almost 600 million.

24  Predominantly the entire retail lending book,

25  call it another 400-and-something million.
```

22-10964-mg   Doc 4736-1   Filed 11/29/22   Entered 11/29/22 14:59:32   Exhibit A
Case 1:20-cr-00648-GSK   Document 225-4   Filed 04/29/25   Page 20 of 24

Pg 98 of 461

96

 1              C. Ferraro - Confidential

 2     You're at a billion.

 3              There was operating expenses for

 4     2021 and 2022 that totaled, off of memory,

 5     about a half a billion.

 6              And then you had certain

 7     currency -- cryptocurrencies that we had to go

 8     back and buy because there was losses.  Think

 9     EFH.  So that's how you get to the 1.8 to 2

10     billion.

11         Q.    Okay.  So just -- so sticking with

12     your math.  So mining, lending, and

13     operations, you said 600 for mining, 400 for

14     lending, 500 for operations.  That totals

15     1.5 billion.  Right?

16         A.    Yeah.

17         Q.    So would the loss that you just

18     described be 300 million in your estimation?

19         A.    Losses in which we had to go back

20     and purchase cryptocurrencies for the accounts

21     so we didn't have a directional position.  I

22     don't have that number off the top of my head,

23     but, yeah, it was in that range.

24         Q.    Can you explain that a little more

25     of losses for which you had to go back and --

97

```
 1                  C. Ferraro - Confidential
 2          A.    Well, let's say --
 3          Q.    -- purchase cryptocurrency?
 4          A.    Yeah.  Let's say, for example,
 5   EFH.  We -- we borrowed money from EFH, and I
 6   believe this dates back to 2020.  Right?  We
 7   lent money -- we borrowed money from EFH, and
 8   we posted Bitcoin and ETH as collateral.
 9               When we went to pay down the loan
10   with EFH, they said, We don't have your
11   collateral.  So now we thought we had an asset
12   of Bitcoin -- right? -- and now we don't.  So
13   we had to use stablecoins to go out and buy
14   Bitcoin so that our risk positions would be
15   neutralized.
16          Q.    Understood.  Okay.  All right.
17   This may retread some of the ground we've just
18   gone over.  Let's turn to paragraph 26 of your
19   declaration.
20          A.    Of my declaration.  Okay.
21               Yes, sir.  I'm there.
22          Q.    And, actually, before we get
23   there, just one quick question:  Is Celsius
24   able to trace stablecoins in its possession to
25   specific transfers made by account holders?
```

364

```
1                 C. Ferraro - Confidential
2     this is not an activity that I'm involved in
3     or would condone.
4                 If it's happening, I don't know
5     about it and it will stop, sir.  Unless
6     there's a good reason for it, it should not go
7     on.  I do not know of any editing that's
8     happening right now with videos.
9                 MR. McCARRICK:  Object to --
10          Q.    Excellent.  I do not either, to be
11    clear, at the moment.  I know there's been a
12    lot of it, and maybe even including as you
13    transitioned into the role, which is not
14    saying you oversaw it or knew.
15                But I think it has been going on
16    and it may still be going on.  I don't know.
17    But I'll leave it at that.  Thank you for
18    stating that you don't support that.
19                So from the time you've been CFO
20    and just during your time at Celsius, in the
21    ordinary course of business, did Celsius pass
22    on 80 percent of its gross revenue to account
23    holders in the form of rewards?
24                MR. McCARRICK:  Object --
25          Q.    There were definitely statements
```

365

```
 1                C. Ferraro - Confidential

 2     about that, so I just want to ask if that was

 3     true.

 4                MR. McCARRICK:  Okay.  Object

 5          to form.  Again, this was carved

 6          out.  We didn't respond to this

 7          written deposition question.

 8                We'll let you respond to it

 9          here if you have personal knowledge.

10          If you don't, you should say so.

11          A.    Yeah, my understanding is that

12     they targeted a payout at 80 percent, but in

13     reality, because the deployment didn't return

14     the income that was expected, it was actually

15     above 80 percent.

16          Q.    It was above 80 percent, that's

17     your understanding?

18          A.    Yeah, the pay out ratio was above

19     80 percent.  I know this through the budgeting

20     exercise that I worked on.

21                I will say this:  I grew up in an

22     industry where you don't price to things like

23     80 percent.  You look at the risk-based return

24     on risk-based capital, and you accrete value

25     based on upon making the right decisions.
```

Confidential      Christopher Ferraro - November 21, 2022

366

```
1            C. Ferraro - Confidential
2            So I would not support, nor would
3  I go out in a new company saying 80 percent or
4  anything like that.  I would -- I would do my
5  best to earn a reasonable market-based return
6  on the capital and manage the risk.
7       Q.    All right.  Do any retail or
8  institutional borrowers who had stablecoin
9  loans from Celsius still have these cash loans
10 in their possession?
11            MR. McCARRICK:  Object to the
12      form.  Outside the scope.
13            You can answer, Mr. Ferraro.
14      A.    If I understand the question
15 correctly, outstanding loans, do customers
16 still have the fiat or the stablecoins?
17      Q.    Yeah.
18      A.    I think that's based upon their
19 spending habits and what they wanted to do
20 with the money.  I don't know what customers
21 do with the money that we give them, whether
22 it's in stables or whether it's in fiat.
23            They could have bought a car.
24 They could have paid off bills.  They could
25 have gone on a vacation.  Honestly, I don't
```