

**Demand Letter**

**CONFIDENTIAL - WITHOUT PREJUDICE**

**FOR THE PURPOSES OF SETTLEMENT DISCUSSION ONLY**

February 9, 2021

**EMAIL RETURN RECEIPT**

Reliz Limited
400 North May Street
Chicago, IL USA 60642
Attention: Mr. Brad Nagela
Attention: Mr. Nick Hammer
nick@blockfills.com
trading@blockfills.com

**Subject:** Breach of Contract/Demand of Payment

Dear Mr. Hammer and Mr. Nagela:

Celsius Network Limited ("**Celsius**") and Reliz Limited ("**Reliz**") entered into a Digital Asset Lending Agreement, dated December 3, 2019 (the "**Agreement**"), attached hereto as **Exhibit A,** together with a Loan Term Sheet #C1234, dated June 8, 2020 (the "**Term Sheet**") attached hereto as **Exhibit B**, whereby Celsius loaned Reliz 4,098.36 ETH to invest in the Grayscale ETHE fund, with profit sharing to Celsius (the "**Loan**").

The Agreement clearly, explicitly, unequivocally and repeatedly states that "Lender will lend Digital Asset(s) to Borrower and the Borrower will **return Digital Assets**" ("Digital Assets" being defined as '*Bitcoin (BTC), Ether (ETH)* or any digital asset that the parties may agree upon in writing'). Nowhere in the Agreement, nor in the Term Sheet, do the parties agree to the repayment of the Borrowed Amount (being 'the amount of Digital Asset(s) actually lent') in any

1

CELSIUSNETWORK_00009551
SDNY_R01_00077472

form or manner other than by returning the **Digital Assets** to Celsius, nor do the parties ever agree to such an alternative repayment method.

The above notwithstanding, it appears that Reliz has adopted its own interpretation of the Agreement, allowing it to choose to convert its repayment obligation into another currency, and at the conversion rates more convenient to it, resulting in its attempt to return to Celsius 665.47 ETH as principal and interest, instead of 4,098.36 ETH which constitutes the principal amount under the Agreement, plus 26.95 ETH in interest,  in direct violation of the terms of the Agreement.

It is noted that Reliz had attempted to pay Celsius a total value of 2,084.26 ETH, which it claimed to consist of 665.47 ETH as principal and interest plus USD 2,448,793.75 (valued at 1,418.79 ETH) representing profits as per the Agreement, and that such profit and interest does not form part of the principal.

Following Reliz's notification to Celsius that it is commencing the liquidating of its ETHE shares, the Loan has now reached the end of its Term, as per the Term Sheet. Accordingly, Reliz's obligation to pay Celsius the rightfully and legally owed amount of 4,098.36 ETH, plus profits and interest on the principal, is now due and payable. Celsius further considers Reliz's violation of the Agreement as described above a material breach, and, therefore, an Event of Default under Section 8 of the Agreement, giving rise to Celsius' right to "declare the Borrowed Amount, Invoice Amount and any other amounts owing under [the] Agreement to be immediately due and payable". For the avoidance of doubt, in the event that Reliz may consider any amounts as not yet due and payable, they are hereby declared as such.

Pursuant to Section 9.2 of the Agreement, in the event that Reliz fails to pay any amounts due pursuant to the Agreement, Reliz shall pay to Celsius, upon demand, all reasonable costs and expenses, including without limitation, reasonable legal fees and court costs incurred by Celsius in connection with the enforcement of its rights pursuant to the Agreement.

Further, as per Section 4.3 of the Agreement, Reliz's repayment failure shall incur Late Fees of 18% annualized and calculated daily.

**We hereby approach you with this letter of demand, requiring that you return the 4,098.36 ETH, plus profits and interest on the principal, as per the Term Sheet as soon as possible, but in no event later than the close of business on February 11, 2021. After February 11th, we will have no other choice but to initiate a formal legal action and engage with our litigation team.**

2

CELSIUSNETWORK_00009552
SDNY_R01_00077473

As an ex-gratia gesture, we agree to waive the Late Fees, to the extent you return the 4,098.36 ETH, plus profits and interest on the principal, as per the Term Sheet by the above date. In the event you fail to do so, your entire repayment obligation to us shall continue to bear the interest rate as per the Term Sheet, plus the Late Fees as per the Agreement effective as of the date of this letter and until such amounts are paid in full.

If by this time Reliz's obligations are not paid in full, we expressly reserve the right to pursue any and all available legal and equitable remedies, including, but not limited to, instituting formal litigation proceedings against Reliz, and this letter is without prejudice to any other rights or remedies available to Celsius.

