**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>RONI COHEN-PAVON<br><br><br><br>Defendant. | No. 1:23-cr-00347-JGK |

**SENTENCING MEMORANDUM OF RONI COHEN-PAVON**

Jeffrey A. Brown
Gena D. Vineis

DECHERT LLP
1095 Avenue of the Americas
New York, New York 10036
Tel: (212) 698-3500

*Attorneys for Roni Cohen-Pavon*

## I.   INTRODUCTION

Roni Cohen-Pavon comes before the Court for sentencing, having been convicted of counts four through seven of the Indictment in which he and Alex Mashinsky were charged in connection with the 2022 collapse of the cryptocurrency lending platform Celsius Network.  The Indictment charged Mr. Cohen-Pavon as follows: (i) Count Four – Conspiracy to Manipulate the Price of a Security (CEL Token), in violation of 18 U.S.C. § 371; (ii) Count Five – Fraudulent Scheme to Manipulate the Price of CEL Token, in violation of 15 U.S.C. § 78j(b) and  § 78ff, 17 C.F.R. §240.10b-5, and 18 U.S.C. § 2; (iii) Count Six – Market Manipulation of CEL Token, in violation of 15 U.S.C. § 78i(a)(2) and § 78ff, and 18 U.S.C. § 2; and (iv) Count Seven – Wire Fraud (CEL Token Manipulation), in violation of 18 U.S.C. § 1343 and § 2.

Mr. Cohen-Pavon was indicted on July 11, 2023. He and Mr. Mashinsky were the only individuals charged criminally in connection with Celsius's activities.  Following the Indictment, he immediately reached out to the government, soon waived extradition from Israel where he resides, self-surrendered, and appeared before the Court on September 4, 2023. On September 13, 2023, he entered his guilty plea before Your Honor pursuant to a cooperation agreement with the government.  Mr. Mashinsky, with knowledge that Mr. Cohen-Pavon would testify against him, pled guilty on December 3, 2024, shortly before his scheduled trial on January 28, 2025.  On May 8, 2025, he was sentenced to 144 months in prison.

According to the Presentence Report ("PSR") prepared by the Probation Department for Mr. Cohen-Pavon's sentencing, the applicable base offense level is 7.  PSR ¶ 116.  34 additional levels are added for specific offense characteristics including the loss amount, number of victims, and because the offense involved sophisticated means, with 30 of those additional levels derived

1

from the loss amount. PSR ¶¶ 117-19.  Mr. Cohen-Pavon has no criminal history and therefore is in Criminal History Category I. He receives a 5-level reduction for acceptance of responsibility and his lack of criminal history. PSR ¶¶ 125-27. As a result, his total offense level is 36, which at Criminal History Category I yields an advisory guidelines sentence of 188 to 235 months. PSR ¶ 175. Count four carries a statutory maximum sentence of five years, and counts five through seven each carry a maximum sentence of twenty years. PSR ¶ 174. None of the counts has a statutory mandatory minimum sentence.  The Probation Department recommends a sentence of time served. PSR Appendix A at 66.

Mr. Cohen-Pavon takes full responsibility for his conduct and the harms caused by his participation in the CEL token manipulation scheme for which he pled guilty. He carries immense shame and regret for his actions, as he works to restore normalcy in his own life and to contribute to efforts to make the Celsius victims whole. In consideration of his cooperation, for the reasons discussed herein regarding the offense conduct and his history and characteristics, and in consideration of the many letters of support submitted on his behalf, we respectfully request the Court sentence him to a period of time served, consistent with Probation's recommendation.

## II.   HISTORY AND BACKGROUND

Roni is 39 years old.  He was born in Israel and grew up with his parents, maternal grandparents, and three siblings. They lived as a tight-knit, middle class family in Holon, Israel, a city just outside of Tel Aviv, for much of Roni's early life. Like many families, the Cohen-Pavon family experienced, and persevered through, some hardships.[1] Despite any troubles, however, Roni was loved and cared for as a child and is close with his family today. Indeed, he has relied

---

[1]     For reasons of privacy, we respectfully refer Your Honor to the PSR ¶¶ 137-169 for a more detailed recitation of Roni's personal and familial history and background.

heavily on the support of many family members, including his father, throughout these proceedings.

Roni married his wife in 2012. They share a home outside of Tel Aviv with their two daughters, aged five and ten. Their third daughter is expected this May. Roni's dedication to his family and community is a common theme in the letters of support submitted on his behalf. Otnial Karavni writes:

> Roni is a devoted and exemplary family man. His commitment to his wife [] and their two young daughters is truly inspiring. He raises his daughters with values of integrity and love for humanity.

(Karavni, Ex. E).[2] His former Celsius colleague, Yarden Noy, also writes:

> [Roni's] empathy and support were such that I could not have expected from a family member or a close friend. Later in our joint journey I learnt that this was not unique for Roni - he would stop at nothing to help his friends and family. Including supporting them financially, emotionally, hosting them at his home - whatever they needed, he would do for them. Even those who have hurt or wronged him had the benefit of the doubt and he would always lend a helping hand to them in times of need.

(Noy, Ex. B). In recent years, for example, as geopolitical tensions in Israel and the surrounding areas have been heightened, he and his wife have regularly opened their home, which is equipped with a bomb shelter, to family and community members during missile attacks. PSR ¶ 145.

Roni volunteers much of his time to work with local charity organizations, or with individuals needing support. As Rabbi Nissim Simchon, leader of an Israeli non-profit organization writes:

---

[2]    Roni has received a series of support letters, attached hereto as Exhibits B-G. Letters originally authored in Hebrew have been translated to English, and follow with their Hebrew originals. Roni has also submitted his own letter to the Court, attached hereto as Exhibit A.

> For many years, Roni has been a central pillar in the charitable activities of our organization. Week after week, without seeking recognition or reward, he devotes his time, energy, and personal resources to assisting in the preparation and distribution of food packages to families in need. Every Friday afternoon, while many are occupied with preparations in their own homes, Roni sets out to ensure that other families can sit around their Shabbat table with dignity.

(Simchon, Ex. C). Roni understands what it feels like to be in need. To that end, he "has personally assisted numerous boys from disadvantaged families in celebrating their Bar Mitzvah with dignity, at times even ensuring the purchase of [their] tefillin," *id.*, ritual garb worn during the sacrament, which can often cost hundreds of dollars.