Any claim that Celsius has agreed to your repayment of the Loan amount in fiat terms is false and misleading, and hereby rejected. Any reference to fiat amount value, including in the Term Sheet, is made as a mere indication for the purpose of calculating the fiat collateral amount. Furthermore, in an email, dated January 27, 2021, and attached hereto as **Exhibit C**, Nick Hammer expressly admitted that, "We owe you 4,098.36 ETH back plus profits and interest on the principal….". The following sections of the Agreement indicate that any Loan repayment is expected in the form of digital assets:

1) The Agreement defines *Digital Asset as Bitcoin (BTC), Ether (ETH)* or any digital asset that the parties may agree upon in writing, and *Borrowed Amount* as the amount of Digital Asset(s) actually lent by the Lender to the Borrower.
2) Pursuant to the Introduction (A), "Lender will lend Digital Asset(s) to Borrower and the Borrower will **return *Digital Assets**, e.g. BTC or ETH*,..."
3) Pursuant to Section 3.8, "The Borrower may at any time on a Calendar Day redeliver all or any portion of *Borrowed Amount* loaned to Borrower." Pursuant to Section 4.3, "Where the Borrower fails to return any *Digital Asset* by an applicable Due Date, the Borrower shall incur the Late Fee…"
4) Pursuant to Section 5.6, "In the event that Borrower does not return the Borrowed Amount when due, the Lender may apply the Collateral for the payment of any liability or obligation or indebtedness of the Borrower created by this Agreement, including, but not limited to using the Collateral to purchase *Digital Asset* to replenish Lender's supply of the relevant *Digital Asset*."
5) Pursuant to Section 8.1(i), the failure of the Borrower to return any *Borrowed Amount* when due constitutes an Event of Default.
6) Pursuant to Section 9.1, "the Lender may, at its option, declare the entire *Borrowed Amount*...to be immediately due and payable" upon the occurrence and during the continuation of any Event of Default.
7) Pursuant to Section 9.3, "The obligations of the Borrower from time to time to repay the *Borrowed amount*, Invoice Amount, any other amounts owing under this Agreement, and

3

CELSIUSNETWORK_00009553
SDNY_R01_00077474

all other amounts due and obligations owing under this Agreement all of which shall be full recourse obligations of the Borrower."

8) Pursuant to Section 14.2, "In the event of a termination of this Agreement, any loaned *Digital Asset* shall be returned immediately…"

The matters included in this letter are completely confidential and are intended solely for settlement purposes. They may not be used for any other purpose or in any other legal proceeding unrelated to this case.

To honor the legal requirements, Reliz has a legal obligation to preserve and maintain any and all information, materials, and documents in any form that may be remotely relevant to its breach of the Agreement.

Sincerely,

Jeremie Beaudry
General Counsel

Celsius Network Limited
1 Bartholomew Lane
London, UK EC2N 2AX
legal@celsius.network

4

CELSIUSNETWORK_00009554
SDNY_R01_00077475

**Exhibit A**

Digital Asset Lending Agreement

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009555
SDNY_R01_00077476

Ref. Lending Digital Assets



## DIGITAL ASSET LENDING AGREEMENT

Between: **Celsius Network Ltd** (the "**Lender**"), a company whose registered office is at 35 Great St. Helen's, London, UK EC3A 6AP; and  <u>Reliz Ltd</u>  (the "**Borrower**"), a company whose registered office is at <u>4th floor Century Yard, Cricket Sqr, Georgetown, Gr. Cayman, KY1-1209</u>the Lender and the Borrower together the "**Parties**" and each a "**Party**".

**INTRODUCTION:**

(A)     This Digital Asset Loan Agreement, including its Annexes, (the "**Agreement**") sets out the terms on which the Borrower may, from time to time, seek to initiate a transaction pursuant to which the Lender will lend Digital Asset(s) to Borrower and the Borrower will return Digital Assets, e.g. BTC or ETH, at or upon Loan termination or maturity, subject to no event of default occurring.

(B)     This Agreement has effect from <u>12/3/2019</u> (the "**Commencement Date**").

**It is agreed** as follows:

### 1.  INTERPRETATION

1.1.   Whenever used herein, the singular number shall include the plural, the plural the singular, and the use of the masculine, feminine, or neuter gender shall include all genders.

1.2.   The section headings are for convenience only and shall not affect the interpretation or construction of this Agreement.

### 2.  DEFINITIONS

"**Authorized Agent**" has the meaning set forth in Annex A.

"**Borrow Fee**" means the fee paid by the Borrower to the Lender for the Loan.

"**Borrowed Amount**" means the amount of Digital Asset(s) actually lent by the Lender to the Borrower under a Loan made pursuant to and subject to this Agreement.

"**Borrower Bank Account**" means the Borrower's designated bank account agreed with the Lender from time to time.

"**Business Day**" means any day other than a Saturday, Sunday or a public holiday in the United States.

"**Calendar Day**" means each and every day of the week.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009556
SDNY_R01_00077477

"**Change of Control**" means a transaction or series of related transactions in which a person or group of affiliated (or otherwise related) persons acquire shares representing more than fifty percent (50%) of the outstanding voting shares of either Party.

"**Collateral**" means an amount in either: (a) U.S. Dollars calculated as a percentage of the Borrowed Amount as valued at a spot rate agreed upon in the Loan Term Sheet, or (b) Currency agreed upon, as provided by the Borrower to the Lender as collateral for the Loan.

"**Callable Option**" means the Borrower and Lender each have the option to redeliver or recall an Open Deal Loan at any time during the term of the deal.

"**Digital Asset**" means Bitcoin (BTC), Ether (ETH) or any digital asset that the Parties may agree upon in writing.