Roni also provides mentorship and support for men in his community, including former soldiers. Mr. Karavni, whom Roni helped support after Karavni was wounded in combat serving in the Israeli Defense Forces ("IDF"), writes that:

> In moments of intense physical and mental hardship, Roni chose to stand by my side privately, sacrificing his own personal and family time to support me through my journey of coping and rehabilitation. He was there for me unconditionally, providing support when I needed it most. From him, I learned a great deal about willpower, sacrifice, and the true meaning of friendship.

(Karavni, Ex. E). Benjamin Spalter writes:

> …Roni has shown me unconditional support, mentorship, and spiritual & emotional guidance. Roni helped me find a job and get back on my feet, he cared for me to have meals to eat despite my lack of appetite, provided me with opportunities to grow out of my depressed state of mind and even pushed me to build my life and build a family, something that I could not even imagine happening, but with his support and belief in me, I found my wife and got married last month. Of course, on my wedding day, Roni made sure to be there with me, even during the most intense time of war when others were barely leaving their homes.

(Spalter, Ex. G). Roni has left an indelible mark on many of those he has lent his hand to, including Orel Yoseph, also an injured soldier, who recalls:

4

> For me, Roni is far more than a person who helped me — he was a stable anchor during a period in which I had no other anchor. He was there for me in moments when no one else was, and he chose not to give up on me even when I myself had almost given up.

(Yoseph, Ex. F).

Many who know Roni describe his generosity as second nature, noting he "is a person who naturally seeks opportunities to do good." (Simchon, Ex. C).  This includes the smallest of acts, with Karavni recalling:

> On several occasions, after we finished eating together, [Roni] made a point of collecting all the untouched food to bring it to a soup kitchen in Bnei Brak doing so privately and without a hint of pride.

(Karavni, Ex. E). Roni's friends and acquaintances know him to be "trustworthy, compassionate, and always willing to help those in need." (Spalter, Ex. G).

In 2008, after graduating with a law degree from Tel Aviv University, Roni was commissioned as a lieutenant in the IDF, where he served as a legal advisor. He spent several years advising military personnel on the laws of armed conflict, and organized humanitarian aid and civilian protection efforts. PSR ¶ 164. He was promoted to Captain in 2011 and received an honorable discharge with distinction in 2014. Roni continued to serve on reserve duty in the years following his discharge, until his clearance was revoked and he was removed from duty in 2023 due to his arrest in the instant matter. PSR ¶¶ 164-65.  His inability to continue his service has been a particularly painful consequence of this case and a profound source of regret.

Following his military service, Roni found employment at the prominent Israeli law firm Herzog Fox & Neeman, advising technology clients on various legal and regulatory matters. He was named partner in 2018, which at that point made him one of the youngest partners in the firm's history. At Herzog, Roni became interested in online financial services and cryptocurrencies. When it was founded in 2017, Celsius began retaining Roni as outside legal counsel to consult on

5

a variety of regulatory and legal matters. Mr. Mashinsky continued to court Roni professionally, until he joined Celsius in 2020 as Chief Revenue Officer. Roni focused on the business expansion and development of Celsius, and was often brought in to assist when various units of Celsius were performing poorly or needed support. Roni's competence and his personal rapport with Mr. Mashinsky quickly earned him a place as the CEO and founder's right hand. Many of Roni's colleagues came to regard him as a "protector" who would provide a buffer between Mashinsky's impulses and intense moods and the rest of the Celsius employees.

Roni believed in Celsius's stated mission of providing an accessible alternative to individuals who had previously been kept out of traditional banking and finance. He was excited to be working on the cutting edge of the burgeoning crypto industry, and he wanted Celsius to realize its full potential. At various times Roni fought for the best interests of Celsius and its customers, pushing back when Mashinsky seemed to be making reckless decisions in his own self-interest, and his efforts in that regard were noted and appreciated by his colleagues. As his long-time mentee, Yarden Noy, whom Roni eventually recruited to serve as Celsius's Head of Regulation, writes:

> I can say with utmost certainty, having seen him and the situation evolving around us [at Celsius] very intimately, Roni at all times acted with unwavering integrity and sincere motivations, without regard for personal gain or potential detriment. Both as external counsel and later as an officer, Roni took it upon himself to rectify any problems that he would identify or that was brought to him, [including matters which] fell outside the scope of his formal responsibilities.

(Noy, Ex. B). His dedication to Celsius's mission caused him to jump in to assist in areas across the company. Another former member of the Celsius regulatory team recalls:

> What I saw during my time [at Celsius] was a leader who was open-minded, inclusive, and genuinely invested in doing right by the company's clients. Although the regulatory team was not under his

6

> management, Roni consistently showed up for us; standing up for the team, pushing to strengthen the company's compliance practice, and working to close any gap we identified, including fighting for our standing internally, even with the most senior people in the company.

(Ex. D (author name redacted by leave of Court)).

As the PSR makes clear, Roni expended substantial energy trying to keep things at Celsius above board. Perhaps most significant is Roni's conduct in relation to the separate misrepresentation scheme charged in the Indictment, which was led by Mashinsky and others and in which Roni was notably not charged. While serving as Chief Revenue Officer, Roni repeatedly tried persuading Mashinsky to stop making untrue statements about Celsius publicly in his Ask Mashinsky Anything ("AMA") social media videos and elsewhere. Indeed, Roni "identified factual errors in Mashinsky's public statements to Mashinsky on multiple occasions" including "that the ICO had raised $50 million, that Celsius had no uncollateralized loans, that Celsius had never had a default, that Celsius had not experienced losses, that Celsius's rewards were based on its revenues or profitability, that Celsius did not engage in directional trading, and that Celsius did not have leverage." PSR ¶ 64.  But that did not deter Mashinsky from continuing to misspeak. Roni expressed frustration in a September 2021 exchange with Celsius's Head of Risk, writing that even though he had spoken to Mashinsky "endless times," Mashinsky "refuses to listen and insists on putting the company at risk, plus the individual risk on himself. . . . Alex bears personal liability on what he says, internally and externally. . . .And he also exposes the company." Alexander Mashinsky Sentencing Mem. Dkt. 145 at 44. But Roni continued trying to break through to Mashinsky.

A month later, in October 2021, Roni tried to intercept Mashinsky in advance of an AMA. Prior to one of Mashinsky's live streams, Roni emailed the CEO a reminder:

No saying anything about regulators, good or bad, except that we are collaborating with them and working together to find appropriate solution, but nothing further…

PSR ¶ 50(b).  Roni, in an effort to establish and maintain Celsius's legitimacy, urged against antagonizing regulators as a marketing strategy, as well as overstating the extent to which Celsius had received regulatory approval.