"**Due Date**" means a Maturity Date or Recall Delivery Date.

"**Event of Default**" has the meaning specified in Section 8.

"**Hard Fork**" means a permanent divergence in the blockchain, which commonly occurs when non-upgraded nodes cannot validate blocks created by upgraded nodes that follow newer consensus rules, or an airdrop or any other event which results in the creation of a new token.

"**Hard Fork Notice**" means a notice sent by the Lender to the Borrower indicating that a Hard Fork has occurred and that the Borrower has sixty (60) days to transfer any New Tokens to the Lender.

"**Late Fee**" means the additional fee of eighteen percent (18%) (annualized, calculated daily) of the notional amount of the Loan as valued at 12:00 am New York time each Calendar Day, that is incurred by the borrower for each Calendar Day that Loan repayment is overdue in accordance with Section 4.3.

"**Loan**" means a loan of Digital Asset by the Lender to the Borrower subject to this Agreement.

"**Loan Request**" means a request for a Loan.

"**Loan Effective Date**" means the date upon which a Loan begins.

"**Maturity Date**" means the date upon which a Loan is terminated.

"**New Tokens**" means any tokens that are created as a result of a Hard Fork.

"**Open Deal**" means a Loan without a Maturity Date where the Borrower may redeliver the Digital Asset or the Lender may recall the Digital Asset at any time, subject to the terms of this Agreement.

"**Recall Request**" means a request by the Lender, in respect of an Open Deal Loan, for the return by the Borrower of the Recall Amount.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009557
SDNY_R01_00077478

"**Recall Amount**" means the portion (or entirety) of Digital Asset loaned to the Borrower in respect of which the Lender has made a Recall Request.

"**Request Time**" has the meaning given at Section 3.1.

"**Term Deal**" means a Loan with a predetermined Maturity Date, where only the Borrower can return the Digital Asset prior to the Maturity Date.

## 3.   GENERAL OPERATION

Loan Procedure

3.1.   During the Term of this Agreement, at a particular time and on a Calendar Day (the "Request Time"), an Authorized Agent of the Borrower may by email directed to ____trading@celsius.network____ request from the Lender a Loan of a specific number of Digital Asset including the Pricing Terms (a "Lending Request").

3.2.   The Lending Request shall contain the following information:

(i)     the Digital Asset and its amount that the Borrower wishes to borrow;
(ii)    the Pricing Terms;
(iii)   the Loan type: Term Deal or an Open Deal;
(iv)    the Loan Effective Date; and
(v)     if the Loan is a Term Deal, the Maturity Date.

3.3.   The Lender shall by email directed to the Borrower, inform the Borrower whether the Lender agrees to make such a Loan, at the Lender's sole discretion. For the avoidance of doubt, the Lender shall not be obligated to provide a Loan or any portion thereof unless the Lender confirms in writing the Lending Request or any portion thereof, and to the extent of such written confirmation.

3.4.   The specific terms of a Loan shall be recorded using the Loan Term Sheet attached as Annex B of this Agreement.

Open Deal Loan

3.5.   Where the Parties agree that a Loan shall be on an Open Deal basis, the Lender may, at any time on a Calendar Day (the "Recall Request Time"), exercise the Callable Option and make a Recall Request to recall all or any portion of Digital Asset loaned to the Borrower (the "Recall Amount"). The Borrower will then have _2 business days_____ (hours/days) from the Recall Request Time to deliver the Recall Amount to the Lender.

3.6.   The Borrower may, at any time on a Calendar Day (the "Redelivery Date"), exercise the Callable Option and redeliver all or any portion of Digital Asset loaned to Borrower.

Term Deal Loan

3.7.   Where the Parties agree that a Loan shall be on a Term Deal basis, the Lender shall not have the right to recall all or any portion of Digital Asset loaned to the Borrower in advance of the Maturity Date, except in accordance with Section 9.1.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009558
SDNY_R01_00077479

3.8.  The Borrower may at any time on a Calendar Day (the "Redelivery Date") redeliver all or any portion of Borrowed Amount loaned to Borrower.

3.9.   If the Borrowed Amount has not been returned before the Maturity Date, the Borrower shall commence redelivery on or before on the Maturity Date.

Drawable Loans

3.10. Lender may agree to guarantee availability of Digital Asset for loans upon a Loan Request from the Borrower or its Authorized Agent (a "Drawable Loan"). Lender shall set a term for the Drawable Loan, the Borrow Rate for the amount of the Drawable Loan that is not borrowed ("Undrawn Loan") and the Borrow Rate for the amount of the Drawable Loan that is borrowed ("Drawn Loan").

3.11. If Lender and Borrower agree to Drawable Loan they shall execute a Loan Term Sheet at that time, and at each subsequent delivery of a Drawn Loan, which indicates (i) the amount of the Drawable Loan that is an Undrawn Loan and a Drawn Loan, (ii) the Borrower Fee for each of the Undrawn Loan and the Drawn Loan, and (iii) the expiration date of the Drawable Loan.