In April 2022, after Mashinsky made several misstatements in a CNBC interview, Roni "directed Celsius's Head of Regulation to make a chart of some of the false statements Mashinsky had made." PSR ¶ 65. Roni showed this chart to Mashinsky at a face-to-face meeting and threatened to quit if Mashinsky did not alter his conduct. *Id*. Roni understood the gravity of such misrepresentations about Celsius's performance and their potential to mislead customers and harm the company, and repeatedly tried to intervene to stop Mashinsky's lying.

Roni joined Celsius with the legitimate goal of helping everyday people gain access to financial opportunities previously unavailable to them, and in large measure, as the foregoing examples demonstrate, he worked within the company with those customer interests in mind. However, as he has acknowledged both in his guilty plea and his letter to the Court, in an important respect he fell short and conducted himself in a manner inconsistent with these examples.  However reluctantly he participated in Celsius's efforts to support the price of CEL by buying tokens at Mashinsky's direction and insistence in the market beyond what Celsius needed to buy to operate its customer rewards program, he is guilty of market manipulation.

Roni joined the manipulation scheme during its later stages, in the summer of 2021, after he had assumed broader responsibility on CEL token strategy and following the need to replace another Celsius trader who had previously been working at Mashinsky's direction to artificially boost the price of the CEL token. At this point, Roni faced significant pressure regarding the

8

declining price of the CEL token, as Celsius was obligated to report a loss in its financials, "if the price of CEL did not reach $5.50 or $6.00 by December 31, 2021." PSR ¶ 96. More pressure was added due to concerns regarding customers' and holders' expectations and confidence in Celsius. Despite Mashinsky's repeated directives to keep up the buying, the price of CEL continued to drop in the fall of 2021. In response to Mashinsky's complaints about CEL's falling price despite recent increases in Celsius's customer base, Roni replied:

> The issue is that people are selling and no one is buying except for us. The main problem was that the value was fake and was based on us spending millions (~8M a week and even more until February 2020) just to keep it where it is. This week we spent 'only' $4M (on top of the rewards) and the price is still going down.

PSR ¶ 96(a). Roni repeatedly tried to persuade Mashinsky that continued support-buying was not a sustainable answer to Celsius's broader problems. In December 2021, Roni again warned Mashinsky:

> [A]s of now, no one is buying in the market except for us…[W]e spent $20M in the last 36 hours (16M to buy out [a known large CEL token holder] and 4M to support in the market). And this is after we're going up and the entire market is going down, people are still selling.

PSR ¶ 96(d).  But Mashinsky did not waver. While continuing to follow Mashinsky's directions regarding CEL trades, Roni argued for more legitimate alternatives to covert support-buying, including a transparent public buy-back plan and increasing the token's utility so that demand would be based on real use rather than artificial market support. Mashinsky rejected those efforts, dismissing the utility-based approach with "Fuck utility" and directing that Celsius do the "simple thing" that had been done before. PSR ¶ 97.

Roni has repeatedly expressed, throughout the government's investigation, regret over not having done more when fighting to rectify the situation as things devolved at Celsius.

9

Communications indicate that at times, Roni pulled his punches when trying to reason with Mashinsky. In an October 2021 exchange with a colleague who wrote to Roni that he thought it was "a bit funny we are working hard to raise the price so that Alex can sell higher, instead of just stopping buying for now," Roni replied, "Exactly what I wanted to write. The ones who benefit are the Market Makers and Alex." PSR ¶ 96(b).

Roni now understands that he allowed his good judgement to become clouded during the final months leading up to Celsius's bankruptcy, due in large part to the dynamics of his personal and professional relationship with Mashinsky. Roni has known Mashinsky for many years as a respected mentor, colleague, and friend. Roni believed in Celsius's mission, and at each turn, advocated the use of legitimate practices which he thought would increase the company's longevity. Roni believed he could get through to Mashinsky, help implement new systems, and prevent catastrophic losses. To the Celsius victims' and Roni's own devastation, he was wrong.

By early 2022, Roni had succeeded in substantially decreasing Celsius's excess purchases of CEL. He implemented a more disciplined process that calculated the amount of CEL actually needed to satisfy weekly rewards, spread those purchases out at regular intervals, and placed them through a trader who reported directly to him and was more insulated from Mashinsky. As a result, Celsius's purchases in 2022 were reduced to only "modestly more" than what was needed to fulfill weekly CEL rewards, and once those market purchases decreased, the price of CEL began to fall. PSR ¶ 98. During that time, Mashinsky still occasionally directed excess purchases in reaction to CEL's falling price. PSR ¶ 99. And while Roni wishes in hindsight he had done more, the record shows that even when he did ultimately put his foot down during the Terra Luna collapse in May 2022 by refusing to purchase $5 million worth of CEL at Mashinsky's direction, rather than heed Roni's warning that such purchase was a "bad idea," Mashinsky went directly to a subordinate to

10

execute his desired transaction, even if in a smaller amount. PSR ¶ 99(a). Celsius filed for bankruptcy two months later.

Roni unreservedly accepts full responsibility for his participation in the manipulation scheme and does not claim that Mashinsky forced him in any way to make certain trades. It is relevant to sentencing, nonetheless, that Roni did not design the scheme and that Roni consistently tried to stop the practice and to limit harm to customers. In October 2021 during a CEL price drop, Roni shared with Mashinsky that himself and "and certain other Celsius executives 'bought [CEL] from [their] personal money to support the price.'" PSR ¶ 96(b). Roni thought, wrongly, that by avoiding confrontation with Mashinsky in the short term, his own strategy would prevail in the long term, and Celsius could survive. But the damage had already been done, causing Celsius to implement "the Pause" on customer withdrawals in June 2022.  Bankruptcy soon followed.

## III.    THE 3553(A) FACTORS SUPPORT A SENTENCE OF TIME SERVED

The Court must impose a sentence that is "sufficient but not greater than necessary" to achieve the goals articulated by the factors outlined in 18 U.S.C. § 3553. The factors informing the length of a sentence are: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence imposed to accomplish the articulated goals; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established in the guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among similar defendants and; (7) the need to provide restitutions to the victims of the offense. 18 U.S.C. § 3553 (a).  In this case we also anticipate that the government will make a motion pursuant to Section 5K1.1 of the guidelines for a downward sentencing variance and will submit a letter to the Court describing Mr. Cohen-Pavon's assistance in their

11

prosecution of Mr. Mashinsky as "substantial." Considered together, the 3553(a) factors and Roni's cooperation support a sentence of time served.