3.12. The Borrow Rate of the Undrawn Loan accrues from the date the first Loan Term Sheet for the Drawable Loan is executed. All Drawn Loans are callable. Borrow Fees on any Undrawn Loans and Drawn Loans shall be paid in accordance with Clause 4 below. No Collateral is required for an Undrawn Loan. Collateral for a Drawn Loan shall be delivered in accordance with Clause 5 below.

Termination of Loan

3.13.   Loans will terminate:

   (i)    If a Term Deal, upon redelivery by Borrower of the Borrowed Amount at the Maturity Date or sooner;
   (ii)   If an Open Deal, upon redelivery by Borrower of the Borrowed Amount once the Borrower or Lender exercises the Callable Option;
   (iii)  If a Drawable Loan, upon redelivery by Borrower of all Borrowed Amount currently drawn as part of a Drawn Loan, and either (1) the end of the term of the Drawable Loan or (2) the notification by Borrower that it will end the Drawable Loan; Or
   (iv)   If either a Term Deal, an Open Deal or a Drawable Loan, upon an Event of Default as defined in Section VII.

4.  **BORROW FEES AND TRANSACTION FEES**

Borrow Fee Calculation

4.1.  Following an accepted Lending Request, an agreed Borrow Fee will be recorded in the relevant Loan Term Sheet. The Borrow Fee shall be payable, unless otherwise agreed by the Borrower and the Lender, as provided for on a Loan Term Sheet.

4.2.  The Lender shall calculate any Borrow Fees owed on a daily basis and provide Borrower with the calculation upon request.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009559
SDNY_R01_00077480

DocuSign Envelope ID: D830DC61-B651-4A5C-8541-1RD473994805

Late Fee

4.3.   Where the Borrower fails to return any Digital Asset by an applicable Due Date, the Borrower shall incur the Late Fee for each Calendar Day that the repayment of the Digital Asset is overdue.

Payment of Borrow Fees and Late Fees

4.4.   An invoice shall be sent monthly (on such Calendar Day or such other day as the Lender may determine) and shall include any Borrow Fees and any Late Fees (the "Invoice Amount") outstanding.  The Invoice Amount shall be payable as provided for on the Loan Term Sheet. Without prejudice to Section 9.1(i), the Borrower shall have up to five Business Days to submit payment for the invoice (the "Invoice Due Date").

Taxes and Fees

4.5.   All transfer or other taxes or third-party fees payable with respect to the transfer and/or return of any Borrowed Amount, Invoice Amount or other amount under this Agreement shall be paid by the Borrower.

5.   **COLLATERAL REQUIREMENTS**

Collateral

5.1.   Before the Lender commences a Loan on behalf of the Borrower, the Borrower shall provide the Collateral. The Collateral shall be an amount in the Currency agreed upon calculated as a percentage of the Borrowed Amount, as valued at a spot rate agreed upon in the Loan Term Sheet.

5.2.   The Lender shall be entitled to use the Collateral to conduct its digital asset lending and borrowing business, including transferring the Collateral to bank accounts that are not controlled by the Lender and to pay any Borrow Fees.

Margin Calls

5.3.   If during the term of a Loan the value of the Digital Asset representing the Borrowed Amount increases by the percentage agreed upon by the Parties in the Loan Term Sheet (such rate, the "Margin Call Spot Rate"), Lender shall have the right to require the Borrower to contribute additional Collateral so that the Collateral is at least the same percentage indicated in the Loan Term Sheet relative to the value of the borrowed Digital Asset at the Margin Call Spot Rate (the "Additional Collateral").

5.4.   If the Lender requires Borrower to contribute Additional Collateral, it shall send an email notification (the "Collateral Call") to the Borrower at the email address indicated in Section 12.1 that sets forth:

(i)   the Margin Call Spot Rate and

(ii)   the amount of Additional Collateral required based on the Margin Call Spot Rate.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009560
SDNY_R01_00077481

The Borrower shall transfer the Additional Collateral to the Lender within the time set forth in the Collateral Call. If Borrower fails to transfer the Additional Collateral within the number of hours specified in this subsection (ii), and the value of the borrowed Digital Asset as indicated by the Margin Call Spot Rate exceeds the spot rate indicated in the Loan Term Sheet by a certain percentage agreed between the Lender and the Borrower, the Lender may declare an Event of Default under Section 8 below.

### Payment of Additional Collateral

5.5.    Payment of the Additional Collateral shall be made in the Currency agreed upon through Borrower's Digital Wallet to Lender or by bank wire to the account specified in the Loan Term Sheet necessary to make the USD Collateral percentage indicated in the Loan Term Sheet correct based on the Margin Call Spot Rate.

### Default or Failure to Return Loan

5.6.    In the event that Borrower does not return the Borrowed Amount when due, the Lender may apply the Collateral for the payment of any liability or obligation or indebtedness of the Borrower created by this Agreement, including, but not limited to using the Collateral to purchase Digital Asset to replenish Lender's supply of the relevant Digital Asset.

### Return of Collateral

5.7.    Upon the redelivery of any Borrowed Amount and payment of all Borrow Fees, Lender shall initiate the return of Collateral to either (a) the Borrower's Bank Account (in the name of Borrower); or (b) the Borrower's Digital Asset Wallet as provided in Annex B.