The person depicted in the PSR and in the letters of support is fundamentally a good person devoted to his family and community who behaved, for a short time, in a manner inconsistent with his true character and inconsistent with his other positive actions at the company. Roni accepts full responsibility for his actions and the harm that he caused by participating in market manipulation at Celsius. But importantly, Roni's story is not one of a man motivated by personal greed or indifferent to the interests of customers or investors. On the contrary, Roni's participation in the offense conduct was colored in part by his desire to *mitigate* harm to Celsius and its customers, resulting from practices established prior to Roni's involvement. He overestimated the extent to which he could right the ship, but more importantly, he failed to simply say no, he did not refuse to participate, and he did not notify the relevant authorities. He will live with shame, guilt, and regret for the harm he caused with such a miscalculation, for the rest of his life. But the story of his time at Celsius, fully rendered, also involves substantial good conduct, and his acceptance of responsibility and his cooperation reflect his true and longstanding character, as opposed to a newly formed redemptive arc that is performative or that diverges from his true nature.

Because Roni's participation in the manipulation scheme is anomalous to his overall body of conduct, we respectfully submit that he poses no meaningful risk of recidivism, and a sentence of time served is enough to provide the proper deterrence and necessary protection to the public. The offense conduct notwithstanding, Roni's life is one of respect for the law, including as an attorney who guided his clients on how to comply with government regulations in their respective

12

industries.  His respect for the law is further evidenced by his prompt waiver of extradition, acceptance of responsibility via guilty plea, and cooperation in the government's investigation.

An additional reason we submit that no further punishment is warranted is that Roni has already paid a meaningful price for his actions.  His conviction has brought significant shame and reputational harm both personally and professionally. Despite what we submit are nuances of Roni's conduct, the practical reality remains that the world regards him with little nuance, as a criminal.  Among other consequences it is difficult for him to work and to support his family at the same level as before; he is subject to multiple civil lawsuits; he himself lost significant wealth in Celsius's crash, and he faces additional financial penalties and obligations arising from this case. Roni will need to spend the next several years rebuilding his life. Of course, he understands that these consequences are not more important or severe than those suffered by victims of the scheme and of Celsius's collapse.   Over the last few years Roni has had substantial opportunity to reflect on his actions at Celsius. Through that significant and painful reflection, he has come to understand where things went wrong, and where he could have, and should have, acted differently. He will not re-offend.

We further submit that a sentence of time served would promote general respect for the law in that it would reflect leniency grounded in Roni's acceptance of responsibility and cooperation in the government's investigation. When he was charged in July 2023, Roni quickly waived meaningful rights and protections, including his right to contest extradition from Israel, in order to appear before the Court and face the charges against him. Shortly after his surrender he provided information in a series of meetings with the government regarding Celsius's inner workings and Mashinsky's criminal conduct. In large part in recognition of Roni's meaningful

assistance, the Probation Department has recommended a sentence of time served. PSR Appendix A at 66.

## IV.    CONCLUSION

Roni Cohen-Pavon comes before this Court asking for a merciful and lenient sentence for his conviction for committing market manipulation at Celsius. Roni continues to express grave remorse and shame for his conduct. He realizes that neither his expressions of regret, nor his cooperation can undo the damage he helped cause to Celsius's customers. However, Roni hopes the Court will consider the acts and characteristics described in the attached letters of support; will consider the entirety of Roni's conduct at Celsius, and will consider his acceptance of responsibility and cooperation with the government as deserving of mercy and understanding, and will sentence him to time served so he may return to his family and community and continue to make amends.

# EXHIBIT A

The Honorable John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

**Re: United States v. Roni Cohen-Pavon, Docket No. 23 Cr. 347 (JGK)**

Dear Judge Koeltl,

I write to you with shame and remorse.

I am sorry. I am sorry to the people who trusted Celsius and were hurt, including by my own conduct. I am sorry to my family, who have had to live with the consequences of choices that were mine alone. I am sorry to the Court. I am also sorry to the friends and colleagues who believed in me.

I pleaded guilty because I am guilty. I participated in the manipulation of the CEL token. I did not stop it when I should have, and I did not leave when I could have. I take full responsibility for that. I do not want to soften what I did with language that makes it sound smaller or less serious than it was.

For most of my life, I understood myself to be someone who knew what duty meant. I grew up in Israel in a warm, close family that experienced hardship and instability. I studied law, served as a legal advisor during my military service, and later became a partner at one of Israel's leading law firms.

Throughout my life and career, I was trained to think carefully, to exercise judgment, and to understand that responsibility is not abstract, but measured by what a person does when doing the right thing becomes difficult. My military service required me to think about legal and moral limits in hard situations, and my legal career required discipline, independence, and judgment. That is part of why this case is so painful for me to confront. I knew better. I was trained to know better. And still, when it mattered most, I failed.

Before joining Celsius, I had already worked closely with the company and with Alex Mashinsky as outside counsel. In the summer of 2020, I left a good position in one of Israel's leading law firms to join Celsius because I believed in its mission and wanted to help build something meaningful. I admired Alex Mashinsky, believed in his leadership, and believed in the vision he presented for the company.

After joining the company, I tried to improve and fix things from within. I worked to strengthen processes, bring more discipline to the handling of information, and support the compliance and

legal functions. I believed deeply in backing the gatekeepers, especially when they were under pressure from commercial and other business interests. When I saw things that I believed were wrong, legally or morally, I did not look the other way. I raised concerns, pushed back, and stood up for what I believed, regardless of who was on the other side.

But none of that changes the central truth that I participated in the manipulation of the CEL token. As I became more aware of what was happening, I did try to limit it, reduce it, and eventually bring it to an end, even while I was still participating in it. Those efforts do not excuse my conduct. I still participated. I was still part of it. I did not act with the clarity, honesty, or courage the situation required.

At the time, I told myself that the best thing I could do was to try to fix things from the inside, as I had tried to do with other issues in the company. I told myself that ignoring or leaving would make things worse, that staying was the best way to limit the harm, and that I still had responsibilities to the people I was trying to protect. I told myself that I could reduce and eventually eliminate what was wrong. I see now that these were not acts of integrity. They were rationalizations that allowed me to avoid doing what I should have done.

I should have done more than try to reduce or manage what was wrong. I should have insisted on ending it immediately instead of limiting it and trying to end it over time. I should have refused to participate any further or removed myself entirely. I did not do that. Instead, I continued to participate and remained on a path that was wrong. That failure is mine.