## 6.  HARD FORKS

### No Immediate Termination of Loans Due to Hard Fork

6.1.    For the avoidance of doubt, a hard fork in a relevant Digital Asset blockchain will not result in any outstanding Loans being immediately terminated.

### Redelivery of Borrowed Digital Asset

6.2.    The Lender has the right to any New Tokens created as a result of a Hard Fork in relation to borrowed Digital Asset. Following a Hard Fork the Lender shall be entitled to send the Borrower a Hard Fork Notice following which the Borrower shall have up to sixty (60) days to:

(i)     transfer the New Tokens directly to the Lender,
(ii)    transfer the borrowed Digital Asset to the Lender so that the Lender can split the New Tokens itself and return the borrowed Digital Asset to the Borrower,
(iii)   make a Digital Asset payment reflecting the value of the New Tokens, using the agreed upon spot rate at the moment of repayment, or
(iv)    make a U.S. Dollar cash payment reflecting the value of the New Tokens, using the agreed upon spot rate at the moment of repayment.

## 7.  REPRESENTATIONS AND WARRANTIES

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009561
SDNY_R01_00077482

DocuSign Envelope ID: D830DC61-B651-4A5C-8541-12D473994805    Case 1:23-cr-00347-JGK    Document 145-132    Filed 04/29/25    Page 12 of 29

Ref. Lending Digital Assets

7.1. The Parties represent and warrant to each other on the Commencement Date and on the date of each Loan Request made by the Borrower, that this Agreement has:

(i)    been duly and validly authorized, executed and delivered on behalf of the Borrower and the Lender respectively; and

(ii)   constitutes the legal, valid and binding obligations enforceable against the Borrower and the Lender respectively in accordance with its terms (except as such enforceability may be limited by bankruptcy, insolvency, reorganization, moratorium or similar laws relating to or limiting creditors' rights generally and subject to the availability of equitable remedies).

7.2. The Lender represents and warrants that, at the time of the making of the Loan, it owns or has the right to use the Digital Asset as provided for in this Agreement.

## 8.  EVENT OF DEFAULT

8.1. Each of the following circumstances shall constitute an Event of Default:

(i)    the failure of the Borrower to return any Borrowed Amount when due;

(ii)   the failure of the Borrower to pay any Invoice Amount or Additional Collateral when due;

(iii)  any material breach of this Agreement;

(iv)   any representation or warranty made in this Agreement proves to be untrue in any material respect as of the date of making or deemed making thereof;

(v)    any bankruptcy, insolvency, reorganization or liquidation proceedings or other proceedings for the relief of debtors or dissolution proceedings instituted by or against the Borrower and not dismissed within thirty (30) days of their initiation.

## 9.  REMEDIES

9.1. Upon the occurrence and during the continuation of any Event of Default, the Lender may, at its option:

(i)    declare the entire Borrowed Amount, Invoice Amount and any other amounts owing under this Agreement to be immediately due and payable,

(ii)   terminate this Agreement upon notice to Borrower, and

(iii)  exercise all other rights and remedies available to the Lender hereunder, under applicable law, or in equity.

9.2. In the event that the Borrower fails to pay any amounts due hereunder, the Borrower shall pay to the Lender upon demand all reasonable costs and expenses, including without limitation, reasonable legal fees and court costs incurred by the Lender in connection with the enforcement of its rights hereunder.

9.3. Borrower hereby acknowledges that its obligations hereunder are recourse obligations and are not limited to any other recoveries including, but not limited to recovery from use by Lender of any or all of the Collateral.  The obligations of the Borrower from time to time to repay the Borrowed amount, Invoice Amount, any other amounts owing under this Agreement, and all other amounts due and obligations owing under this Agreement all of which shall be full recourse obligations of the Borrower.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009562
SDNY_R01_00077483

10. **RIGHTS AND REMEDIES CUMULATIVE**

Any delay or omission by the Lender to enforce an obligation or exercise any right or remedy under this Agreement shall not be construed as a waiver of such obligation, right or remedy or of any other rights or remedies hereunder. No waiver by either party of any provision of this Agreement shall be deemed to have been made unless expressed in writing and signed by both parties. All rights of the Lender stated herein are cumulative and in addition to all other rights provided by law, in equity.

11. **INDEMNITY**

Provided that there has been no breach of the Lender's representation at Section 7.2, the Borrower shall indemnify and hold harmless the Lender from and against any and all claims, demands, losses, expenses and liabilities of any and every nature (including legal fees) that the Lender may incur or that may be asserted against the Lender arising out of the Lender's lending of Digital Asset to the Borrower under this Agreement, except for any and all claims, demands, losses, expenses and liabilities arising out of or relating to the Lender's gross negligence or willful misconduct in the performance of its duties under this Agreement.  This indemnity shall be a continuing obligation of the Borrower, its successors and assigns, notwithstanding the termination of this Agreement.