Since this case began, I have had to live every day with the knowledge that I failed in a way that goes directly against the values I was raised with, the legal training I received, and the example I wanted to set for my children. The hardest part of this process has not been the public shame, the collapse of my career, or the fear of punishment. It has been the knowledge that the people closest to me have had to watch me fail in a way that never should have happened.

When I was indicted, I chose to accept responsibility and cooperate. Immediately after the indictment, I made clear that I would waive extradition, come to the United States, and meet with the prosecutors. Within weeks, I came to the United States and met with the Government for several days. I told the truth and did everything I could to assist. Nothing I did after the fact can undo the past. But throughout this process, I acted in line with what I knew I had to do.

I am a husband and a father of two, and my wife is expecting our third daughter in May. This should be one of the happiest times in our family's life. Instead, my wife has had to carry a pregnancy under the shadow of what I brought into our home. My children do not understand the details of this case, but children understand strain. They understand uncertainty. They understand when something in the family is no longer steady. When I think about what I have done, I think first about the people who depended on me most.

I have no criminal history. This case is the first and only criminal conviction of my life. That fact does not make what I did less serious. It only makes clearer how far I strayed from the person I believed myself to be.

Whatever sentence the Court imposes, the deeper obligation will remain the same. I will have to spend the rest of my life becoming, through my conduct, the husband, father, and man my family had every right to expect from me all along.

I ask only to be seen truthfully as a man who had every reason to know better, who failed in a serious and consequential way, who accepts that failure as his own, and who will carry it for the rest of his life. I know that apology alone does not make a person trustworthy. Only a life lived differently does. That is the obligation I will have to meet through the way I live my life.

Thank you for your consideration.

Respectfully submitted,

Roni Cohen-Pavon

# EXHIBIT B

The Honorable John G. Koeltl
Senior U.S. District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007


**Re: <u>Mr. Roni Cohen-Pavon</u>**

Dear Judge Koeltl,


My name is Yarden Noy, I am an attorney at law in Israel.

I have worked with and under Mr. Roni Cohen Pavon from June 24, 2017 until the end of 2022 in two capacities, first when he hired me as a junior associate at Herzog, Fox & Neeman, Israel's then-largest law firm, and later at Celsius - shortly after he left Herzog to join Celsius as a business-owner rather than a lawyer, I joined him to act as Head of Regulation.

Due to my involvement with Celsius, the ongoing legal matter surrounding it and potential attorney-client privilege matters, I will try not to address in my letter any particular Celsius-related issues, although I can wholeheartedly say that throughout his involvement with the company, as external counsel and later an employee, in the company's good times and even more so the bad, Roni's judgment, integrity, compassion, and diligence were evident in every action and decision.

Roni hired me into a leading law firm because he believed in me and saw something in me that others did not - although I had no relevant experience and very limited understanding of what he was doing professionally, he immediately recognized that I possessed the right character and foundational qualities, and everything else can be taught. Ever since we first met, Roni was my mentor, older brother and role model. He shoved me into the deep end, letting me take over client business from day one, while always offering consistent support and guidance, especially when I made mistakes.

I joined Roni at Herzog just under 2 years after I suffered a severe traumatic event, which left me suffering from depression and anxiety. He hired me with full knowledge of my condition and subsequently provided profound and sincere support. - when I, as a junior associate at a big law firm, did not show up for work for weeks at a time as I couldn't leave my bed, he as my boss ensured my absence was handled discreetly within the firm, covered my professional duties, and maintained daily contact to monitor my wellbeing.

Whenever I struggled emotionally, be it with my personal issues or work-related matters, Roni would always put everything else aside and spend as much time as needed with me. For a man

who literally works 20 hours a day, has a wife and two young daughters to care for, and a phone that rarely stops buzzing, to put everything on hold and listen to his junior employee's struggles and pains - that to me is something I will never forget.

His empathy and support were such that I could not have expected from a family member or a close friend. Later in our joint journey I learnt that this was not unique for Roni - he would stop at nothing to help his friends and family. Including supporting them financially, emotionally, hosting them at his home - whatever they needed, he would do for them. Even those who have hurt or wronged him had the benefit of the doubt and he would always lend a helping hand to them in times of need.

On the professional side, and again without getting into particularities - I can say with utmost certainty, having seen him and the situation evolving around us very intimately, Roni at all times acted with unwavering integrity and sincere motivations, without regard for personal gain or potential detriment. Both as external counsel and later as an officer, Roni took it upon himself to rectify any problems that he would identify or that was brought to him, the matters fell outside the scope of his formal responsibilities. In his officer role, he ended up overseeing many functions within the company, including ones that were not under his natural scope, as he would simply assume oversight of and incorporate any function that had problems or were under-managed, always with pure intentions of fixing them and making sure the company's interests as a whole are better served.He willingly assumed additional responsibilities and burdens to ensure work was executed correctly. He similarly addressed decisively any problem across the company, with the sole objective of solving it and serving the company.

Roni would never step away from a fight for what he thinks is right - a trait that in many respects did him injustice, in terms of the appreciation he would receive from his peers, and often his superiors.

Without having full visibility into the alleged wrongdoings within the company, I am  truly and honestly confident that Roni, by putting the company's interests above his own, and by trying to protect it and not, as many would do under similar circumstances, to protect himself and his image, would put himself at legal risk for trying to help, resolve and remedy issues caused by the recklessness of others.

Sincerely,
Yarden Noy

# EXHIBIT C

**B"H**

**To the Honorable Court,**

My name is Rabbi Nissim Simchon, and I serve as the Chairman of the nonprofit organization *Ma'aseh Nissim – Gmilut Hassidim*, which operates in Israel.

I write this letter with deep sincerity and a profound sense of responsibility in order to share with the Court my long-standing personal acquaintance with Mr. Roni Cohen Pavon—an individual whose character, actions, and unwavering dedication to others reflect the highest values of humanity, compassion, and moral integrity.

For many years, Roni has been a central pillar in the charitable activities of our organization. Week after week, without seeking recognition or reward, he devotes his time, energy, and personal resources to assisting in the preparation and distribution of food packages to families in need. Every Friday afternoon, while many are occupied with preparations in their own homes, Roni sets out to ensure that other families can sit around their Shabbat table with dignity.

His involvement intensifies during the holiday seasons, particularly during Rosh Hashanah and Passover—times when the need for assistance increases significantly. Roni is always among the first to arrive and the last to leave, helping us complete the distribution of hundreds of food packages to underprivileged families in the city of Ofakim.