12. **NOTICES**

12.1. Unless otherwise provided in this Agreement, all notices or demands relating to this Agreement shall be in writing and shall be personally delivered or sent by express or certified mail (postage prepaid, return receipt requested), overnight courier, electronic mail (at such email addresses as a party may designate in accordance herewith), or to the respective address set forth below:

**Borrower:**

Name:                    _Reliz_

Address:                _400 North May Street_

City, State/Country:    _Chicago, il usa_

Postal Code:            _60642_

Attn:                    _Brad Nagela_

Email:                   _trading@blockfills.com_

**Lender:**

Celsius Network Ltd

35 Great St. Helen's

London, United Kingdom

EC3A 6AP

                or

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009563
SDNY_R01_00077484

to its US Affiliate, Celsius Network, Inc.

in care of its Registered Agent,

Incorporating Services, Ltd.

3500 S. Dupont Highway

Dover, Delaware 19901

USA


Attn: Legal

Email: legal@celsius.network

12.2. Either Party may change its address by giving the other Party written notice.

## 13. MODIFICATIONS

No modification or amendment to this Agreement shall be effective unless agreed in writing and signed by both Parties.

## 14. TERMINATION

14.1. This Agreement may be terminated as set forth in Section 9(1)(ii) or upon 30 days' notice by either party to the other.

14.2. In the event of a termination of this Agreement, any loaned Digital Asset shall be returned immediately and any Invoice Amount and other amounts owed shall be payable immediately.

14.3. The Lender shall not be obliged to return any Collateral until the Borrower has paid the Borrowed Amount and all other amounts owing under this Agreement, including all Invoiced Amounts.

## 15. TRANSFER

15.1. Except under Section 15.2, neither Party may assign this Agreement or any rights or duties hereunder without the prior written consent of the other party (such consent to not be unreasonably withheld).

15.2. In the event of a Change of Control of Lender or Borrower, prior written consent shall not be required provided such Party provides the other Party with written notice prior to the consummation of such Change of Control.

## 16. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes any prior negotiations, understandings and agreements.

## 17. SEVERABILITY

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009564
SDNY_R01_00077485

Each provision of this Agreement shall be severable from every other provision of this Agreement for the purpose of determining the legal enforceability of any specific provision.

18. **COUNTERPARTS**

This Agreement may be executed in any number of counterparts and by different parties on separate counterparts, each of which, when executed and delivered, shall be deemed to be an original, and all of which, when taken together, shall constitute one and the same Agreement.

19. **RELATIONSHIP OF PARTIES**

Nothing contained in this Agreement shall be deemed or construed by the Parties, or by any third party, to create the relationship of partnership or joint venture between the Parties.

20. **RIGHTS OF THIRD PARTIES**

This Agreement is solely for the benefit of the parties hereto and their respective successors and assigns, and no other Person shall have any right, benefit, priority or interest under, or because of the existence of, this Agreement.

21. **SUBMISSION TO ARBITRATION; WAIVER OF COURT AND JURY TRIAL**

21.1. Arbitration Terms. Any dispute between the parties, unless amicably resolved by the parties, shall be finally settled by arbitration in accordance with the terms set forth hereunder. In such case, the place of arbitration of any dispute shall be London. The language to be used in the arbitration proceedings shall be English. The arbitration shall be conducted before a mutually appointed sole arbitrator. In the absence of agreement as to the identity of the arbitrator within seven (7) days of first demand of any of the parties, then the arbitrator shall be appointed by the chairman of the United Kingdom Bar. Any award rendered by the arbitrator shall be final and binding upon the parties. The arbitration shall be conducted under the rules and procedures set forth by the United Kingdom Arbitration Law - 1968, which rules and procedures are deemed to be incorporated by reference into this Section. The arbitrator shall not be bound by any rules of procedure or evidence but shall apply the substantive laws of United Kingdom in determining any matters before him. The arbitrator shall be liable to give written grounds for its decision. Judgment upon any award rendered may be entered in any court having jurisdiction, or application may be made to such court for a judicial acceptance of the award and an order of enforcement, as the case may be. Each party shall pay its own expenses of the arbitration, and the expenses of the arbitrator shall be equally shared between the parties, unless the arbitrator assesses as part of their award all or any part of the arbitration expenses of a party (including reasonable attorneys' fees) against the other party. Any arbitration proceeding hereunder shall be conducted on a confidential basis.

21.2. SUBMISSION TO ARBITRATION. EACH OF BORROWER AND LENDER IRREVOCABLY AND UNCONDITIONALLY (A) SUBMITS ANY DISPUTE OF ANY NATURE BETWEEN THE PARTIES OR CELSIUS INCLUDING ANY CONFIRMATION OR ANY LOAN OR RELATING IN ANY WAY TO THIS AGREEMENT TO ARBITRATION AS PROVIDED FOR ABOVE AND (B) WAIVES, TO THE

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009565
SDNY_R01_00077486

FULLEST EXTENT IT MAY EFFECTIVELY DO SO, ANY DEFENSE OF AN INCONVENIENT FORUM TO THE MAINTENANCE OF SUCH ACTION OR PROCEEDING IN ANY COURT AND ANY RIGHT OF JURISDICTION ON ACCOUNT OF ITS PLACE OF RESIDENCE OR DOMICILE.