It is important for the Court to understand the depth of need in this city. Ofakim is a community that endured an unimaginable tragedy during the events of October 7th, in which 54 of its residents were brutally murdered. In a reality marked by pain and loss, acts of kindness are not merely gestures of generosity—they are true lifelines. Time and again, Roni chooses to be that lifeline. He provides not only material assistance but also emotional support, encouragement, and hope to families navigating the process of healing.

Beyond this, Roni has personally assisted numerous boys from disadvantaged families in celebrating their Bar Mitzvah with dignity, at times even ensuring the purchase of tefillin for them. In doing so, he grants them not only a gift, but also a sense of belonging, identity, and spiritual strength.

Furthermore, whenever a lone soldier is in need—whether materially or emotionally—Roni is among the first to volunteer and offer his assistance wholeheartedly, with humility and genuine dedication.

What defines Roni is not a single act of kindness, but an entire way of life. He is a person who naturally seeks opportunities to do good. He does not wait to be asked—he simply shows up. He does not measure his giving—he gives with all his heart.

In Jewish tradition, we learn that "the world stands on three things: on the Torah, on the service of God, and on acts of lovingkindness." Roni embodies this principle in a living and breathing manner. His life is a testament to kindness in action.

From my close and enduring personal acquaintance with him, I can attest with complete confidence that Roni Cohen Pavon is an individual of exceptional character, whose nature is to uplift others, support the vulnerable, and bring light to places of darkness.

I respectfully ask the Honorable Court to give due consideration to the true essence of this individual—a man whose consistent actions reflect compassion, responsibility, and moral goodness of the highest order.

Respectfully,

**Rabbi Nissim Simchon**
Chairman, *Ma'aseh Nissim – Gmilut Hassidim*
Israel

בס"ד

לכבוד בית המשפט הנכבד,

שמי הרב נסים שמחון, ואני משמש כיו"ר עמותת "מעשה נסים - גמילות חסדים" הפועלת בישראל.

אני כותב מכתב זה בכנות עמוקה ומתוך תחושת אחריות גדולה, על מנת לשתף את בית המשפט בהיכרותי האישית
והארוכה עם מר רוני אהרון כהן פבון - אדם אשר אופיו, מעשיו ומסירותו המתמשכת לזולת משקפים את הערכים
הנעלים ביותר של אנושיות, חמלה ויושרה מוסרית.

במשך שנים, רוני מהווה עמוד תווך מרכזי בפעילות החסד של העמותה. שבוע אחר שבוע, מבלי לבקש הכרה או
תמורה, הוא מקדיש מזמנו, מאנרגייתו ומשאביו האישיים כדי לסייע בהכנת וחלוקת סלי מזון למשפחות נזקקות.
בכל ערב שבת, בעוד רבים עסוקים בהכנות לביתם, רוני יוצא לדאוג לכך שלמשפחות אחרות תהיה אפשרות לשבת
סביב שולחן בכבוד.

מעורבותו מתעצמת אף יותר בתקופות החגים, ובפרט בראש השנה ובחג הפסח - זמנים בהם הצורך בעזרה גדל
משמעותית. רוני הוא תמיד מהראשונים להתייצב ומהאחרונים לעזוב, והוא מסייע לנו להשלים את חלוקת מאות
סלי המזון למשפחות מעוטות יכולת בעיר אופקים.

חשוב שבית המשפט יבין את עומק הצורך בעיר זו. אופקים היא קהילה שחוותה טרגדיה קשה מנשוא באירועי
השביעי באוקטובר, בהם נרצחו באכזריות 54 מתושבי העיר. בתוך מציאות של כאב ואובדן, מעשי חסד אינם רק
נתינה - הם חבל הצלה של ממש. ורוני, פעם אחר פעם, בוחר להיות אותו חבל הצלה. הוא אינו מספק רק סיוע חומרי,
אלא מעניק גם תמיכה רגשית, עידוד ותקווה למשפחות המתמודדות עם תהליך של ריפוי.

מעבר לכך, רוני סייע באופן אישי לנערים רבים ממשפחות מוחלשות לחגוג את בר המצווה שלהם בכבוד, ולעיתים אף
דאג לרכישת תפילין עבורם - ובכך העניק להם לא רק מתנה, אלא תחושת שייכות, זהות וכוח רוחני.

בנוסף, בכל פעם שחייל בודד נזקק לעזרה - בין אם חומרית ובין אם נפשית - רוני הוא מהראשונים להתנדב ולהציע
סיוע מכל הלב, בענווה ובמסירות אמיתית.

מה שמגדיר את רוני אינו מעשה חסד אחד, אלא דרך חיים שלמה. הוא אדם שמחפש באופן טבעי הזדמנויות לעשות
טוב. הוא אינו מחכה שיבקשו ממנו - הוא פשוט מגיע. הוא אינו מודד את נתינתו - הוא נותן מכל הלב.

במסורת היהודית אנו למדים כי "על שלושה דברים העולם עומד : על התורה, על העבודה ועל גמילות חסדים". רוני
מגלם עיקרון זה באופן חי ונושם. חייו הם עדות חיה לחסד בפעולה.

מתוך היכרות אישית קרובה ומתמשכת עמו, אני יכול להעיד בביטחון מלא כי רוני אהרון כהן פבון הוא אדם בעל
אופי יוצא דופן, אשר טבעו להרים אחרים, לתמוך בחלשים ולהביא אור למקומות של חושך.

אני מבקש בכבוד מבית המשפט הנכבד להתייחס לעומק למהותו האמיתית של אדם זה - אדם שמעשיו העקביים
משקפים חמלה, אחריות וטוב מוסרי מן המעלה הראשונה.

בכבוד רב,

הרב נסים שמחון

יו"ר עמותת "מעשה נסים - גמילות חסדים"

ישראל

מעשה נסים-גמילות חסדים (ע"ר)

# EXHIBIT D

April 16, 2026

The Honorable John G. Koeltl
Senior U.S. District Judge
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**Re:  United States v. Roni Cohen-Pavon, No. 23 Cr. 347 (JGK)**

Dear Judge Koeltl,

I am writing this letter because I know Roni Cohen-Pavon personally, and I would like to share my honest perspective on who he is.

I met Roni in early 2022, when I joined Celsius Network as part of the regulatory team. What I saw during my time there was a leader who was open-minded, inclusive, and genuinely invested in doing right by the company's clients. Roni consistently showed up for us; standing up for the team, pushing to strengthen the company's compliance practice, and working to close any gap we identified, including fighting for our standing internally, even with the most senior people in the company.