21.3. WAIVER OF COURT AND WAIVER JURY TRIAL. EACH OF BORROWER AND LENDER HEREBY IRREVOCABLY WAIVES ANY RIGHT THAT IT MAY HAVE TO FILE ANY CLAIMS IN ANY COURT OF LAW OR SEEK A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR IN ANY WAY RELATING TO THIS AGREEMENT. ANY CONFIRMATION, ANY LOAN OR THE TRANSACTIONS CONTEMPLATED THEREBY.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009566
SDNY_R01_00077487

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed and delivered as of the Commencement Date.


LENDER: Celsius Network Ltd

By: _____Jessica Khater_____
         A22FCDB6046D4BC...

Name: __Jessica Khater__

Title: __Head of Institutional Lending__

Date: __12/3/2019__


BORROWER: __Reliz Ltd__

By: _____Blockfills_____
         E75CB23F4609471...

Name: __Brad Nagela__

Title: __Head of Trading__

Date: __12/3/2019__

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009567
SDNY_R01_00077488

**ANNEX A**

**AUTHORIZED AGENTS\***

The following are authorized to deliver Lending Requests on behalf of Borrower in accordance with Section 3 of the Agreement:

Name: Brad Nagela

Email: trading@blockfills.com


Name: Nick Hammer

Email: Nick@blockfills.com


\*Authorized Agents must be listed as the Beneficial Owners in the Celsius Network Corporate Application. If another person is designated as an Authorized Agent, they must be an Officer of the Borrower and must complete Know Your Customer (KYC) Verification and onboarding.

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009568
SDNY_R01_00077489

**ANNEX B**

**LOAN TERM SHEET**

The following loan agreement incorporates all of the terms of the Digital Asset Loan Agreement entered into by the Lender and Borrower (as provided in the Agreement and specified below) on _____ and the following specific terms:

| | |
|---|---|
| Lender: | Celsius Network Ltd |
| Borrower: | _____ |
| Digital Asset: | _____  Digital Asset Spot Price: _____ |
| Amount of Digital Asset: | _____ (Coin)  OR  _____ (USD Equivalent) |
| Loan Type: | _____ |
| Loan Term: | _____ |
| Borrow Fee: | _____ % annually, calculated and charged monthly |
| Borrow Fee Payable in: | _____ |
| Collateral Type: | _____ |
| Collateral Amount: | _____  Collateral Spot Price: _____ |
| Collateral Percentage: | _____ % of Digital Asset Loan Value |
| Margin Call Spot Rate: | _____ % Rise |
| Additional Terms: | _____ |
| | _____ |

USD Collateral Wiring Instructions:

Beneficiary Account: 1503222589
Beneficiary Name: Celsius Network Limited
Beneficiary Address: 35 Great St Helens, London, United Kingdom, EC3A 6AP
Beneficiary Bank: Signature Bank
ABA/Routing Number: 026013576
Beneficiary Bank Address: 565 Fifth Avenue, New York, NY 10017
(International) SWIFT Code: SIGNUS33XXX

Digital Asset Wallet Address of Borrower: _____

Digital Asset Wallet Address of Celsius: _____

LENDER: Celsius Network Ltd          BORROWER: _____

By: _____      By: _____

Name: _____      Name: _____

Title: _____      Title: _____

Date: _____      Date: _____

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009569
SDNY_R01_00077490



## Certificate Of Completion

Envelope Id: D830DC61B6514A5C85411DD47399480B                    Status: Completed
Subject: Blockfills_2019 Celsius Digital Asset Loan Agreement.pdf
Source Envelope:
Document Pages: 14                    Signatures: 2                    Envelope Originator:
Certificate Pages: 5                    Initials: 0                    Jessica Khater
AutoNav: Enabled                                                       jessica@celsius.network
EnvelopeId Stamping: Enabled                                           IP Address: 109.245.237.30
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

## Record Tracking

Status: Original                    Holder: Jessica Khater                    Location: DocuSign
        12/3/2019 10:29:57 AM               jessica@celsius.network

| Signer Events | Signature | Timestamp |
|---|---|---|
| Blockfills<br>trading@blockfills.com<br>Security Level: Email, Account Authentication<br>(None) | *Blockfills*<br>E75CB23F4609471... | Sent: 12/3/2019 10:32:19 AM<br>Viewed: 12/3/2019 10:33:08 AM<br>Signed: 12/3/2019 10:53:49 AM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 185.217.117.127 | |

Electronic Record and Signature Disclosure:
   Accepted: 12/3/2019 10:33:08 AM
   ID: 84b31cd7-1864-4cd2-a63f-6d8576ae5b9a

| | | |
|---|---|---|
| Jessica Khater<br>jessica@celsius.network<br>Head of Institutional Lending<br>Celsius Network Inc.<br>Security Level: Email, Account Authentication<br>(None) | *Jessica Khater*<br>A22FCDB6046D4BC... | Sent: 12/3/2019 10:32:19 AM<br>Viewed: 12/3/2019 12:52:29 PM<br>Signed: 12/3/2019 12:52:58 PM |
| | Signature Adoption: Pre-selected Style<br>Using IP Address: 109.245.237.30 | |