After I left Celsius, Roni and I stayed in touch and grew into a real friendship. We talk and text regularly. Getting to know him outside of a work setting, I've seen a different side of him- one that I believe matters here.

He is one of the warmer people I know. Not in a performative way; he just genuinely cares about the people around him. He remembers things. He checks in. When we talk, it's not small talk. We've had some pretty honest conversations about life, about values, about the kinds of choices people make and why. Those conversations have stayed with me. Roni doesn't shy away from hard questions, and he doesn't pretend to have all the answers. That kind of honesty is not something you can fake over time.

I have seen this play out in concrete ways. I've watched him give real opportunities to people who had difficult backgrounds (people others might have passed over) because he believed in them. I've seen him donate his time and expertise to advise and professionally support others, asking for nothing in return. He has done this for me personally, and I have watched him do it for others. It is simply how he operates.

I've also had the chance to meet his family and see him in that context. The way he talks about them and the way he is around them tells you a lot about a person. His family is clearly at the center of his life. He is present with them, devoted to them, and it shows. That is not something that comes and goes depending on who is watching.

I believe the person I know deserves to be seen fully, and the person I know is someone with real character and genuine decency; as a friend, a family man, and someone who shows up for others when there is nothing in it for him.

Thank you for reading this.


Respectfully,



# EXHIBIT E

**To Whom It May Concern,**

I am writing this letter out of a sense of mission and based on a profound acquaintance with Mr. Roni Cohen Pavon, whom I have known for the past two years. My purpose is to present to the readers of this letter his true character as it is known to me. a man whose guiding lights are the values of kindness, humility, and integrity.

Our personal acquaintance deepened during the most challenging chapter of my life my rehabilitation after being wounded as a combat soldier in the war. In moments of intense physical and mental hardship, Roni chose to stand by my side privately, sacrificing his own personal and family time to support me through my journey of coping and rehabilitation. He was there for me unconditionally, providing support when I needed it most. From him, I learned a great deal about willpower, sacrifice, and the true meaning of friendship.

Roni is a devoted and exemplary family man. His commitment to his wife, ████ and their two young daughters is truly inspiring. He raises his daughters with values of integrity, a love for humanity, and a love for the land, acting out of genuine patriotism and a deep sense of belonging to this country.

One of his most defining characteristics is his quiet charity. On several occasions, after we finished eating together, he made a point of collecting all the untouched food to bring it to a soup kitchen in Bnei Brak doing so privately and without a hint of pride. This is a natural expression of his respect for others and his concern for the vulnerable. Roni possesses immense humility and an internal integrity. he respects every person for who they are, regardless of status or background.

I deeply admire the person Roni is, and I believe with all my heart that he is a fundamentally good man with noble virtues and great integrity.

**Respectfully,**

**Otnial Karavni**

# EXHIBIT F

To the Honorable Court,

My name is Orel Yoseph, and I write this letter from the heart, with pain, with deep gratitude, and with a true sense of duty to make my voice heard on behalf of a person who had a decisive impact on my life and who, in a very real and practical sense, saved it — Mr. Roni Cohen-Pavon.

I understand that the Court is required to examine facts, circumstances, and actions. At the same time, I respectfully ask that the Court also allow room to consider the person behind those matters — his character, his values, and the real and profound impact he has had on the lives of others, and particularly on my life.

Approximately nine years ago, I was involved in a serious, almost fatal, road accident while I was serving as a lone soldier in the IDF. As a result, I was injured and later recognized as a disabled IDF veteran. Beyond the physical injury, I also suffered a severe mental collapse — I struggled with post-trauma, anxiety, deep depression, an extreme sense of loneliness, and a complete loss of direction. I found myself without a framework, without real support, and without the ability to cope with the reality that had been forced upon me.

There were periods in which I was in an extreme mental state, to the point of losing hope and the will to continue. I saw no future, no direction, and no way out of the situation in which I had found myself.

In the midst of this reality, through the "Lone Tree" association, I came to Roni.

From that moment, my life began to change.

Roni did not see me as a "case" or as "a problem to be solved" — he saw me as a human being. He identified the condition I was in and decided to take full responsibility and act on my behalf in an exceptional, consistent, and deeply meaningful way.

He accompanied me personally and closely:

- to meetings with attorneys;
- to meetings with support professionals;
- through processes with the Ministry of Defense;
- and in dealing with complex legal proceedings.

He stood by my side in situations in which I had no ability to cope alone, and he helped me even when I was facing claims and proceedings that I did not have the means to handle on my own.

But Roni's contribution to my life was not limited only to accompanying me — it was practical, profound, and broad in scope.

Roni helped me financially during the most difficult periods of my life. He helped me pay debts when I had no ability to do so, and made sure to provide me with the basic means to move forward — equipment, computers, and tools that enabled me to study, develop, and build a future for myself.

He opened doors for me, connected me with people, and gave me opportunities that would not have reached me in any other way.

Beyond all of this, Roni taught me respect, values, personal responsibility, and gave me real tools for life — not only to survive, but to rebuild myself as a person.

This was not a one-time act, but rather a consistent pattern of conduct over years — a person who chose, again and again, to invest his time, his money, and his personal strength in order to lift another person up from the lowest place he had been.

I say this in the clearest possible way:

Roni's impact on my life was decisive.

Today, because of him, I am a completely different person.

I am married, I live a stable and meaningful life, I work as a licensed independent professional and as a sound engineer, and I am fulfilling myself and the dreams that once seemed impossible to me.

None of this would have been possible without Roni's direct, deep, and ongoing involvement in my life.

For me, Roni is far more than a person who helped me — he was a stable anchor during a period in which I had no other anchor. He was there for me in moments when no one else was, and he chose not to give up on me even when I myself had almost given up.

I ask the Court to also take into account the human side, his significant contribution to my life, and the great good he has done for me and for others.

There are people who change lives with words — and there are those who change lives through actions.

Roni did so through actions, over time, and with deep and rare commitment.