Electronic Record and Signature Disclosure:
   Not Offered via DocuSign

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Trading Desk<br>tradingdesk@celsius.network<br>Head of Institutional Trading<br>Celsius Trading Desk<br>Security Level: Email, Account Authentication<br>(None) | **COPIED** | Sent: 12/3/2019 12:52:59 PM |

Electronic Record and Signature Disclosure:
   Accepted: 10/4/2019 12:41:07 PM
   ID: 51c0a885-c247-4d2c-9f66-93fada63c4e6

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 12/3/2019 12:52:59 PM |
| Certified Delivered | Security Checked | 12/3/2019 12:52:59 PM |
| Signing Complete | Security Checked | 12/3/2019 12:52:59 PM |
| Completed | Security Checked | 12/3/2019 12:52:59 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

| Electronic Record and Signature Disclosure |
|---|

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Celsius Network Inc. (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Celsius Network Inc.:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: ashley@celsius.network

**To advise Celsius Network Inc. of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at ashley@celsius.network and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Celsius Network Inc.**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to ashley@celsius.network and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Celsius Network Inc.**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

CELSIUSNETWORK_00009573
SDNY_R01_00077494

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to ashley@celsius.network and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent..  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Celsius Network Inc. as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Celsius Network Inc. during the course of your relationship with Celsius Network Inc..

CELSIUSNETWORK_00009574
SDNY_R01_00077495

**Exhibit B**
Loan Term Sheet

6

CELSIUSNETWORK_00009575
SDNY_R01_00077496

**ANNEX B**

**LOAN TERM SHEET**

Loan # C1234

The following loan term agreement dated **06/08/2020** incorporates all of the terms of the Master Digital Asset Loan Agreement entered into by Celsius Network Ltd ("Lender") and the Borrower (as provided in the Agreement and specified below) on **12/03/2019** and the following specific terms:

| | |
|---|---|
| Lender: | Celsius Network Ltd. |
| Borrower: | Reliz Ltd. |
| Digital Asset: | ETH |
| Amount | 4,098.36 |
| Spot price: | $244 |
| Amount in USD: | $1,000,000 |
| Loan Type: | Term |
| Loan Term: | 13 months, or sale of shares in ETHE, whichever is sooner |
| Maturity Date: | 07/08/2021 |
| Borrow Fee: | 1% |
| Borrow Fee Payable in: | ETH |
| Collateral Asset: | USD |
| Collateral Amount: | 250,000 |
| Collateral Level: | 25% |
| Margin Call Level: | N/A |
| Reverse Call Level: | N/A |

**Additional terms:**

*The loan will be used exclusively to purchase shares of the Grayscale Ethereum Trust (ETHE). Once the loan and remaining interest are repaid to Celsius, Celsius will be paid any excess of the proceeds from the sale of the ETHE shares less the loan amount as follows:*

*i.) Preferred interest at an annualized 6% rate on the loan amount, as allowed by the excess proceeds, and paid in either ETH or USD; and*

*ii.) Profit-sharing of 70% of any remaining excess proceeds, paid in ETH or USD*

*USD Collateral Wiring Instructions:*
Beneficiary Account: 1503222589
Beneficiary Name: Celsius Network Limited
Beneficiary Address: 1 Bartholomew Lane, London, UK, EC2N 2AX
Beneficiary Bank: Signature Bank
ABA/Routing Number: 026013576
Beneficiary Bank Address: 565 Fifth Avenue, New York, NY 10017
(International) SWIFT Code: SIGNUS33XXX

Celsius Signet USD Wallet Address:  0xb1a40c44e57eb6335e506dda306c6577df1087d2

LENDER:  Celsius Network Ltd

By: *Harumi Urata-Thompson*
———————————————————
     821A611261A84B2

Name:  Harumi Urata-Thompson

Title: Chief Financial Officer

Date: 6/8/2020
——————————————————

BORROWER: Reliz Ltd

By: *Nick Hammer*
     B541B76C3729ACD

Name: Nick Hammer

Title: Principal

Date: 6/8/2020
——————————————————

**Exhibit C**

Nick Hammer's Email

7

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS

CELSIUSNETWORK_00009578
SDNY_R01_00077499

**From:** Nick Hammer
**Sent:** Wednesday, January 27, 2021 11:52 AM
**To:** Harumi Urata-Thompson <harumi@celsius.network>; Patrick Holert <patrick.holert@celsius.network>
**Cc:** Gordon Wallace <gordon@blockfills.com>; Dan Schak <dan.schak@blockfills.com>
**Subject:** EHTE Liquidition

Hi Patrick and Harumi,

Hope all is well.

We are going to begin the liquidation process of the ETHE grayscale shares.  We owe you 4,098.36 ETH back plus your profits and interest on the principal.  Can you tell us if you would like the profits to be paid back in USD or equivalent in ETH?  The principal of the investment should be paid back in ETH.

Best Regards,
Nick Hammer
Founder
Blockfills.com
401 W Ontario St. #400
Chicago, IL 60654
m) 312-622-7372
www.blockfills.com

Telegram: hammeraex
Skype: hammeraex

FOIA CONFIDENTIAL TREATMENT REQUESTED BY CELSIUS