Respectfully,

With deep appreciation and endless gratitude,

Orel Yoseph
ID No. ██████
Phone: ██████
Date: April 15, 2026

'

**שמי אוראל יוסף, ואני כותב את המכתב הזה מתוך הלב, מתוך כאב, מתוך הכרת תודה עמוקה, ומתוך תחושת חובה אמיתית להשמיע את קולי עבור אדם שהשפיע על חיי באופן מכריע והציל אותם הלכה למעשה – מר רוני כהן פבון.**

**אני מבין כי בית המשפט נדרש לבחון עובדות, נסיבות ומעשים. יחד עם זאת, אני מבקש בכל הכבוד לאפשר גם הסתכלות על האדם שמאחורי הדברים — על אופיו, על ערכיו, ועל ההשפעה האמיתית והעמוקה שהייתה לו על חייהם של אחרים, ובפרט על חיי.**

**לפני כ-9 שנים עברתי תאונת דרכים קשה, כמעט קטלנית, בזמן שהייתי חייל בודד בצה"ל. כתוצאה מכך נפצעתי, ובהמשך הוכרתי כנכה צה"ל. מעבר לפגיעה הפיזית, עברתי גם קריסה נפשית קשה — התמודדתי עם פוסט-טראומה, חרדות, דיכאון עמוק, תחושת בדידות קיצונית ואובדן דרך מוחלט. מצאתי את עצמי ללא מסגרת, ללא תמיכה אמיתית, וללא יכולת להתמודד עם המציאות שנכפתה עליי.**

**היו תקופות בהן הייתי במצב נפשי קיצוני, עד כדי אובדן תקווה ורצון להמשיך. לא ראיתי עתיד, לא ראיתי כיוון, ולא מצאתי דרך לצאת מהמצב אליו נקלעתי.**

**בתוך מציאות זו, דרך עמותת "העץ הבודד", הגעתי לרוני.**

**מאותו רגע, חיי החלו להשתנות.**

**רוני לא ראה בי "מקרה" או "בעיה שיש לפתור" — הוא ראה אדם. הוא זיהה את המצב בו הייתי, והחליט לקחת אחריות מלאה ולפעול למעני באופן יוצא דופן, עקבי ומעמיק.**

**הוא ליווה אותי באופן אישי וצמוד:**

- **לפגישות עם עורכי דין**
- **למפגשים עם גורמי תמיכה**
- **לתהליכים מול משרד הביטחון**
- **ולהתמודדות עם הליכים משפטיים מורכבים**

**הוא עמד לצידי במצבים בהם לא הייתה לי כל יכולת להתמודד לבד, וסייע לי גם כאשר עמדתי בפני תביעות והליכים שלא היו בהישג ידי להתמודד עמם.**

**אך תרומתו של רוני לחיי לא הסתכמה בליווי בלבד — היא הייתה מעשית, עמוקה ורחבת היקף.**

**רוני סייע לי באופן כלכלי בתקופות הקשות ביותר בחיי, עזר לי לשלם חובות כאשר לא הייתה לי כל יכולת לכך, ודאג לספק לי אמצעים בסיסיים להתקדם — ציוד, מחשבים, וכלים שאפשרו לי ללמוד, להתפתח ולבנות לעצמי עתיד.**

הוא פתח עבורי דלתות, חיבר אותי לאנשים, והעניק לי הזדמנויות שלא היו מגיעות אליי בשום דרך אחרת.

מעבר לכל אלה, רוני לימד אותי דרך ארץ, ערכים, אחריות אישית, והעניק לי כלים אמיתיים לחיים — לא רק כדי לשרוד, אלא כדי לבנות את עצמי מחדש כאדם.

מדובר לא במעשה חד-פעמי, אלא בדפוס פעולה עקבי לאורך שנים — אדם שבחר שוב ושוב להשקיע מזמנו, מכספו ומכוחותיו האישיים כדי להרים אדם אחר מהמקום הנמוך ביותר בו היה.

אני אומר זאת באופן הברור ביותר:
ההשפעה של רוני על חיי הייתה מכרעת.

היום, בזכותו, אני אדם אחר לחלוטין.
אני נשוי, חי חיים יציבים ומשמעותיים, עובד כעוסק מורשה וכהנדסאי סאונד, ומגשים את עצמי ואת החלומות שהיו נראים לי בעבר בלתי אפשריים.

כל זאת לא היה מתאפשר ללא המעורבות הישירה, העמוקה והמתמשכת של רוני בחיי.

מבחינתי, רוני הוא הרבה מעבר לאדם שסייע לי — הוא היווה עבורי עוגן יציב בתקופה שבה לא היה לי כל עוגן אחר. הוא היה שם עבורי ברגעים שבהם אף אחד אחר לא היה, ובחר שלא לוותר עליי גם כאשר אני עצמי כמעט ויתרתי.

אני מבקש מבית המשפט להביא בחשבון גם את הפן האנושי, את תרומתו המשמעותית לחיי, ואת הטוב הרב שהוא עשה עבורי ועבור אחרים.

יש אנשים שמשנים חיים בדיבורים — ויש כאלה שמשנים חיים במעשים.
רוני עשה זאת במעשים, לאורך זמן, ובמחויבות עמוקה ונדירה.

בכבוד רב,
בהערכה עמוקה ובתודה שאין לה סוף,

אוראל יוסף
תעודת זהות: ███████
טלפון: ████████
תאריך: 15/04/2026

# EXHIBIT G

Dear Honor,

My name is Benjamin Aviolam Spalter and I'm writing to provide a letter of support for my close friend Roni Cohen who I have known for multiple years.

I originally met Roni during the most difficult time of my life when I was mourning my Mother who passed away after battling cancer for 7 years. The mourning also overlapped with the massacre of October 7th and war in Gaza which made the grieving exponential.

Throughout this time Roni has shown me unconditional support, mentorship, and spiritual & emotional guidance. Roni helped me find a job and get back on my feet, he cared for me to have meals to eat despite my lack of appetite, provided me with opportunities to grow out of my depressed state of mind and even pushed me to build my life and build a family, something that I could not even imagine happening, but with his support and belief in me, I found my wife and got married last month. Of course, on my wedding day, Roni made sure to be there with me, even during the most intense time of war when others were barely leaving their homes.

Without a doubt, he is the one who helped me the most get out of my place of dark grief and into the light of renewal and hope.

I have personally witnessed Roni's dedication to his family and how he treats his wife & daughters with warmth and love, and how he treats me as well as others with the same warmth and love. His commitment to others deeply reflects the kind of man he truly is and he has become a role model for who I aspire to be as well.

There is no doubt in my mind and heart that Roni is a man of high moral character. He is trustworthy, compassionate, and always willing to help those in need. I'm confident that with the courts understanding and support, Roni will continue to be the good man he is known to be.

I'm deeply grateful to the Judges, Court members, and especially Roni for the opportunity to share my story today.

With Love,

Benjamin Aviolam Spalter